PD-0254-18
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/7/2018 3:49 PM
Accepted 3/8/2018 11:47 AM
DEANA WILLIAMSON
CLERK

**IN THE COURT OF CRIMINAL APPEALS OF THE**

**STATE OF TEXAS**

**NO. PD-_____-18**

FILED
COURT OF CRIMINAL APPEALS
3/8/2018
DEANA WILLIAMSON, CLERK

**CRAIG DOYAL,**
        **Petitioner**

**VS.**

**THE STATE OF TEXAS,**
        **Respondent**

**ON DISCRETIONARY REVIEW FROM THE NINTH
COURT OF APPEALS DISTRICT OF THE STATE OF TEXAS**

**CAUSE NO . 09-17-00123-CR**

*APPELLEE'S PETITION FOR DISCRETIONARY REVIEW*

**RUSTY HARDIN**
State Bar No. 08972800

**CATHY COCHRAN**
State Bar No. 09499700

**ANDY DRUMHELLER**
State Bar No. 00793642

**NAOMI HOWARD**
State Bar No. 24092541

**Attorneys for Petitioner,**
   **CRAIG DOYAL**

**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
Email: rhardin@rustyhardin.com
Email: ccochran@rustyhardin.com
Email: adrumheller@rustyhardin.com
Email: nhoward@rustyhardin.com

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Petitioner:*          **CRAIG DOYAL**

*Attorneys at Trial and for Appellee/Petitioner:*

> **RUSTY HARDIN**
> **CATHY COCHRAN**
> **ANDY DRUMHELLER**
> **NAOMI HOWARD**
> 1401 McKinney Street, Suite 2250
> Houston, Texas 77010

*Prosecutors Pro Tem for the State at Trial and for Appellant/Respondent:*

> **CHRISTOPHER DOWNEY**
> The Downey Law Firm
> 2814 Hamilton Street
> Houston, Texas 77004
>
> **DAVID CUNNINGHAM**
> 2814 Hamilton Street
> Houston, Texas 77004
>
> **JOSEPH R. LARSEN**
> Gregor │ Cassidy, PLLC
> 700 Louisiana, Suite 3950
> Houston, Texas 77002

*Trial Court*:          **THE HONORABLE RANDY CLAPP**
Visiting Judge, sitting by appointment in the
221st Judicial District, Montgomery County

*Ninth Court of Appeals Panel of Justices*:
> **HON. STEVE McKEITHEN, CHIEF JUSTICE**
> **(Author of Opinion)**
> **HON. HOLLIS  HORTON, JUSTICE**
> **HON. LEANNE JOHNSON, JUSTICE**

ii

# TABLE OF CONTENTS

*IDENTITY OF PARTIES AND COUNSEL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

*TABLE OF CONTENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

*INDEX OF AUTHORITIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

*STATEMENT REGARDING ORAL ARGUMENT* . . . . . . . . . . . . . . . . . . . . . . . viii

*STATEMENT OF THE CASE* AND *PROCEDURAL HISTORY* . . . . . . . . . . . . . ix

I.      Did the court of appeals err in concluding that §551.143 did not violate the
        First Amendment? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      *Reasons for Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      *Overview* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        C.      *What the Court of Appeals Held* . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        D.      *How the Court of Appeals Erred* . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      The court of appeals erred in finding that discussion of public
                        matters was equivalent to disorderly conduct and unprotected
                        expression under the First Amendment. . . . . . . . . . . . . . . . . . 4

                2.      The court of appeals dismissed Supreme Court precedent and
                        followed a Fifth Circuit opinion interpreting a different TOMA
                        statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                3.      The court of appeals ignored substantial examples of the
                        overbreadth of §551.143. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    Did the court of appeals err in finding that §551.143 was not void for vagueness? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   A.    *Reasons for Review.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   B.    *The Hearing in the Trial Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   C.    *What the Court of Appeals Held* . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   D.    *How the Court of Appeals Erred.* . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*PRAYER FOR RELIEF* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*CERTIFICATE OF COMPLIANCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*CERTIFICATE OF SERVICE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*APPENDIX NO. 1, State v. Doyal*, __S.W.3d__, 2018WL761011 (Tex. App.—Beaumont, February 7, 2018) (*designated for publication*)

*APPENDIX NO. 2,* APPELLEE'S BRIEF, Cause No. 04-17-00123-CR

*APPENDIX NO. 3,* DEFENDANT DOYAL'S MOTION TO DISMISS, Cause No. 16-06-07315-CR

*APPENDIX NO. 4*, CHAPTER 551 OF TEXAS GOVERNMENT CODE, "TEXAS OPEN MEETINGS ACT"

# INDEX OF AUTHORITIES

**Cases**

*Asgeirsson v. Abbott*, 696 F.3d 454
(5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,6,7

*Broadrick v. Oklahoma*, 413 U.S. 601
(1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,6

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310
(2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7,8,14

*Cohen v. California*, 403 U.S. 15
(1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ex parte Lo*, 424 S.W.3d 10
(Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Ex parte Mitcham*, __S.W.3d__, 2018WL847655
(Tex. Crim. App. February 14, 2018) . . . . . . . . . . . . . . . . . . . . . . . 8,9,10

*Ex parte Perry*, 483 S.W.3d 884
(Tex. Crim. App. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8,12,13

*Ex parte Poe*, 491 S.W.3d 348
(Tex. App.—Beaumont 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 3,5,6,15

*Faust v. State*, 491 S.W.3d 733
(Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grayned v. Rockford*, 408 U.S. 104
(1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14,19

*Kolender v. Lawson*, 461 U.S. 352
(1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17

*Long v. State*, 931 S.W.2d 285
(Tex. Crim. App.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,19

*Martinez v. State,* 323 S.W.3d 493
(Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218
(2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,7

*Ross v. State*, 531 S.W.3d 878
(Tex. App.—San Antonio 2017) (pet. granted, January 28, 2018) . . . . . . . . 5

*State v. Doyal, __*S.W.3d__, 2018WL761011
(Tex. App.—Beaumont, February 7, 2018) . . . . . . . . . . . . . . . . . . . . passim

*State v. Johnson*, 475 S.W.3d 860
(Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,14

*State v. Markovich*, 77 S.W.3d 274
(Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Alvarez*, 567 U.S. 709
(2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Stevens*, 559 U.S. 460
(2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9,11

*Wagner v. State*, __S.W.3d__, 2018WL849164
(Tex. Crim. App. February 14, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 1,19

### Other Authority

OP. TEX. ATT'Y GEN., No. GA-0326 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

vi

## Constitutions and Statutes Referenced

U.S. CONST. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

TEX. GOV'T CODE §551.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TEX. GOV'T CODE §551.143 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

TEX. GOV'T CODE §551.144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,11,12

TEX. R. APP. P. 66.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,13,14

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is essential to the full development of the First Amendment issues in this case of first impression. Although all fifty states have open meeting laws, no jurisdiction has a criminal conspiracy statute like §551.143 (part of Chapter 551 of the Texas Government Code–the Texas Open Meetings Act),[1] and apparently there has never been a successful criminal conviction for a "walking quorum" or "daisy chain" violation of an open meetings law. The constitutionality and interpretation of §551.143 of the Texas Open Meetings Act (TOMA) are issues of enormous practical consequence to members of governmental bodies, large and small, across the state who are subject to criminal prosecution under its provisions.

---

[1] Unless otherwise noted, all references to statutes are to the Texas Government Code.

**STATEMENT OF THE CASE AND PROCEDURAL HISTORY**

Montgomery County citizens wanted relief from traffic congestion, but after local Tea Party organizations defeated the May 2015 road bond package, Commissioners Court was loathe to even discuss the topic. By that August, representatives of the Texas Patriots PAC realized that the county's traffic problems had reached a crisis, and they requested a meeting with County Judge Doyal. Facilitated by Marc Davenport, Judge Doyal and Commissioner Charlie Riley met with the PAC, and afterwards Judge Doyal held a press conference announcing that he would designate time on the Commissioners Court agenda for discussion of a proposal for a revised road bond to be included on the November ballot. After discussion and public comment at the August 22nd open meeting, the Commissioners Court voted unanimously to put the revised road bond package on the November ballot. The compromise was a success, and the voters passed the new road bond by 60%, whereas the May proposal had failed by 60%.[2]

A specially appointed prosecutor later indicted County Judge Craig Doyal, along with Commissioners Charlie Riley and Jim Clark and political consultant Marc Davenport, for the offense of "knowingly conspir[ing] to circumvent Title 5 Subtitle A Chapter 551 of the Texas Government Code (hereinafter referred to as the Texas

---

[2] For a more complete recounting of the Montgomery County road bond saga, *See* APPENDIX 3, Defendant Doyal's Motion to Dismiss the Indictment, pp.3-6.

Open Meetings Act), by meeting in a number less than a quorum for the purpose of secret deliberations in violation of the Texas Open Meetings Act, to-wit: by engaging in a verbal exchange concerning an issue within the jurisdiction of the Montgomery County Commissioners Court, namely, the contents of the potential structure of a November 2015 Montgomery County Road Bond" (C.R. 6).[3]

Judge Doyal filed a pretrial motion to dismiss the indictment, arguing that §551.143: (1) placed unconstitutional burdens on Free Speech and failed to withstand strict scrutiny; (2) was unconstitutionally overbroad; and (3) vague and ambiguous. (C.R. 45). The trial court held a four-day hearing to determine whether §551.143 of TOMA was facially unconstitutional. He heard from witnesses for both the defense and the State and, after considering the arguments of counsel and the testimony of eight witnesses, including experts, the trial court signed an order granting the motion to dismiss (C.R. 79). The Ninth Court of Appeals issued its opinion, reversed the order of the trial court dismissing the indictments, and remanded the case for further proceedings in *State v. Doyal,* __S.W.3d__, 2018WL761011 (Tex. App.—Beaumont, February 7, 2018). *See* APPENDIX 1.

---

[3] The Petitioner will cite to the clerk's record as C.R. The reporter's record will be cited as 1 R.R., *et seq.*

**I.**

**Did the court of appeals err in concluding that §551.143 did not violate the First Amendment?**

**A.     Reasons for Review**

First, §551.143 of TOMA raises an important question of state and federal law that this Court has never addressed. *See* TEX. R. APP. P. 66.3(b). Until now, Texas public officials could only guess at what speech might be prohibited or wonder whether this law, by burdening political speech, violates the First Amendment.

Second, the court of appeals' finding that §551.143 of TOMA is a legitimate restriction on First Amendment rights is in conflict with this Court's decisions in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), *State v. Johnson*, 475 S.W.3d 860 (Tex. Crim. App. 2015), *Ex parte Perry*, 483 S.W.3d 884 (Tex. Crim. App. 2016), and most recently, *Wagner v. State*, __S.W.3d__, 2018WL849164 (Tex. Crim. App. February 14, 2018). It also conflicts with the United States Supreme Court's decisions in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), and *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). The conflict is particularly problematic because there is so little case law discussing criminal liability under the Texas Open Meetings Act, yet §551.143 affects thousands of public officials on a daily basis. *See* TEX. R. APP. P. 66.3(c).

1

Third, the lower court's holding that §551.143 of TOMA does not unconstitutionally restrict speech has so far departed from the proper course of judicial proceedings as to call for an exercise of this Court's supervisory power. *See* TEX. R. APP. P. 66.3(f).

**B. Overview**

Every aspect of this case involves speech. Judge Doyal was charged because of who he is alleged to have talked to and what he is alleged to have talked about. The allegations in this offense cannot be proven without looking into the content of Judge Doyal's speech.

Chapter 551 of the Government Code (Texas Open Meetings Act or TOMA) has the laudable goal of promoting transparency in government meetings. Section 551.144 prohibits closed meetings and imposes penalties for discussions by a quorum of a governmental body about public business without following TOMA requirements. But §551.143 floods the waterfront by prohibiting members of governing bodies from meeting in numbers of less than a quorum for the purpose of secret deliberations "on matters within the jurisdiction of the governing body or public business." Section 551. 143's driftnet approach tangles up too much protected speech because it is not narrowly tailored like §551.144 and does not pass strict scrutiny.

2

## C.    What the Court of Appeals Held

The Ninth Court of Appeals characterized §551.143 as a content-neutral law restricting conduct and applied mere "rational basis" scrutiny. *Doyal,* 2018WL761011,*2. The court rejected *Reed v. Town of Gilbert, Ariz.*, as controlling authority and instead relied on *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), to conclude that Section 551.143 addressed only conduct and did not deserve any First Amendment protection as speech. The court equated Judge Doyal's claim with that of one of its earlier cases, *Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016). In *Poe*, the appellant challenged the constitutionality of a statute prohibiting display of a firearm in public, but the court in *Poe* (and apparently in the present case) found that the "the statute punishes conduct . . . rather than protected expression, and that the statute bears a rational relationship to the State's legitimate interest in protecting its citizens from harm." *Doyal,* 2018WL761011,*2.

The court of appeals also held that the Fifth Circuit's opinion in *Asgeirsson v. Abbott*, 696 F.3d 454 (5th Cir. 2012), a civil case looking at the constitutionality of a different criminal statute in TOMA, §551.144, was still valid law after *Reed* and provided the proper First Amendment analysis of §551.143. *Doyal,* 2018WL761011,*3-4. Finally, the court held that §551.143's overbreadth was not real and substantial when compared to its plainly legitimate sweep and that Judge Doyal

did not satisfy his burden to show that the provision was unconstitutionally overbroad. *Doyal,* 2018WL761011,*5.

### D. How the Court of Appeals Erred

The court of appeals erred because it failed to follow the Supreme Court's First Amendment jurisprudence and this Court's analysis of First Amendment cases on an issue of statewide importance to members of governing bodies of every size, from rural water boards to metropolitan city councils.

**1. The court of appeals erred in finding that discussion of public matters was equivalent to disorderly conduct and unprotected expression under the First Amendment**.

The court of appeals, without suggestion from any party, classified §551.143 as a restriction on conduct rather than speech:

> We conclude that, unlike the circumstances in *Reed*, which involved the particular type of speech or message on signs, section 551.143 of TOMA is directed at conduct, i.e., the act of conspiring to circumvent TOMA by meeting in less than a quorum for the purpose of secret deliberations in violation of TOMA. It is not the content of the deliberations that is targeted by section 551.143; rather, section 551.143 targets the act of knowingly conspiring to engage in deliberations that circumvent the requirements of TOMA. *Doyal,* 2018WL761011,*4.

The court cited *Broadrick v. Oklahoma* as authority that conduct receives no First Amendment protection: "[I]f the statute punishes conduct and not speech, we apply a rational basis level of review to determine if the statute has a rational relationship

4

to a legitimate state purpose." *Doyal,* 2018WL761011,*2. *Broadrick* involved the Hatch Act and partisan political conduct of soliciting funds by public employees.

But this is not a case about fundraising "conduct." It is a case in which the law clearly restricts the content of what members of a governmental body say to one another. As the Supreme Court explained in *Broadrick*, a facial challenge is particularly appropriate where a statute regulates "only spoken words," implicates the right of association, or acts as a prior restraint as §551.143 does. *See* 413 U.S. at 612-13.

The lower court pointed to its own "instructive" decision in *Ex parte Poe* for support of its holding that Doyal's conduct is subject to "rational basis" analysis rather than strict scrutiny. In *Poe*, the court held that a statute prohibiting the display of a firearm in public was conduct, not speech, and the proscription on displaying a firearm was rationally related to a legitimate government interest in public safety. But displaying a firearm in public is simply not analogous to discussing public business in meetings of less than a quorum. The latter involves pure speech, the former involves pure conduct.[4]

---

[4] Although this Court refused Poe's PDR, it recently granted the State's PDR in *Ross v. State*, 531 S.W.3d 878 (Tex. App.—San Antonio 2017) (pet. granted, January 28, 2018), which addressed the split in Texas intermediate courts concerning whether the "displaying a firearm" statute is unconstitutionally overbroad and vague. The Court should grant review in this case as well because the distinction between "conduct" and "speech" in the context of the First Amendment is vitally important to members of governmental bodies across the state.

5

The Beaumont court is simply mistaken that §551.143 targets "not the content of the deliberations [but] the act of knowingly conspiring to engage in deliberations." Speech is the heart of "deliberations," and punishing an agreement to deliberate does not magically convert speech into conduct. *See Cohen v. California*, 403 U.S. 15, 18 (1971) ("The only 'conduct' which the State sought to punish is the fact of communication.").

## 2. The court of appeals dismissed Supreme Court precedent and followed a Fifth Circuit opinion interpreting a different TOMA statute.

After relying on *Broadrick* and its own *Poe* case to decide that §551.143 was not speech but conduct, the court then adopted the "content-neutral" analysis used in *Asgeirsson v. Abbott*, to hold that §551.143 was not unconstitutionally overbroad or vague. *Asgeirsson* is not controlling authority, has been abrogated by multiple Supreme Court decisions, does not use proper intermediate-scrutiny analysis, and analyzes a different criminal statute under TOMA. Reliance on *Asgeirsson* is misplaced.

The *Asgeirsson* decision was based on this reasoning:

A regulation is not content-based, however, merely because the applicability of the regulation depends on the content of the speech. A statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of its speech. 696 F.3d at 460.

6

The Supreme Court's *Reed* decision was based on this reasoning:

> [T]he crucial first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face. A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of "animus toward the ideas contained" in the regulated speech.135 S.Ct. at 2228; *see also United States v. Stevens*, 559 U.S. 460 (2010); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

The court of appeals should have applied *Reed*'s overbreadth analysis; instead it rejected that Supreme Court case merely because it did not discuss *Asgeirsson. Doyal,* 2018WL761011,*4. Of course not, the Supreme Court had different fish to fry. The Beaumont court, nonetheless, held that §551.143 was content-neutral since "[t]he *Asgeirsson* court held that a regulation is not content-based merely because the applicability of the regulation depends on the content of the speech." *Doyal,* 2018WL761011,*3. That is explicitly contradicted by *Reed*:

> [I]t is well established that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." Thus, a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter. For example, a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed. 135 S. Ct. at 2230 (*internal citations omitted*).

7

Recent Supreme Court decisions uphold restrictions on speech only in very limited circumstances because content-based restrictions are reviewed under strict scrutiny. This Court has also found statutes overly broad when they restrict whole classes of speakers,[5] the statute criminalized activity that was adequately restricted by other penal statutes,[6] or the statute swept up substantially more protected than unprotected activity.[7]

Section 551.143 restricts the speech of a whole class of speakers, "members of a governmental body," and an entire subject matter, "an issue within the jurisdiction of the governmental body or any public business."[8] That means that the statute is a content-based restriction of expression. It is subject to strict scrutiny.

The court of appeals reached the wrong result because it failed to apply the correct "strict scrutiny" standard. It held that Judge Doyal had failed to "prove that the statute was unconstitutionally vague and overbroad," *Doyal,* 2018WL761011,\*5, but, under strict scrutiny, it is the State's duty to shoulder that burden of proof.

---

[5] *Martinez v. State*, 323 S.W.3d 493, 505 (Tex. Crim. App. 2010).

[6] *Ex parte Perry*, 483 S.W.3d 884, 913 (Tex. Crim. App. 2016).

[7] *Ex parte Mitcham*, __S.W.3d__, 2018WL847655 (Tex. Crim. App. February 14, 2018) (concurring op.).

[8] The Supreme Court warned against restricting the speech of an entire group of speakers in *Citizens United v. Federal Election Comm'n*, and this Court has also recognized that limiting the speech or expression of an entire group did not render a statute content-neutral. *Martinez*, 323 S.W.3d at 505 ("That all gang hand signs, not just those used by the VC street gang, were prohibited does not render that prohibition content-neutral.").

**3.    The court of appeals ignored substantial examples of the overbreadth of §551.143.**

The court of appeals would allow restriction of speech based on the salutary effects of TOMA and to encourage transparency in public meetings. *Doyal,* 2018WL761011,*5. *United States v. Stevens* warned against weighing such public interests against free speech:

> The Government thus proposes that a claim of categorical exclusion should be considered under a simple balancing test: "Whether a given category of speech enjoys First Amendment protection depends upon a categorical balancing of the value of the speech against its societal costs." As a free-floating test for First Amendment coverage, that sentence is startling and dangerous. The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. 559 U.S. 460, 470 (2010) (*internal citations omitted*).

The Beaumont court's categorical balancing of the value of transparency against Free Speech whenever members of governmental bodies speak in numbers less than a quorum about public issues is likewise "startling and dangerous."

The court of appeals stated that "[b]efore a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Doyal,* 2018WL761011,*2. But Judge Newell recently reaffirmed the proper test for constitutional overbreadth in *Ex parte Mitcham*:

> Overbreadth analysis already allows that a statute that is capable of being applied constitutionally may nevertheless be unconstitutional if it could also be used to criminalize protected speech....Examples of a statute's plainly legitimate sweep do not tell us how far beyond that legitimate sweep the statute reaches. 2018WL847655,*1 (Newell, J., concurring).

When it comes to protected speech, the legitimate sweep must be no broader than the precise grab of the compelling need that gives rise to the statute. "The First Amendment requires that the Government's chosen restriction on the speech at issue be "actually necessary" to achieve its interest. There must be a direct causal link between the restriction imposed and the injury to be prevented." *United States v. Alvarez*, 567 U.S. 709, 725 (2012) (*internal citations omitted*). And this Court has explained:

> In order to demonstrate that a challenged restriction is narrowly tailored, the government must demonstrate that the restriction "serve[s] a substantial state interest in 'a direct and effective way.'" *Faust v. State*, 491 S.W.3d 733, 748 (Tex. Crim. App. 2015).

Section 551.143 has not been shown to directly and effectively increase governmental transparency or prevent closed meetings. There have been no reported previous criminal prosecutions in Texas in the more than forty years of §551.143's existence. If violations of TOMA were so frequent and egregious as to require stiff criminal sanctions, we should have heard of it before. And if this statute served such a compelling governmental need, it would surely apply to the Texas Legislature and the U. S. Senate, but it does not.

10

The witnesses testifying at the pretrial hearing gave numerous examples of their own or other officials' innocent discussions with other officials and citizens that would be covered by §551.143's broad language. Some of those examples are cited in Judge Doyal's original brief, APPENDIX 3, pp.34-36, and many more in Commissioner Riley's brief, APPELLEE RILEY'S BRIEF TO NINTH COURT OF APPEALS, pp.7-22.

These members of local governmental bodies are at the mercy of rogue or special prosecutors because §551.143 is so broad. As the Supreme Court warned, "[T]he First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S. at 480 (2010).

And TOMA already has a criminal liability statute—§551.144—which serves the purpose of transparency and deterring closed meetings. Section 551.143 sweeps up far more protected, innocent speech than actual criminal conduct. As Presiding Judge Keller explained, "With legitimate applications flowing solely, or almost entirely, from conduct proscribed by other statutes, it could be said that the challenged statute has no life of its own." *Ex parte Perry*, 483 S.W.3d at 913. Section 551.143 has no real life of its own. TOMA has ample remedies for violations: any action taken

during an improper meeting is voidable;[9] an aggrieved person may obtain an injunction in a declaratory judgment action;[10] and criminal sanctions may be sought for a "closed meeting" under §551.144.

The alarm sounded by media proponents in this case is that the public would be shut out of important decision-making by its government. But §551.144 safeguards TOMA's goal of open meetings and §551.143's overbreadth cannot be justified. The public-spirited citizens who serve their communities in governmental bodies (many of them without pay) should be free to express themselves informally to other members one-on-one or in small groups without fear that they will be swept up in the wide net of §551.143. Because this is an issue of statewide importance to officeholders in governmental bodies, concrete guidance from this Court is imperative.

## II.

**Did the court of appeals err in finding that §551.143 was not void for vagueness?**

### A. Reasons for Review

A vague criminal statute that encroaches on free speech violates due process because it fails to give fair warning of what is prohibited, encourages arbitrary and

---

[9] §551.141.

[10] §551.142.

discriminatory enforcement, and has a chilling effect on free expression. *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972). All vaguely worded laws create a trap for the unwary, but §551.143 creates uniquely steep stakes because the mere indictment of a public official has political, as well as personal, consequences that range from loss of public trust to loss of public office. As a constitutional matter, public officials must be put clearly on notice of precisely what speech they are statutorily prohibited from engaging in because even the perception of criminal conduct damages both the body politic and the individual person. *Ex parte Perry*, 483 S.W.3d at 898.

First, because this Court has never addressed the meaning of the statutory language in §551.143, it should grant Judge Doyal's petition and conduct a proper analysis of this criminal law which places so many Texas public officials in potential peril of prosecution. *See* Tex. R. App. P. 66.3 (b).

Second, the court of appeals' conclusion that §551.143 gives adequate notice to the average person is based on reinterpreting the statute, which is in conflict with this Court's statutory construction principles in *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996), and *State v. Johnson*, 475 S.W.3d 860 (Tex. Crim. App. 2015), as well as the Supreme Court's void-for-vagueness body of law in *Grayned v. Rockford*, 408 U.S. 104 (1972), *Kolender v. Lawson*, 461 U.S. 352 (1983), and *Citizens United v.*

13

*Fed. Election Comm'n*, 558 U.S. 310 (2010). This Court should review the Beaumont court's opinion to resolve that conflict. *See* TEX. R. APP. P. 66.3(c).

Third, the intermediate court's opinion, rather than clarifying the language of §551.143's criminal liability (a statute for which there is little judicial guidance), actually muddies the waters by inserting language into the statute and ignoring contradictory statutory language. That court's statutory analysis calls for this Court's review. *See* TEX. R. APP. P. 66.3(f).

### B.    The Hearing in the Trial Court

The experienced trial judge heard numerous witnesses before deciding that §551.143 was unconstitutionally vague. Not only did he hear testimony from experts on the Open Meetings Act and the First Amendment, but he also heard testimony from various Texas public officials. Those officials admitted they struggled to understand the restrictions imposed by §551.143, and they were afraid to speak to fellow members about public business and sometimes even feared being seen together because of the possibility of being accused of trying to circumvent TOMA. (2 R.R. 222, 227,263-266, 270; 3 R.R. 111, 114, 116-117; 5 R.R. 18, 20, 32, 37, 55).

These public officials shudder in their boots because they can so easily be indicted and beggared by defending themselves in court, regardless of their innocent intent. This concern chills their free speech and deters them from doing their job

14

effectively and efficiently. Unlike Judge Doyal and his fellow public officials who must work with their colleagues in resolving governmental issues as they crop up, Monday morning hindsight gives "prosecutor[s] the ability to pick and choose" (3 R.R. 51), and they "have the power to go out and pick those whose communications they don't like" under §551.143 (3 R.R. 61). It was in the context of this evidence from those who must work with TOMA on a daily basis that the trial judge held that §551.143 is unconstitutionally vague.

## C.    What the Court of Appeals Held

The court of appeals held that §551.143 could be understood from the plain words of the statute. The Beaumont court analogized Judge Doyal's arguments regarding the ambiguity in the meaning of "conspire," "circumvent," "secret," and "deliberations" in the context of §551.143 to the ambiguity complained of in *Ex parte Poe* and the alleged ambiguity surrounding "alarm" in that case. The court quickly dispensed with "conspire," "circumvent," and "secret," stating that these words all had plain meanings, so there was no ambiguity. *Doyal,* 2018WL761011,*4. The appeals court then relied on an Attorney General opinion to supply the interpretation of "deliberations." The court concluded that meeting in numbers less than a quorum was a "method of forming a quorum" and that this was discerned from the plain meaning of the words. *Doyal,* 2018WL761011,*5.

15

**D.      How the Court of Appeals Erred**

Section 551.143 is so broadly worded that all members of a governmental body who find themselves in the company of any other members of that same governmental body should be on guard as to what they speak about (or even to speak at all), lest someone construe that "meeting" as a conspiracy. This is the counsel that experts give their governmental entity clients: "The very act of trying to keep it legal could be what helps prove, under [§551.143] a conspiracy." (3 R.R. 47). "You can do an awful lot with [§551.143] in hindsight to make things look like a violation, totally innocent communications." (3 R.R. 49). Because members of governmental bodies can never know exactly what speech is prohibited and in what numbers it is safe to talk, these members often refrain from speaking altogether.

The Beaumont court's artificial construction and insertion of language that is not actually in the statute conflicts with well-established Supreme Court precedent: "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357.

Yet multiple witnesses testified that ordinary people serving their communities are confused by §551.143. Mayor Charles Jessup of Meadows Place said that

16

§551.143 is a "very convoluted and confusing statute. . . I really don't understand it. . . . We try to avoid conversations, and the discussion of a walking quorum has come up. We're not sure exactly how that works, but it scares us all to death." (2 R.R. 222). Eric Scott, mayor of Brookshire, testified that §551.143 "makes me believe that they can go to jail very easily, and no one wants to go to jail." (2 R.R. 266). It "chills" his ability to express himself and solicit others' opinions. (2 R.R. 270). Mayor Jim Kuykendall of Oak Ridge North explained that Section 551.143 "basically neuters everybody." (3 R.R. 111). The members don't feel that they can talk to each other or members of the public. (3 R.R. 114). After learning about this case, Mayor Kuykendall is afraid he's broken the law. He fears just being indicted would be devastating financially. (3 R.R. 117).

Section 551.143 is vague on its face by making it a crime for a member of a governmental body to "conspire" to meet in numbers of less than a quorum "to circumvent" TOMA for the purpose of "secret deliberations" about "public business" or "an issue within the jurisdiction of the government body." The court of appeals erred when it held that "conspire," "circumvent," and "secret" all had plain meanings that required no special judicial interpretation and that "public business" deserved no interpretation at all. The court of appeals treated those words as if there could be no

17

confusion at all. Witnesses at the hearing said otherwise. They are the ones who know the problems of the statute, and they are the ones who need answers.

But perhaps most troubling was the court's blind adoption of the Attorney General's opinion. The Attorney General's resolution of the conflict in §551.143, which prohibits public officials in less than a quorum from having "deliberations," and §551.001, which defines "deliberations" as a verbal exchange between a quorum, is as follows: "'meeting in numbers less than a quorum' describes a method of forming a quorum, and a quorum formed this way may hold deliberations like any other quorum." OP. TEX. ATT'Y GEN., GA-0326, 4 (2005). How can less than a quorum form a quorum? And if it takes a quorum to deliberate, how can less than a quorum deliberate in violation of TOMA? The Beaumont court merely opined that the Attorney General's construction of the statute was discernible from a plain reading of the words. *Doyal,* 2018WL761011,*5.

When a statute burdens First Amendment rights, the vagueness doctrine demands greater specificity than in other contexts to preserve the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109. In other words, it "chills" free speech.

The lower court's analysis also conflicts with this Court's void-for-vagueness analysis in *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) and *Wagner v. State*, __S.W.3d__, 2018WL849164 (Tex. Crim. App. Feb. 14, 2018). Both decisions recognize that criminal statutes require greater specificity and "narrow tailoring" in the First Amendment context. And Judge Keasler has specifically cautioned against statutory interpretation such as the Beaumont court engaged in: "I believe a statute is only 'readily subject to a narrowing construction' if the language already in the statute can be construed in a narrow manner. Adding language to a statute is legislating from the bench." *State v. Markovich*, 77 S.W.3d 274, 285 (Tex. Crim. App. 2002) (Keasler, J., dissenting).

Because public officials around the state have a compelling interest in clearly-worded penal statutes that govern the manner in which they speak to one another and conduct the business of governing, guidance from this Court is necessary.

**PRAYER FOR RELIEF**

For all of the reasons set out above, Judge Doyal asks this Court to grant his petition for discretionary review, reverse the judgment of the Ninth Court of Appeals, and reinstate the judgment of the trial court.

19

Respectfully submitted:

**RUSTY HARDIN & ASSOCIATES, LLP**

By: __/s/ Rusty Hardin__

    **RUSTY HARDIN**
     State Bar No. 08972800
    **CATHY COCHRAN**
     State Bar No. 09499700
    **ANDY DRUMHELLER**
     State Bar No. 00793642
    **NAOMI HOWARD**
     State Bar No. 24092541

    5 Houston Center
    1401 McKinney Street, Suite 2250
    Houston, Texas 77010
    Telephone (713) 652-9000
    Facsimile (713) 652-9800
    Email: rhardin@rustyhardin.com
    Email: ccochran@rustyhardin.com
    Email: adrumheller@rustyhardin.com
    Email: nhoward@rustyhardin.com

Attorneys for Petitioner, CRAIG DOYAL

## CERTIFICATE OF COMPLIANCE

Now comes Petitioner, Craig Doyal, by and through undersigned counsel, and certifies that per TEX. R. APP. P. 9.4(i)(2)(D), the Petitioner's word count , as verified by the computer program, WordPerfect, is 4,409 (of allowed 4,500) words.

*/s/ Naomi Howard*
NAOMI HOWARD

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to TEX. R. APP. P. 9.5(b)(1) and 68.11, an electronic copy of the above and foregoing Petition for Discretionary Review has been electronically served on the prosecutors pro tem for the State and the State Prosecuting Attorney via the electronic filing manager on March 7, 2018.

CHRIS DOWNEY
The Downey Law Firm
2814 Hamilton Street
Houston, Texas 77004
Email: chris@downeylawfirm.com

DAVID CUNNINGHAM
2814 Hamilton Street
Houston, Texas 77004
Email: cunningham709@yahoo.com

JOSEPH R. LARSEN
Gregor │ Cassidy, PLLC
700 Louisiana, Suite 3950
Houston, Texas 77002
Email: jlarsen@grfirm.com

STACEY M. SOULE
State Prosecuting Attorney of Texas
P.O. Box 13046
Austin, Texas 78711-3046
Email: information@spa.texas.gov

*/s/ Naomi Howard*
NAOMI HOWARD

**APPENDIX NO.1**

*State v. Doyal*, __S.W.3d__, 2018WL761011

**(Tex. App.—Beaumont, February 7, 2018)** (*designated for publication*)

2018 WL 761011
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Beaumont.

The STATE of Texas, Appellant
v.
Craig DOYAL, Appellee

NO. 09-17-00123-CR
|
Submitted on January 24, 2018
|
Opinion Delivered February 7, 2018

**On Appeal from the 221st District Court, Montgomery County, Texas, Trial Cause No. 16-06-07315-CR**

**Attorneys and Law Firms**

Christopher J. Downey, Houston, Joseph Robert Larsen, Dallas, David Cunningham, for Appellant.

Andrew Davis, as Amicus Curiae.

Naomi Howard, Houston, Russell Hardin, Anthony Douglas Drumheller, Cathy Cochran, for Appellee.

Before McKeithen, C.J., Horton and Johnson, JJ.

**Opinion**

**OPINION**

STEVE McKEITHEN, Chief Justice

**\*1** The State of Texas appeals the trial court's dismissal of an indictment, which alleged that appellee Craig Doyal, as a member of the Montgomery County Commissioners Court, knowingly conspired to circumvent the Texas Open Meetings Act ("TOMA"). We reverse the trial court's order dismissing the indictment and remand the cause to the trial court for further proceedings consistent with this opinion.

Doyal, a member of the Montgomery County Commissioners Court, was indicted for knowingly conspiring to circumvent the provisions of TOMA by meeting in a number less than a quorum for the purpose of secret deliberations "by engaging in a verbal exchange concerning an issue within the jurisdiction of the Montgomery County Commissioners Court, namely, the contents of the potential structure of a November 2015 Montgomery County Road Bond[.]" *See* Tex. Gov't Code Ann. § 551.143 (West 2017). Doyal filed a motion to dismiss the indictment, asserting that section 551.143 is facially unconstitutional because it violates the free speech provisions of the First Amendment and is vague and overbroad.

Doyal  asserted that he, a county commissioner, and a political consultant met with representatives of a local political action committee ("PAC") to discuss placing a road bond referendum on the November 2015 ballot, and as a result of the meeting, a memorandum of understanding was produced, in which the Texas Patriots PAC promised its political support for putting a road bond proposal on the commissioners' special meeting agenda. According to Doyal, he posted the agenda for a special meeting of the Commissioners Court, and citizens praised the commissioners' work at the special meeting and thanked them for putting a road bond on the ballot. Doyal asserted that the county attorney wrote him a letter stating that the commissioners had complied with the requirements of TOMA, and voters passed the bond in the November election. Doyal alleged that the discussions between himself, the other commissioner, the consultant, and the members of the PAC were not a meeting under TOMA and were not intended to be an agreement to conspire to avoid TOMA.

In his motion to dismiss, Doyal argued that section 551.143 of the Texas Government Code burdens free speech and is subject to strict construction. According to Doyal, the statute facially "does not make sense[ ]" because "[m]eeting in numbers of less than a quorum does not violate a statute that requires a quorum to meet in open session." Doyal contended that because TOMA applies only to specific speech by public officials, it is a content-based penal regimen subject to review under strict scrutiny. According to Doyal's motion to dismiss, section 551.143 is constitutionally overbroad because it prohibits a substantial amount of protected speech when judged in relation to the statute's plainly legitimate sweep. Doyal further asserted that section 551.143 is vague and confusing because the terms "conspire" and "secret" are not defined, and the statute fails to explain what kind of "deliberations" are covered.

**\*2** The State's response in the trial court asserted that section 551.143 is "both constitutional and enforceable." According to the State, section 551.143 is content neutral because "it does not restrict speech based on specific content, but simply requires that the disclosure of the speech take place in an open forum." The State asserted that the purpose of section 551.143 is to control the effects of closed meetings, including decreased transparency, encouragement of fraud or corruption, and increased mistrust in governmental entities. In addition, although the State argued that intermediate scrutiny is the proper standard for reviewing section 551.143, the State contended that even if the strict scrutiny standard applied, section 551.143 meets that test because "it is narrowly tailored and serves a compelling state interest."

The trial court held a hearing, but heard no testimony regarding the underlying facts. Rather, Doyal's witnesses offered opinion testimony regarding their interpretations of section 551.143, the challenges it poses, and its constitutionality. The trial judge signed an order granting Doyal's motion to dismiss the indictment. No party requested the trial court to make findings of fact and conclusions of law, and none were filed. The State then filed this appeal, in which it raises two issues for our consideration: (1) the trial court erred by dismissing the indictment on the ground that section 551.143 is facially unconstitutionally vague and ambiguous, and (2) the trial court erred by dismissing the indictment on the ground that section 551.143 facially violates the First Amendment and is overbroad.

"Whether a statute is facially constitutional is a question of law that we review *de novo.*" *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). If we determine that there is a reasonable construction which will render the statute constitutional, we must uphold the statute. *Tarlton v. State*, 93 S.W.3d 168, 175 (Tex. App.  Houston [14th Dist.] 2002, pet. ref'd). We presume that a statute is valid and that the Legislature did not act unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d at 14-15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id.* at 15.

"The First Amendment  which prohibits laws 'abridging the freedom of speech'  limits the government's power to regulate speech based on its substantive content." *State v. Stubbs*, 502 S.W.3d 218, 224 (Tex. App.  Houston [14th Dist.] 2016, pet. ref'd); *see* U.S. Const. amend. I. "Content-based regulations are those that distinguish favored from disfavored speech based on the idea or message expressed." *Stubbs*, 502 S.W.3d at 224. "[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." *Ex parte Lo*, 424 S.W.3d at 15. "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed)

are presumptively invalid, and the government bears the burden to rebut that presumption." *Id.* Accordingly, we apply strict scrutiny to content-based regulations. *Id.* On the other hand, if the statute punishes conduct and not speech, we apply a rational basis level of review to determine if the statute has a rational relationship to a legitimate state purpose. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when "judged in relation to the statute's plainly legitimate sweep." *Id.* A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App. Texarkana 2006, pet. ref'd). With respect to issues of vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When a statute does not define the words used therein, we give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Under the void-for-vagueness doctrine, a statute will be invalidated if it fails to define the offense in such a manner as to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006); *see also Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

 **\*3** "TOMA requires that meetings of governmental bodies be open to the public." *Asgeirsson v. Abbott*, 696 F.3d 454, 458 (5th Cir. 2012). Section 551.143(a) of TOMA, which makes a violation of TOMA a criminal offense, provides as follows:

> (a) A member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent this chapter by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of this chapter.

Tex. Gov't Code Ann. § 551.143(a). Chapter 551 defines the term "deliberation" as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." *Id.* § 551.001(2) (West Supp. 2017). In addition, chapter 551 defines "governmental body" to include a county commissioners court. *Id.* § 551.001(3) (B). Furthermore, chapter 551 defines a "meeting" as follows:

(A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action; or

(B) except as otherwise provided by this subdivision, a gathering:

(i) that is conducted by the governmental body or for which the governmental body is responsible;

(ii) at which a quorum of members of the governmental body is present;

(iii) that has been called by the governmental body; and

(iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

...

The term does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, the attendance by a quorum of a governmental body at a regional,

state, or national convention or workshop, ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference.

The term includes a session of a governmental body.

*Id.* § 551.001(4). Lastly, chapter 551 defines "quorum" as "a majority of a governmental body, unless defined differently by applicable law or rule or the charter of the governmental body." *Id.* § 551.001(6).

In analyzing section 551.144 of TOMA, [2] the U.S. Court of Appeals for the Fifth Circuit held that "[t]ransparency is furthered by allowing the public to have access to government decisionmaking.... The private speech itself makes the government less transparent regardless of its message. The statute is therefore content-neutral." *Asgeirsson*, 696 F.3d at 461-62. The *Asgeirsson* court held that a regulation is not content-based merely because the applicability of the regulation depends on the content of the speech. *Id.* at 459. "A statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of the speech." *Id.* at 459-60. Doyal contends that *Asgeirsson* was abrogated by *Reed v. Town of Gilbert*, ― U.S. ―, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015). He emphasizes that this Court need not follow cases from the Fifth Circuit Court of Appeals and argues that two additional U.S. Supreme Court cases "show that Section 551.143 does not pass constitutional muster even under intermediate scrutiny[,]" [3] and that *Asgeirsson* dealt with section 551.144, which is "a simple, clear statute[,]" but section 551.143 is "so vague that experts call it 'gibberish' and are confused about its meaning and application."

**\*4** First, we note that *Reed* does not mention or discuss *Asgeirsson*, and we reject Doyal's assertion that *Reed* abrogated *Asgeirsson*. *See Reed*, 135 S.Ct. at 2218-39. Second, in *Reed*, the issue facing the Supreme Court was the constitutionality of a town's "Sign Code" that prohibited the display of outdoor signs without a permit, but exempted numerous categories of signs from that requirement, including ideological signs, political signs, and temporary directional signs relating to a qualifying event. *Id.* at 2224-25. In *Reed*, a church and its pastor wished to advertise the time and location of its Sunday church services, which were held in a variety of different locations due to financial constraints. *Id.* at 2225. The church was twice cited for exceeding the time limits for displaying temporary directional signs, as well as its failure to include the date of the event on the signs. *Id.* The church filed suit in federal district court, arguing that the Sign Code violated its freedom of speech. *Id.* at 2226. After the District Court granted summary judgment in favor of the town, the Court of Appeals affirmed, and the Supreme Court granted certiorari. *Id.* After concluding that the town's Sign Code was clearly not content-neutral, but instead was "content based on its face[,]" the Supreme Court held that the Sign Code could not survive strict scrutiny because the Sign Code was not narrowly tailored to further a compelling government interest. *Id.* at 2228-32.

We conclude that, unlike the circumstances in *Reed*, which involved the particular type of speech or message on signs, section 551.143 of TOMA is directed at conduct, *i.e.*, the act of conspiring to circumvent TOMA by meeting in less than a quorum for the purpose of secret deliberations in violation of TOMA. *See* Tex. Gov't Code Ann. § 551.143; *Reed*, 135 S.Ct. at 2228-32; *Asgeirsson*, 696 F.3d at 461-62. It is not the content of the deliberations that is targeted by section 551.143; rather, section 551.143 targets the act of knowingly conspiring to engage in deliberations that circumvent the requirements of TOMA. *See* Tex. Gov't Code Ann. § 551.143. "The prohibition in TOMA is applicable only to private forums and is designed to *encourage* public discussion[.]" *Asgeirsson*, 696 F.3d at 461. Therefore, we reject Doyal's contention that we must apply strict scrutiny in reviewing section 551.143.

This Court's opinion in *Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet. ref'd), is instructive. *In Ex parte Poe*, the appellant asserted that the disorderly conduct statute is facially unconstitutional due to its alleged vagueness and its alleged violation of his rights under the First, Second, Fifth, and Fourteenth Amendments. *Id.* at 350. The statute at issue in *Ex parte Poe* provided that " 'A person commits an offense if he intentionally or knowingly ... displays a firearm or other deadly weapon in a public place in a manner calculated to alarm.' " *Id.* at 354. This Court concluded

that the statute punishes conduct (displaying a firearm in a public place in a manner calculated to cause alarm) rather than protected expression, and that the statute bears a rational relationship to the State's legitimate interest in protecting its citizens from harm. *Id.* We therefore rejected Poe's argument that strict scrutiny applied, and we began by presuming that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *Id.* We also rejected Poe's argument that the word "alarm" was undefined and inherently subjective, and instead gave the undefined terms in the statute their plain meaning. *Id.*

In the case at bar, Doyal argues that section 551.143 is vague because the terms "conspire," "circumvent," and "secret" are not defined, and the statute does not explain what type of deliberations are covered. As was the case in *Poe*, the terms at issue have a plain meaning. "Conspire" is commonly understood to mean "to make an agreement with a group and in secret to do some act (as to commit treason or a crime or carry out a treacherous deed): plot together[.]" Webster's Third International Dictionary 485 (2002). "Circumvent" means "to overcome or avoid the intent, effect, or force of: anticipate and escape, check, or defeat by ingenuity or stratagem: make inoperative or nullify the purpose or power of esp. by craft or scheme[.]" *Id.* at 410. "Secret" means "kept from knowledge or view: concealed, hidden" and "done or undertaken with evident purpose of concealment[.]" *Id.* at 2052.

**\*5** Doyal asserts that because chapter 551 defines "deliberation" as a verbal exchange during a meeting between a quorum of members concerning an issue within the jurisdiction of the governmental body or any public business, yet section 551.143 refers to deliberations of less than a quorum, the statute is unconstitutionally vague. *See* Tex. Gov't Code Ann. §§ 551.001(2), 551.143. The Attorney General has opined that TOMA does not require that a governmental body's members be in each other's physical presence to constitute a quorum, and, therefore, section 551.143 applies to "members of a governmental body who gather in numbers that do not physically constitute a quorum at any one time but who, through successive gatherings, secretly discuss a public matter with a quorum of that body." Tex. Att'y Gen. Op. No. GA-0326 p. 3 (2005). [4] The Attorney General explained that the definition of "deliberations" as used in section 551.143 "is consistent with its definition in section 551.001 because 'meeting in numbers less than a quorum' describes a method of forming a quorum, and a quorum formed this way may hold deliberations like any other quorum." *Id.* at p. 4; *see* *Esperanza Peace & Justice Ctr. v. City of San Antonio*, 316 F.Supp.2d 433, 473, 476 (W.D. Tex. 2001). The Attorney General also opined that "[t]his construction is discernible from a plain reading of the provision." Tex. Atty's Gen. Op. No. GA-0326 p. 4. We find the Attorney General's reasoning persuasive.

We conclude that section 551.143 describes the criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited. *See* *Holcombe*, 187 S.W.3d at 499. The statute provides reasonable notice of the prohibited conduct. *See* *Holcombe*, 187 S.W.3d at 499; *see also* *Kolender*, 461 U.S. at 357, 103 S.Ct. 1855; *see also* Tex. Gov't Code Ann. § 551.143. We conclude that the statute is reasonably related to the State's legitimate interest in assuring transparency in public proceedings. *See* *Asgeirsson*, 696 F.3d at 461-62. The alleged overbreadth of section 551.143 is not real and substantial when judged in relation to its plainly legitimate sweep. *See* *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908. Doyal has not satisfied his burden to prove that the statute is unconstitutionally vague and overbroad. *See* *id.* We sustain the State's appellate issues, reverse the trial court's order dismissing the indictment, and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

**All Citations**

--- S.W.3d ----, 2018 WL 761011

Footnotes

Doyal is the elected County Judge of Montgomery County, and not technically a commissioner. The County Judge is a member of Commissioners Court. Tex. Loc. Gov't Code Ann. § 81.001(a) (West Supp. 2017).

Section 551.144 makes calling or aiding in calling a closed meeting, closing or aiding in closing a meeting to the public, or participating in a closed meeting a criminal offense. Tex. Gov't Code Ann. § 551.144 (West 2017).

Doyal argues that under *Packingham v. North Carolina,* U.S. , 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017) and *Matal v. Tam,* U.S. , 137 S.Ct. 1744, 198 L.Ed.2d 366 (2017), section 551.143 cannot survive even intermediate scrutiny. In those cases, the Supreme Court invalidated a law banning sex offenders from using social media and held that the First Amendment bars a law that prohibited disparaging trademarks. *Packingham,* 137 S.Ct. at 1735, 1738; *Matal,* 137 S.Ct. at 1751. We reject the assertion that these cases render it impossible for section 551.143 to survive intermediate scrutiny.

We recognize the difficulties this language causes the State in its attempt to prove this element beyond a reasonable doubt; however, a statute that creates difficulty for the State in meeting its burden of proof is not unconstitutional.

**End of Document**

© 20 8 Thomson Reuters. No c a m to or g na U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX NO. 2**

**A<small>PPELLEE'S</small> B<small>RIEF</small>, Cause No. 04-17-00123-CR**

ACCEPTED
09-17-00123-CR
NINTH COURT OF APPEALS
BEAUMONT, TEXAS
8/21/2017 3:29 PM
CAROL ANNE HARLEY
CLERK

NO. 09-17-00123-CR

COURT OF APPEALS FOR THE
NINTH DISTRICT OF TEXAS
Beaumont, Texas

**STATE OF TEXAS**
*Plaintiff - Appellant,*

**v.**

**CRAIG DOYAL**
*Defendant - Appellee.*

Appeal from the 221st Judicial District Court
Montgomery County, Texas
Trial Court Cause No. 16-06-07315-CR
Hon. Randy Clapp

**APPELLEE CRAIG DOYAL'S BRIEF**

**Rusty Hardin**                                    **RUSTY HARDIN & ASSOCIATES, LLP**
  State Bar. No. 08972800                    5 Houston Center
**Cathy Cochran**                               1401 McKinney, Suite 2250
  State Bar No. 09499700                     Houston, Texas  77010
**Andy Drumheller**                            Telephone: (713) 652-9000
  State Bar No. 00793642                     Facsimile: (713) 652-9800
**Naomi Howard**                               Email: rhardin@rustyhardin.com
  State Bar No. 24092541                     Email: ccochran@rustyhardin.com
                                                             Email: adrumheller@rustyhardin.com
*Attorneys for Appellee Craig Doyal*   Email: nhoward@rustyhardin.com

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

The parties and counsel listed below are involved in this matter.

Appellant:
      The State of Texas

Appellee:
      Craig Doyal

Counsel for Appellant:
      Chris Downey
      The Downey Law Firm
      2814 Hamilton Street
      Houston, Texas  77004

      David Cunningham
      2814 Hamilton Street
      Houston, Texas  77004

      Joseph R. Larsen
      Sedgwick, LLP
      1200 Smith Street
      Houston, Texas  77002

Counsel for Appellee:
      Rusty Hardin
      Cathy Cochran
      Andy Drumheller
      Naomi Howard
      **RUSTY HARDIN & ASSOCIATES, LLP**
      5 Houston Center
      1401 McKinney, Suite 2250
      Houston, Texas  77010

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................ ii

TABLE OF CONTENTS ..................................................................................... iii

INDEX OF AUTHORITIES ................................................................................. v

STATEMENT REGARDING ORAL ARGUMENT ............................................ ix

ISSUES PRESENTED ......................................................................................... x

STATEMENT OF FACTS ................................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................... 3

ARGUMENT ...................................................................................................... 5

    I.     Because Section 551.143 is a content-based law that restricts speech, it is (1) presumed unconstitutional and (2) subject to strict scrutiny. ...................................................................................... 5

          A.    The Standard of Review: "Strict scrutiny" applies to all content-based statutes restricting speech. ................................... 5

          B.    Section 551.143 is a content-based regulation of speech. .......... 8

               1.  Attorney General Opinion GA-0326 (2005) rewrote Section 551.143. ................................................................ 8

               2.  Section 551.143 restricts "secret deliberations." ............ 11

               3.  A statute that singles out and regulates speech of a specific subject matter is a content-based limitation of speech, subject to strict scrutiny. ................................ 12

                      a.  *Reed v. Town of Gilbert* clarified that Section 551.143 is a content-based regulation. ................. 12

                      b.  *Reed* abrogated *Asgeirsson v. Abbott*. ................... 15

                      c.  The State claims that *Reed*, *McCullen*, and *Asgeirsson* have been analyzed by a Texas federal court. ........................................................ 17

          C.    Post-*Reed*, courts nationwide have invalidated numerous content-based laws regulating speech. ..................................... 20

          D.    Even before *Reed*, laws restricting political speech were especially likely to be found unconstitutional. ......................... 23

II. The State has not shown that Section 551.143 passes strict scrutiny. .............................................................................26

    A. The State has failed to prove that Section 551.143 serves a compelling need that is not already met by other TOMA provisions. ..................................................................26

        1. TOMA addresses important, but not compelling, governmental interests. ....................................27

    B. The State has failed to prove that Section 551.143 is narrowly tailored. ...........................................31

        1. Section 551.143 has the demonstrated effect of chilling public officials' free speech. ...........................34

    C. Section 551.143 is unconstitutionally vague as well as overbroad. ..................................................37

III. Section 551.143 does not pass even intermediate scrutiny. ..............41

PRAYER ..............................................................................45

CERTIFICATE OF SERVICE ...............................................46

CERTIFICATE OF COMPLIANCE .......................................47

**APPENDIX**

Defendant Craig Doyal's Motion to Dismiss the Indictment ...........................Tab A

# INDEX OF AUTHORITIES

**Cases**

*Asgeirsson v. Abbott* 696 F.3d 454 (5th Cir. 2012) .......................................... passim

*Auspro Enterprises, LP v. Texas Dept. of Transp.*
    506 S.W.3d 688 (Tex. App.—Austin 2016, pet. filed) ................................20

*Burrage* v. *United States*
    134 S.Ct. 881 (2014)................................................................................10

*Cahaly v. Larosa*
    796 F.3d 399 (4th Cir. 2015) ..................................................................22

*Champion v. Commonwealth*
    2017 WL 636420, __ S.W.3d ___ (Ky. Feb. 16, 2017) ...............................21

*Citizens United v. Federal Election Commission*
    130 S.Ct. 876 (2010)................................................................................16

*Defense Distributed v. U.S. Dept. of State*
    121 F.Supp.3d 680 (W.D. Tex. 2015) ........................................................17

*Defense Distributed v. U.S. Dept. of State*
    2017 WL1032309 (5th Cir., Mar. 15, 2017) ................................................19

*Defense Distributed v. U.S. Dept. of State*
    838 F.3d 451 (5th Cir. 2016) ..................................................................18

*Draego v. City of Charlotteville,Va.*
    2016 WL 6834025 (W.D. Va. 2016)..........................................................25

*Esperanza Peace and Justice Center v. City of San Antonio*
    316 F.Supp.2d 433 (W.D. Tex. 2001) .................................................. 32, 33

*Ex parte Lo*
    424 S.W.3d 10 (Tex. Crim. App. 2013) ................................................ passim

*Ex parte Perry*
    483 S.W.3d 884 (Tex. Crim. App. 2016) ............................................ 6, 23, 25

*Ex parte Thompson*
    442 S.W.3d 325 (Tex. Crim. App. 2014) ................................................ 6, 23

*Florida State Bar v. B.J.F.*
    491 U.S. 524 (1989)................................................................................28

*Grayned v. Rockford*
 408 U.S. 104 (1972)................................................................37

*In re Texas Senate*
 36 S.W.3d 119 (Tex. 2000) .....................................................28

*Ind. Civil Liberties Union v. Ind. Sec'y of State*
 No. 1:15-CV-01356-SEB-DML (D. Ind. 2015) .......................22

*Jenevein v. Willing*
 493 F.3d 551 (5th Cir. 2007) ..................................................24

*Long v. State*
 931 S.W.2d 285 (Tex. Crim. App. 1996) ......................... 23, 37

*Mabry v. Union Parish School Board*
 974 So.2d 787 (La. App. 2014) ...............................................10

*Manzi v. State*
 88 S.W.3d 240 (Tex. Crim. App. 2002) ....................................3

*Matal v. Tam*
 2017 WL 2621315 (June 19, 2017)........................... 5, 41, 42

*Mays v. State*
 476 S.W.3d 454 (Tex. Crim. App. 2015) ...................................3

*McIntyre v. Ohio Elections Comm'n*
 514 U.S. 334 (1995)................................................................24

*Mnyofu v. Board of Education of Rich Township High School Dist. 227*
 2016 Westlaw 13197336 (N.D. Ill. 2016) ................................25

*Norton v. City of Springfield*
 768 F.3d 713 (7th Cir. 2014) ..................................................21

*Norton v. City of Springfield*
 806 F.3d 411 (7th Cir. 2015) ..................................................21

*Packingham v. North Carolina*
 2017 WL 2621313 (June 19, 2017)............................... 5, 41

*Penrod Drilling Corp. v. Williams*
 868 S.W.2d 294 (Tex. 1993) ...................................................17

*Police Dept. of Chicago v. Mosley*
 408 U.S. 92 (1972)..................................................................15

*Rangra v. Brown*
566 F.3d 515 (5th Cir. 2009) ........................................................................17

*Reed v. Town of Gilbert*
135 S.Ct. 2218 (2015)............................................................................ passim

*Renton v. Playtime Theatres, Inc.*
475 U.S. 41 (1986)........................................................................................17

*Republican Party of Minnesota v. White*
536 U.S. 765 (2002)......................................................................................24

*Rideout v. Gardner*
123 F. Supp. 3d 218 (D.N.H. 2015) ............................................................22

*Rosemond v. Markham*
135 F.Supp.3d 574 (E.D. Ky. 2015)............................................................23

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*
502 U.S. 105 (1991)......................................................................................32

*Skilling* v. *United States*
561 U. S. 358 (2010) ......................................................................................9

*State v. Bishop*
787 S.E.2d 814 (N.C. 2016) ........................................................................22

*Susan B. Anthony List v. Driehaus*
814 F.3d 466 (6th Cir. 2016) .......................................................................24

*Thomas v. Schroer*
2017 WL 1208672 (W.D. Tex. March 31, 2017).........................................20

*Turner Broadcasting Sys., Inc. v. FCC*
512 U.S. 622 (1994)........................................................................................7

*United States* v. *Bass*
404 U. S. 336 (1971) ....................................................................................10

*United States v. Salerno*
481 U.S. 739 (1987)........................................................................................6

*Ward v. Rock Against Racism*
491 U.S. 781 (1989)................................................................................. 7, 17

*Washington State Grange v. Washington State Republican Party*
552 U.S. 442 (2008)........................................................................................6

vii

*Washington v. Glucksberg*
    521 U.S. 702 (1997)..........................................................................................6

*Working America, Inc. v. City of Bloomington*
    142 F.Supp.3d 823 (D. Minn. 2015) ...............................................................22

**Other Authorities**

Adam Winkler, *Fatal in Theory and Strict in Fact*: *An Empirical Analysis of Strict Scrutiny,* 59 VANDERBILT L. REV. 793 (2006).................................................7

C. Robert Heath & Emily Willms Rogers, *Did the Attorney General Shine Light on the Confusion in Texas' Sunshine Law?  Interpreting Open Meetings Act Provision § 551.143*, 7 TEX. TECH. ADMIN. L.J. 97, 99 (2006)................ 8, 31

Carlos Doroteo, *The Texas Open Meetings Act: An Old-Fashioned, Wild-West, First Amendment Shoot-Out*, 56 S. TEX. L. REV. 675, 708 (2015)..................9

Devon Helfmeyer, *Do Public Officials Leave Their Constitutional Rights at the Ballot Box?  A commentary on the Texas Open Meetings Act,* 15 TEX. J. CIVIL LIB. & CIVIL RIGHTS 205, 227-28 (2010) ..................................... 29, 30

Hugh Hansen, *Symposium: Most Important Free Speech Case in Many Years*; http://www.scotusblog.com/2017/06/symposium-important-free-speech-case-many-years/ ..............................................................................................42

*Sam Kinch, Sharpstown Stock-Fraud Scandal*, The Handbook of Texas Online .....9

Scott Houston, *Texas Open Meetings Act: Constitutional?*, 13 TEX. TECH. ADMIN. L.J. 79, 100 (2011)..................................................................................8

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is essential to the full development of the constitutional issue in this case of first impression in the United States.  Although all fifty states have open meeting laws, no jurisdiction has a criminal conspiracy statute like Section 551.143, and apparently there has never been a successful criminal conviction for a "walking quorum" or "daisy chain" violation of an open meetings law.  This is an issue of grave practical importance to Texas officials subject to the Texas Open Meetings Act (TOMA).

## ISSUES PRESENTED

I.      Because Section 551.143 is a content-based law that restricts speech, it is (1) presumed unconstitutional and (2) subject to strict scrutiny.

II.     The State has not shown that Section 551.143 passes strict scrutiny.

III.    Section 551.143 does not pass even intermediate scrutiny under the Supreme Court's most recent cases.

**STATEMENT OF FACTS**

In 2015, Montgomery County was choking with traffic. Residents were demanding road relief from county commissioners. Despite public outcry, a road bond proposal on the May 2015 ballot failed to pass, in part, because the Texas Patriots PAC, a local Tea Party group, actively campaigned against it. The commissioners continued to hear complaints about traffic, but were reluctant to risk another road bond ballot defeat. In August 2015, the PAC indicated they would be willing to support a road bond package if their fiscal concerns were addressed. Representatives of the PAC requested a meeting with County Judge Doyal. Facilitated by Marc Davenport, Judge Doyal and Commissioner Riley met with the PAC to hear proposals for reconsidering a road bond proposal. After the meeting, the PAC, Judge Doyal, and Commissioner Riley held a press conference announcing the results of the meeting, and Judge Doyal announced that he was placing a revised road bond on the agenda for consideration by the full Commissioners' Court. After discussion and public comment, the Commissioners' Court voted unanimously to put a new road bond on the November ballot. Two months later, voters passed the road bond by 60%, whereas the May proposal had failed by 60%.[1]

---

[1] *See Appendix A*, Motion to Dismiss, pp. 4-6 for additional background facts.

The State filed criminal charges against Montgomery County Judge Craig Doyal, Commissioners Charley Riley and Jim Clark, and Marc Davenport, a political consultant, for purportedly conspiring to violate the Texas Open Meetings Act (TOMA).

After an evidentiary hearing, the trial judge granted Judge Doyal's Motion to Dismiss because Government Code, Section 551.143, violated the Free-Speech Clause of the First Amendment.

Judge Doyal agrees with the State that whether Section 551.143 passes constitutional muster is a question of law, not a question of fact. The hearing on the motion to dismiss gave the State an opportunity to present evidence to prove that this penal law served a compelling governmental need and was narrowly tailored to serve only that compelling need. Judge Doyal and his fellow defendants offered evidence that the statute is both overbroad (covers too much protected speech) and under-inclusive (does not cover the most important public officials) and was unconstitutionally vague.

In the interest of brevity, the witnesses' testimony is referred to only at relevant points in this brief.[2]

---

[2] To the extent that the legal issues are supported by witnesses' testimony or credibility assessments, appellate courts defer to the trial judge who, as Johnny-on-the-Spot, is best situated to make those judgments. Thus, all facts are viewed in the light most favorable to the

2

## SUMMARY OF THE ARGUMENT

The purpose of the Texas Open Meetings Act (TOMA) is to increase governmental transparency, discourage fraud and corruption, and decrease public mistrust of government. Judge Doyal respects and embraces transparency in governmental affairs. He does not challenge TOMA as a "sunshine" statutory scheme to ensure openness.

However, one single conspiracy statute within that Act—Section 551.143— is unconstitutionally overbroad and vague. It is a content-based regulation of speech which restricts "secret deliberations," i.e. speech, about "public business" by public officials gathering in less than a quorum outside of a properly posted open meeting. It acts as a blunderbuss when a stiletto is needed. By its vagueness and breadth, it "chills" the free speech rights of public officials.

As a content-based law that restricts speech, Section 551.143 is presumed unconstitutional and is subject to strict scrutiny. Under *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015), the Supreme Court's most recent relevant case, a law regulating speech is "content-based" if that law "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. As the Court of Criminal Appeals has explained, "[i]f it is necessary to look at the

---

party prevailing in the trial court. *See Mays v. State*, 476 S.W.3d 454, 459 (Tex. Crim. App. 2015); *Manzi v. State*, 88 S.W.3d 240, 254 (Tex. Crim. App. 2002) (Cochran. J, concurring).

3

content of the speech to decide if the speaker violated the law, then the regulation is content-based." *Ex parte Lo*, 424 S.W.3d 10, 15 n.12 (Tex. Crim. App. 2013).

Section 551.143 is a content-based statute because one must know what public officials are saying when they gather in less than a quorum. If they are talking about "public business" or "an issue within the jurisdiction of the governmental body," then Section 551.143 applies. If they are talking about baseball or the weather, then Section 551.143 does not apply.

The State has failed to show that Section 551.143 passes strict scrutiny. It has failed to show that this specific statute (as opposed to TOMA as a general scheme) (1) serves a compelling governmental interest; (2) is necessary to protect that interest which cannot be adequately protected by other means, and (3) is narrowly tailored to serve only that compelling interest, i.e., that it does not prohibit more speech than is necessary.

The State relies almost exclusively upon a pre-*Reed* Fifth Circuit case, *Asgeirsson v. Abbott*, 696 F.3d 454 (5th Cir. 2012), in arguing that Section 551.143 is a "content-neutral" law subject to intermediate scrutiny.

First, *Asgeirsson* was abrogated by *Reed*, which contradicted its premise and reasoning.

4

Second, this court need not follow Fifth Circuit cases, but it must follow the precedent of the Supreme Court and the Court of Criminal Appeals.

Third, even if *Asgeirsson* were still good law and the controlling precedent, the most recent Supreme Court cases, *Packingham v. North Carolina,* 2017 WL 2621313 (June 19, 2017), and *Matal v. Tam,* 2017 WL 2621315 (June 19, 2017), show that Section 551.143 does not pass constitutional muster even under intermediate scrutiny.

Fourth, and most important, *Asgeirsson* dealt with Section 551.144, which is a simple, clear statute: Public officials–look around you; if there's a quorum, you must conduct a properly posted open meeting under TOMA. Section 155.143, on the other hand, is so vague that experts call it "gibberish" and are confused about its meaning and application.

## ARGUMENT

**I.  Because Section 551.143 is a content-based law that restricts speech, it is (1) presumed unconstitutional and (2) subject to strict scrutiny.**

**A.  The Standard of Review: "Strict scrutiny" applies to all content-based statutes restricting speech.**

Appellate courts review *de novo* whether a statute is facially constitutional. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When someone attacks the constitutionality of a statute, courts usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.*

5

at 15. Normally, the burden rests on the person challenging the law to establish its unconstitutionality. *Id.* But when the State seeks to restrict or punish speech based on its content, that usual presumption is reversed. *Id.*[3]

Content-based regulations are presumptively invalid, and the State must rebut that presumption. *Id.*[4] Courts apply the "most exacting scrutiny to

---

[3] The State argues that the Supreme Court disfavors facial challenges and quotes *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008). That case involved a lawsuit filed immediately after Washington enacted a "modified blanket primary" system in which candidates could express their political party preference on the ballot regardless of whether the party approved of them. The parties filed suit, claiming that this system violated their First Amendment rights of free association because voters would think the candidates were supported by the political party. Unfortunately, they did not wait to see whether voters really were confused. It was all speculation because the law had not yet been applied to any elections. There was no live controversy and no risk yet to either a candidate or a political party.

Here, however, there certainly is a case and controversy and grave risk. County Judge Doyal and Commissioner Riley were charged with committing a crime under Section 551.143 and are positioned, as were John Lo and Ronald Thompson, to mount a pretrial facial challenge to its constitutionality under the First Amendment. *Ex parte Lo*, 424 S.W.3d at 14; *Ex parte Thompson,* 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). A facial challenge to the constitutionality of a criminal statute is *best* made before trial so that the defendant, if he prevails, need not endure the extravagant time, expense, and anxiety that any such criminal trial entails, when the ultimate outcome is a matter of law, not fact. *See Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016) (facial challenge to penal statute on First Amendment grounds may be made–and appealed–pretrial).

[4] The State has mistakenly relied on cases that do not deal with the Free Speech Clause in stating that one who makes a facial challenge to a law "must show 'that no set of circumstances exists under which [the statute] would be valid'" or that the statute lacks any "plainly legitimate sweep." Appellant's Brief at 22 and 30. Those cases, *United States v. Salerno*, 481 U.S. 739, 745 (1987) (finding that Bail Reform Act which authorized pretrial detention was not facially unconstitutional under the Eight Amendment), and *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7 (1997) (holding that Washington's ban on assisted suicide was rationally related to legitimate government interests), are irrelevant to a discussion of constitutionality under the First Amendment, which has its own jurisprudence and standards. *See Ex parte Perry,* 483

6

regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Id.* (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994)).

To satisfy the strict-scrutiny standard, a law that regulates speech must be (1) necessary to serve a compelling state interest and (2) narrowly drawn. *Ex parte Lo*, 424 S.W.3d at 15. "A law is narrowly drawn if it employs the least restrictive means to achieve its goal and if there is a close nexus between the government's compelling interest and the restriction." *Id.*[5]

But if a less restrictive means of serving the compelling interest could be as effective in achieving the legitimate purpose of the statute, then the law in question does not satisfy strict scrutiny. *Id.* Given this test, "It is the rare case in which a speech restriction withstands strict scrutiny." *Reed v. Town of* Gilbert, 135 S.Ct. 2218, 2236 (2015). (Kagan, J., concurring) (citations and quotations omitted).[6]

---

S.W.3d at 902-03 ("Under the First Amendment's "overbreadth" doctrine, a law may be declared unconstitutional on its face, even if it might have some legitimate applications.").

[5] Regulations that are content-neutral, *i.e.* that regulate speech without regard to its content, are subject to a less exacting "intermediate scrutiny" which requires that the challenged law not be "substantially broader than necessary" to achieve the government's important interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800 (1989).

[6] Colloquially, "strict in theory, fatal in fact." According to one source, seventy percent of all laws subject to strict scrutiny in federal courts are struck down, while seventy-eight percent of challenged laws affecting speech are struck down. Adam Winkler, *Fatal in Theory and Strict in Fact*: *An Empirical Analysis of Strict Scrutiny,* 59 VANDERBILT L. REV. 793 (2006).

**B.      Section 551.143 is a content-based regulation of speech.**

Section 551.143(a) states:

> A member or group of members of a governmental body
> commits an offense if the member or group of members
> knowingly conspires to circumvent this chapter by
> meeting in numbers less than a quorum for the purpose of
> secret deliberations in violation of this chapter.

On its face, this statute does not make sense.  According to one expert
witness, the statute is "gibberish." (RR2 at 40).  Gathering in numbers of less than
a quorum does not violate a statute that requires a quorum to meet in open session.
You either have a quorum or you don't; with the former you have open meetings,
with the latter, you have informal discussions.

### 1.      Attorney General Opinion GA-0326 (2005) rewrote Section 551.143.

From its enactment in 1973, courts, commentators, experts, and (most
importantly) public officials who try to obey this criminal law have been
confused.[7]  So confused, that in 2004 (some thirty years after it had originally been

---

[7] *See generally,* C. Robert Heath & Emily Willms Rogers, *Did the Attorney General Shine Light on the Confusion in Texas' Sunshine Law?  Interpreting Open Meetings Act Provision § 551.143*, 7 TEX. TECH. ADMIN. L.J. 97, 99 (2006) ("Despite these attempts at clarification" by courts and attorney general opinions "confusion persists, and local officials desiring to steer clear of violating the Act look for a bright-line rule that clearly defines when discussions among members of a governing body outside a formal public meeting are permissible and when they are not."); Scott Houston, *Texas Open Meetings Act: Constitutional?*, 13 TEX. TECH. ADMIN. L.J. 79, 100 (2011) ("Even with vast knowledge of the act [TOMA], practitioners still have trouble advising clients.  Many elected officials ask if they can talk about public business with other members of the governmental body outside of a properly posted meeting.

enacted but apparently never used in the criminal context)[8] Tom Maness, the long-time Jefferson County District Attorney, requested an Attorney General opinion about it. He "had significant doubt as to the constitutionality of the statute," there was "significant disagreement" as to its intended meaning, and he was concerned that it was "void for vagueness."[9]

The Attorney General basically rewrote the statute to prohibit:

> A member or members of a governmental body who knowingly conspire to circumvent [TOMA] by gathering in numbers that do not physically constitute a quorum at any one time but who through successive gatherings create a quorum of that body for the purpose of secret deliberations in violation of [TOMA].[10]

---

Generally, the answer is no."); Carlos Doroteo, *The Texas Open Meetings Act: An Old-Fashioned, Wild-West, First Amendment Shoot-Out*, 56 S. TEX. L. REV. 675, 708 (2015) ("The sheer complexity and confusion arising out of this real world event [the Port of Houston board member fight] provides a strong case that TOMA is overbroad and vague, since it is difficult to discern when exactly the law has been broken.").

[8] Section 551.143 was added to the original 1967 Open Meetings Act in 1973, after the 1971 Sharpstown stock-fraud scandal. *Sam Kinch, Sharpstown Stock-Fraud Scandal*, The Handbook of Texas Online. In 1993, the Open Meetings Act was codified in chapter 551 of the Texas Government Code.

[9] https://texasattorneygeneral.gov/opinions/opinions/50abbott/rq/2004/pdf/RQ0291GAf

[10] As one expert witness testified, the only way for Section 551.143 to mean what the AG's opinion says it means is to invent a lot of new words and put them in the statute (RR2 at 56). But an AG opinion cannot add new words or new definitions to a penal statute–a law that must be strictly construed and whose provisions are interpreted under the Rule of Lenity to favor the defendant, not the State.

It is a "familiar principle that 'ambiguity' in the ambit of criminal statutes should be resolved in favor of lenity." *Skilling* v. *United States*, 561 U. S. 358, 410 (2010). That principle prevents courts from giving the words of a criminal statute "a meaning that is different from

9

We are told by Attorney General Opinion GA-0326 (2005) that the purpose of Section 551.143 is to prevent and punish a "walking quorum" or "daisy chain" secret deliberation. *Id.* at *2. This occurs, according to the Attorney General, when members conspire to commit a criminal offense by having secret deliberations through serial communications with each other until a quorum is reached. *Id.* Of course, that is not what the law actually says.[11] The Attorney General simply found that construction "discernible" from his own reading. *Id.*[12]

---

[their] ordinary, accepted meaning, and that disfavors the defendant." *Burrage* v. *United States*, 134 S.Ct. 881, 891 (2014). And it means that when a criminal statute has two possible readings, courts do not "'choose the harsher alternative'" unless the legislature has "'spoken in language that is clear and definite.'" *United States* v. *Bass*, 404 U. S. 336, 347–349 (1971).

[11] A Kansas *civil* statute does say what the Attorney General argues that Section 551.143 meant to say. *See Appendix A*, Motion to Dismiss, fn. 8.

[12] According to a 1990 Louisiana Attorney General Opinion, "a 'walking quorum' is a meeting of a public body where different members leave the meeting and different members enter the meeting so that while an actual quorum is never physically present an actual quorum during the course of the meeting participates in the discussion." *Mabry v. Union Parish School Board*, 974 So.2d 787, 789 (La. App. 2014) (quoting Op. Atty. Gen. No. 90-349, July 26, 1990). The *Mabry* court held that the "casual telephone encounters where several board members individually and separately discussed the situation" concerning an employment contract would have "to reach a much more structured level with secretive binding force on at least a quorum of the membership before the Open Meetings Act would be implicated." *Id.* The court explained:

> [W]e find that the informal exchange of ideas and opinions preliminary to a meeting of elected officials is important for the issues of agenda setting and compromise that make a deliberative body function efficiently. For one member to have a phone conversation with another, wherein opinions and thoughts on a topic are expressed, does not mean or create a presumption that those parties' views will be fixed in stone in solidarity before the public meeting.

10

## 2. Section 551.143 restricts "secret deliberations."

The State has not cited a single case from Texas or any other jurisdiction involving a successful criminal conviction under Section 551.143 or for having a "walking quorum" deliberation, and Judge Doyal is unable to find such a case in any of the 50 states that have Open Meetings laws.[13]

Nonetheless, Judge Doyal assumes that what the Legislature intended to prohibit and punish in Section 551.143 is some sort of "secret deliberation." A "deliberation" is defined as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." Section 551.001(2). Therefore, the law, on its face, prohibits and punishes certain "verbal exchanges," *i.e.,* speech. Of course, Section 551.143 directly contradicts the statutory definition of "deliberation" which requires a quorum, but Section 551.143 makes it a crime for "deliberations" by less than a quorum of members. Those two statutes are impossible to reconcile. So

---

*Id.* at 790. Louisiana courts construe their open-meetings law in a common-sense manner to provide both openness for the public and sufficient means for public officials to obtain information and exchange views on public business.

[13] *See Appendix A*, Motion to Dismiss, fns. 2& 3 for an explanation of the Westlaw searches.

even beyond the First Amendment problems, the statute is unenforceable as self-contradictory "gibberish." It is a classic oxymoron.

But putting aside unenforceability, the next question is whether that speech restriction is content-based. It is.

> 3. **A statute that singles out and regulates speech of a specific subject matter is a content-based limitation of speech, subject to strict scrutiny.**
>
>> a. ***Reed v. Town of Gilbert* clarified that Section 551.143 is a content-based regulation.**

The United States Supreme Court recently reiterated that "content-based" regulations of speech are subject to strict scrutiny. *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015).[14] And, unremarkably, the Supreme Court explained that a law

---

[14] *Reed* involved a town's sign code which divided signs that do not need city permits into three categories: "ideological" (signs "communicating a non-commercial message or ideas"), "political," and "temporary directional signs relating to a qualifying event." 135 S.Ct. at 2224. These categories are "based on the type of information they convey." *Id.* And the code imposes more stringent restrictions on temporary directional signs than the other two types. *Id.* at 2225.

A small, cash-strapped church that held services "catch-as-catch-can" at various town locations sued because the law governing their "temporary directional signs" was more restrictive in time, place, and manner than the other two sign categories. Although lower courts admitted that a police officer had to read the church's sign before he knew whether it fell into the third category, they called the law "content-neutral" by saying that the town's "interests in regulating temporary signs are unrelated to the content of the sign." *Id.* at 2226.

The Supreme Court in essence said, "So what?" The law, on its face, is content-based, regardless of (1) the legitimate reasons for enacting it, (2) whether it singles out one particular idea or viewpoint for differential treatment, or (3) whether that law seems a "reasonable" time, place, and manner regulation. *Id.* at 2227-30. If you need to know the content of the speech or sign to know if the particular law applies–Stop. That's enough. The law is content-based and

12

regulating speech is "content-based," if that law "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227.

That is, does one need to know what was said before deciding the law applies to that "verbal exchange"? If yes, then the law is content-based on its face.[15] For example, suppose two council members are standing in the City Hall rotunda, talking, gesturing, and putting their heads together, then one leaves and a third council member approaches and begins to talk to the first. Does Section 551.143 apply to their "verbal exchanges"?[16] We don't know until we hear what they were discussing—maybe the weather (or a baseball game) or maybe a road bond (or traffic lights).

Section 551.143 applies only to "verbal exchanges" about "an issue within the jurisdiction of the governmental body or any public business." Section

---

subject to strict scrutiny. *Id.* ("Because the Town's Sign Code imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny").

[15] In *Reed*, the Supreme Court explained that a law may be content-based in either of two ways: (1) facially by regulating speech by its topic or subject or (2) inferentially when the government's purpose or justification for enacting the law depends on the underlying idea or message expressed. That is, the law is facially neutral, but the motives or purpose in enacting it were content-based. 135 S.Ct. at 2228. Because Section 551.143 is content-based on its face, we need not address the second prong, just as the *Reed* Court did not need to address that second, inferential, prong.

[16] The right question for the constitutional inquiry is whether the statute applies at all, not whether this evidence is sufficient to show that they have conspired to commit an offense under Section 551.143.

13

551.001(2). The applicability of Section 551.143, therefore, depends on the subject or topic of the conversation. If the topic is "public business" (whatever that is) or "any issue within the jurisdiction" of the city council, then Section 551.143 regulates and limits that speech. It is a classic, straight-forward example of a content-based statute.[17] *See Reed*, 135 S.Ct. at 2227 (noting that "[s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter");[18] *see also Ex parte Lo*, 242 S.W.3d at 15, n.12.

One must look at the content of a member's "verbal expression" to decide whether Section 551.143 applies to gatherings of less-than-a-quorum; therefore, under *Reed* and *Lo*, it is a content-based regulation of speech, and it is subject to strict scrutiny.

---

[17] For example, a law that prohibits one from giving *any* speech at Hyde Park Corner between midnight and 6:00 a.m. is a neutral time, place, and manner restriction. However, a law that prohibits anyone (or just a public official) from giving a speech about "public business" between midnight and 6:00 a.m. is a content-based statute subject to strict scrutiny, even though it might also be a reasonable time, place, and manner restriction.

[18] Even when a regulation does not address content on its face, it is considered content-based if it cannot be "justified without reference to the content of the regulated speech." *Reed*, 135 S.Ct. at 2227.

**b.** *Reed* **abrogated** *Asgeirsson v. Abbott.*

*Reed* has caused heartburn in courts across America because it reiterated[19] that if a law regulating speech is content-based, then strict scrutiny applies. Period. The Supreme Court explained that over the years this simple, common-sense doctrine had been muddied by courts suggesting that content-based regulations weren't subject to strict scrutiny if, for example, "the purpose and justification for the law are neutral." *Id.* at 2228 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech.").

That is what led the Fifth Circuit astray in *Asgeirsson v. Abbott*, 696 F.3d 454 (5th Cir. 2012), when it upheld TOMA as a "content-neutral" scheme. *Asgeirsson* was decided three years before *Reed* clarified that strict scrutiny applies to *all* content-based laws affecting speech.[20] The Fifth Circuit stated,

---

[19] In *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 96 (1972), the Supreme Court invalidated a picketing statute because it prohibited picketing within 150 feet of schools, except for picketing that involved labor disputes. That was a content-based regulation in which application of the law depended on whether the picketing in question dealt with the subject of labor disputes. It was an improper content-based regulation of speech. *Id. Reed* is not new law, it is old law, *Mosley*, reaffirmed.

[20] *See Appendix A*, Motion to Dismiss, pp. 9-14, for a history of "The Alpine case" and *Asgeirsson*.

A regulation is not content-based, however, merely because the applicability of the regulation depends on the content of the speech. A statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of its speech.

*Id.* at 460.[21] "No, no, no," said the Supreme Court in *Reed.* If the applicability of the law depends on the content of the speech, it is content-based and strict scrutiny applies. Period. End of story.

---

[21] The Fifth Circuit suggested that TOMA is a "disclosure" law just like the political campaign-reporting requirements discussed in *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010). A "disclosure" law is one that opens up and reveals past events. For example, campaign contributions must be "disclosed" or made public after the recipient accepts them. *Id.* at 914. We "disclose" something after it has occurred.

Similarly, the Texas Public Information Act (Texas Open Records Act), Tex. Gov't Code chapter 552, is a "disclosure" act requiring that all governmental bodies (the same bodies that are required to hold open meetings) make the records of their prior activities and decisions open to the public upon request. For example, any public citizen or newspaper reporter may request a copy of all emails, phone logs, or minutes by commissioners that are kept by the county government concerning a specific topic. Although certain sections of TOMA might be considered "disclosure" statutes, e.g., the posting of an agenda to "disclose" to the public what topics had been decided upon for discussion at an open meeting, Section 551.143 is certainly not a "disclosure" law, it is a "regulation of speech" law. (RR3 at 27-28; explaining that *Citizens United* is a disclosure statute, as are the time, place, and manner rules concerning a governmental meeting, but Section 551.143 is a "prohibition" statute, so *Citizens United* is inapplicable to it). It is the Open Records Act that is analogous to *Citizen's United*, not Section 551.143.

As the experienced trial judge noted at the hearing, if Section 551.143 were deemed a "disclosure" law, then any violation would presumably be cured if the officials disclosed and reaffirmed their prior discussions and decisions in a regularly posted open meeting (RR2 at 158-159). How could it still be a crime if public disclosure cured the violation?

Of course, the main focus in *Citizens United* was striking down, on First Amendment grounds, a statute that was "an outright ban, backed by criminal sanctions" restricting corporate political donations made close to the time of an election as a violation of free-speech rights." *Id.* at 888-89. Section 551.143. The same type of ban is at issue in Section 551.143.

16

The Fifth Circuit in *Asgeirsson*, like the Ninth Circuit in *Reed*, mistakenly thought that even if a statute was content-based on its face, other justifications could save it from strict scrutiny.[22] But now the Fifth Circuit, like the Ninth Circuit, this court, and the Court of Criminal Appeals (which had predicted the *Reed* holding in its 2013 *Ex parte Lo* decision),[23] must, under the Supremacy Clause, follow the United States Supreme Court.[24]

      c.     **The State claims that *Reed*, *McCullen*, and *Asgeirsson* have been analyzed by a Texas federal court.**

The State in its brief cites *Defense Distributed v. U.S. Dept. of State*, 121 F.Supp.3d 680 (W.D. Tex. 2015), a federal district court case, as support for its

---

[22] In all fairness, the Supreme Court may have led courts astray in such cases as *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800 (1989) (noting that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys"), and *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986) (upholding a zoning ordinance and suggesting that, in some instances, a law that appears content-based on its face might still be deemed content-neutral if it were justified without regard to the content of the speech such as "secondary effects"). But as the Supreme Court explained as it distinguished *Ward* in *Reed*, "an innocuous justification cannot transform a facially content-based law into one that is content-neutral." 135 S.Ct. at 2228.

[23] The Fifth Circuit itself had accurately predicted the *Reed* result and reasoning in *Rangra*, its first TOMA decision. *Rangra v. Brown*, 566 F.3d 515, 521 (5th Cir. 2009) ("A speech regulation is content-based if it defines the regulated speech by reference to its content"; agreeing that the criminal provisions of TOMA are "content-based regulations that require the state to satisfy the strict-scrutiny test in order to uphold them."). *Reed* resurrected *Rangra* and abrogated *Asgeirsson*. *See Appendix A*, Motion to Dismiss, pp. 9-14.

[24] *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (Texas courts "are *obligated* to follow only higher Texas courts and the United States Supreme Court.").

17

contention that *Asgeirsson* is still valid after *Reed*. Appellant's Brief at 38-39. The State claims that *Reed*, *McCullen*, and *Asgeirsson* were all analyzed by the district court when it denied injunctive relief based on, among other factors, the substantial likelihood of the plaintiff's First Amendment claim succeeding on the merits. While the district court made such an analysis, the Fifth Circuit did not approve it. *Defense Distributed v. U.S. Dept. of State*, 838 F.3d 451 (5th Cir. 2016). The majority of the three-judge panel of the Fifth Circuit in its review of the district court's denial of injunctive relief expressly declined to address the First Amendment.[25] The panel focused instead on the balancing of harm test for granting injunctive relief.

However, Judge Edith Jones declared, "I dissent from this court's failure to treat the issues raised before us with the seriousness that direct abridgments of free speech demand." *Id.* at 461 (Jones, J., dissenting). She explained exactly how the

---

[25] The Fifth Circuit majority asserts three times that its opinion in *Defense Distributed v. U.S. Dept. of State*, 838 F.3d 451 (5th Cir. 2016), does not address the merits of the First Amendment claims made by the plaintiffs who were seeking injunctive relief:

- "[W]e decline to address the merits requirement." *Id*. at 458.

- "We therefore affirm the district court's denial and decline to reach the question of whether Plaintiff-Appellants have demonstrated a substantial likelihood of success on the merits [of their First Amendment claim]." *Id.* at 460.

- "These are difficult questions, and we take no position on the ultimate outcome other than to agree with the district court that it is not yet the time to address the merits [of the First Amendment claim]." *Id.* at 461.

18

U.S. State Department violated Defense Distributed's First Amendment rights and chastised the district court for its analysis: "The district court, moreover, clearly erred in gauging the level of constitutional protection to which this speech is entitled: intermediate scrutiny is inappropriate for the content-based restriction at issue here. (Why the majority is unwilling to correct this obvious error for the sake of the lower court's getting it right on remand is a mystery)." *Id.* at 463.

While the majority opinion shed no light on whether *Asgeirsson* was still valid law—the case wasn't mentioned once—the dissent made the proper analysis of speech regulations and looked at many of the same issues present in this case: plain meaning of the statute, whether the statute regulates speech, and the proper constitutional analysis.

The State cannot claim that its reliance on *Asgeirsson* and intermediate scrutiny would survive Fifth Circuit review post-*Reed*. Not only did Judge Jones reject use of *Asgeirsson* and intermediate scrutiny for content-based speech regulations, but four other Fifth Circuit judges believed that *Defense Distributed* should have been granted *en banc* rehearing and the merits of the First Amendment claim addressed. *Defense Distributed v. U.S. Dept. of State*, 2017 WL1032309 (5th Cir., Mar. 15, 2017). Judge Jennifer Elrod issued a scathing dissent from the denial of rehearing and scolded the majority for relying on "a mere assertion of a

national security interest." *Id.* at \*2. In sum, the Fifth Circuit has definitely not reaffirmed *Asgeirsson* after *Reed.*

### C. Post-*Reed*, courts nationwide have invalidated numerous content-based laws regulating speech.

The Austin Court of Appeals has noted that many courts across the nation were surprised by the *Reed* decision as they had "construed pre-*Reed* precedent as allowing 'content-based regulations [to be treated] as content neutral if the regulations are motivated by a permissible content-neutral purpose.'" *Auspro Enterprises, LP v. Texas Dept. of Transp.*, 506 S.W.3d 688, 700 (Tex. App.—Austin 2016, pet. filed) (invalidating portions of Texas Highway Beautification Act as a content-based regulation of speech that was not narrowly tailored to serve compelling governmental interests).[26] Nonetheless, the Austin Court of Appeals was constrained to follow *Reed* rather than an earlier Texas Supreme Court decision upholding the challenged law. *Id.* at 698-700.

---

[26] *See also Thomas v. Schroer*, 2017 WL 1208672 (W.D. Tex. March 31, 2017) (noting *Auspro* and agreeing that the billboard Act was subject to strict scrutiny under *Reed* and it was not sufficiently narrowly tailored; held unconstitutional).

Indeed, content-based laws regulating speech have been falling like dominoes after *Reed* clarified when a law affecting speech is content-based and, therefore, subject to strict scrutiny.[27]

For example, the Seventh Circuit had originally upheld an anti-panhandling statute against a First Amendment challenge because it regulated by subject matter rather than by viewpoint. *Norton v. City of Springfield*, 768 F.3d 713, 717-18 (7th Cir. 2014). The law was called a content-neutral regulation of time, place, and manner of speech prohibiting "oral request[s] for an immediate donation of money," but permitting signs and oral pleas to send money later. *Id.* On rehearing after *Reed*, the court reversed itself and held that the Supreme Court "abolishe[d] any distinction between content regulation and subject-matter regulation" and made it clear that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015).[28]

---

[27]The cases are collected on a weekly basis at 24 A.L.R. 7th Art. 6 ("Construction and Application of *Reed v. Town of Gilbert, Ariz*, Providing that Speech Regulation Targeted at Specific Subject Matter is Content-Based Even If It Does Not Discriminate Among Viewpoints Within that Subject Matter").

[28] *See also Champion v. Commonwealth*, 2017 WL 636420, __ S.W.3d ___ (Ky. Feb. 16, 2017) (anti-panhandling statute struck down as a content-based unconstitutional regulation of speech).

21

Application of a "time, place, or manner" doctrine to a statute that targets a specific subject matter of speech can no longer be deemed content-neutral. *Id.*

Under *Reed*, a statute prohibiting "ballot selfies" was struck down despite the state's claim that (1) the law's purpose was to prevent "vote buying and voter coercion," and (2) it was a reasonable time, place, and manner restriction.[29] So was a South Carolina law prohibiting certain robocalls[30] and North Carolina's cyber-bullying law.[31] A Minnesota statute regulating certain door-to-door solicitations was struck down under *Reed* because it required a license for the solicitation of some, but not all, materials.[32] And a Kentucky law prohibiting a

---

[29]*Rideout v. Gardner*, 123 F. Supp. 3d 218 (D.N.H. 2015) ("Because the law require[d] regulators to examine the content of the speech to determine whether it include[d] impermissible subject matter," it was subject matter-based discrimination), *aff'd*, 838 F.3d 65 (1st Cir. 2016), *cert. denied* 137 S.Ct. 1435 (April 3, 2017); *see also*, *Ind. Civil Liberties Union v. Ind. Sec'y of State*, No. 1:15-CV-01356-SEB-DML, at *19 (D. Ind. 2015) (same).

[30] *Cahaly v. Larosa*, 796 F.3d 399, 402-05 (4th Cir. 2015).

[31] *State v. Bishop,* 787 S.E.2d 814, 817-21 (N.C. 2016) (statute that criminalized posting "private, personal or sexual information pertaining to a minor" was content-based; although protecting children from online bullying was a compelling interest, the law was not narrowly tailored–criminalizing personal information to "annoy" a minor swept too broadly).

[32] *Working America, Inc. v. City of Bloomington*, 142 F.Supp.3d 823 (D. Minn. 2015) (even though city had benign motive and content-neutral justification of reducing fraud and criminal activity and honoring homeowners' heightened expectation of privacy inside their own home, ordinance treated solicitors differently depending on function or purpose of their speech, and need to obtain license depended on content of message).

newspaper columnist without an in-state license from writing a "family psychologist" advice column was content-based and invalid after *Reed.*[33]

Most of these statutes were merely civil regulations of speech, not penal provisions that criminalized speech. When determining the constitutionality of criminal sanctions against speech, strict scrutiny is frequently lethal in its demand for a particularly compelling governmental need and an extremely narrow tailoring. *See Ex parte Perry*, 483 S.W.3d at 912-17 (coercion of a public official statute facially unconstitutional under Free-Speech Clause); *Ex parte Thompson*, 442 S.W.3d 325, 330 (Tex. Crim. App. 2014) (improper photography statute facially unconstitutional in violation of freedom of speech); *Ex parte Lo*, 424 S.W.3d at 14; *see also Long v. State*, 931 S.W.2d 285, 297 (Tex. Crim. App. 1996) (stalking statute facially unconstitutional and vague because its language was too expansive).

### D. Even before *Reed*, laws restricting political speech were especially likely to be found unconstitutional.

Political speech is at the very core of the First Amendment, and courts are especially protective of persons exercising their free-speech rights when discussing politically controversial or public-interest issues. *McIntyre v. Ohio Elections*

---

[33] *Rosemond v. Markham*, 135 F.Supp.3d 574, 581-85 (E.D. Ky. 2015) (attempt by state board of psychologists to regulate parenting advice in newspaper was a content-based restriction which did not survive strict scrutiny under *Reed*).

*Comm'n,* 514 U.S. 334, 347-48 (1995).[34]  Both before and after *Reed*, no form of speech is more protected than this core political speech which enjoys "exacting" scrutiny, upholding restrictions only when they are narrowly tailored to serve an "overriding state interest." *Id.* at 347.

Thus, under *McIntyre* and *Reed*, an Ohio law that prohibited and punished political false statements that include *all* false speech about a candidate, not just defamatory or fraudulent remarks, was content-based and failed the exacting scrutiny given political speech.[35]

Even before *Reed*, rules restricting the political and free speech rights of judges were struck down both by the Supreme Court[36] and the Fifth Circuit.[37]  It should not be said that a Texas County Judge, who acts as the chief executive of a

---

[34] *McIntyre* involved an Ohio election statute that prohibited the distribution of anonymous campaign literature.  The Supreme Court held that the law violated the First Amendment right to "anonymous" free speech.

[35] *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473-76 (6th Cir. 2016) (state's political false-statement laws were content-based; they burdened core political speech, were not sufficiently narrowly tailored, and did not withstand strict scrutiny).

[36] *Republican Party of Minnesota v. White*, 536 U.S. 765, 781-82 (2002) (state's rule prohibiting judicial candidates from announcing their views on disputed legal or political issues violated the free-speech rights of judges and judicial candidates).

[37] *Jenevein v. Willing*, 493 F.3d 551, 557-58 (5th Cir. 2007) (judiciary commission's order censuring Texas judge because of the content of his speech about public affairs and alleged abuses of process in a particular case violated his free-speech rights).

county, or his fellow commissioners have fewer free-speech rights than a county judge who sits on a trial bench.[38]

Similarly, laws that target "defamatory attacks" at city council meetings[39] and "criticism" of officials at school board meetings[40] have been struck down post-*Reed* as content-based and failing to survive strict scrutiny in the context of political gatherings.

That is not to say that *all* content-based statutes regulating speech fail strict scrutiny. Some can survive. But the government's power to criminalize speech, especially political speech by public officials discussing public business, must be extremely limited and closely scrutinized, never assumed.

---

[38] The State analogizes the free-speech restrictions in Section 551.143 to the rules regarding *ex parte* communications during a trial. That is a false analogy. It is Section 551.144 and its rules regarding an open meeting that is analogous to the rules regarding the conduct of a trial. Outside of the courtroom and outside of the open meeting forum, both judges and members of a governmental entity still have their normal free-speech rights to discuss "public business" and controversial topics of community concern. Just as judges have a right to private speech about "public business," so do public officials. *See Perry*, 483 S.W.3d at 915-17 (public officials have a First Amendment right to engage in expression, even threats, regarding their official duties).

[39] *Draego v. City of Charlotteville,Va.*, 2016 WL 6834025, * (W.D. Va. 2016) (city's rule banning speakers from making "defamatory attacks on groups" at city council meetings was not content-neutral because a speaker and the council must assess whether speech had a "character-attacking" content under *Reed*; violated First Amendment).

[40] *Mnyofu v. Board of Education of Rich Township High School Dist. 227,* 2016 Westlaw 13197336 (N.D. Ill. 2016) (school board violated plaintiff's First Amendment rights under *Reed* by preventing him from criticizing school officials during board meetings).

**II.     The State has not shown that Section 551.143 passes strict scrutiny.**

Because Section 551.143 imposes content-based restrictions on speech, that law may stand only if it survives strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S.Ct. at 2231.

The State argues that the purpose of TOMA is to increase transparency of government, discourage fraud and corruption, and decrease public mistrust of governmental entities. Judge Doyal agrees wholeheartedly. He does not challenge TOMA as a general open-meetings scheme. But having a benign intent will not save a constitutionally defective statute like Section 551.143.

**A.     The State has failed to prove that Section 551.143 serves a compelling need that is not already met by other TOMA provisions.**

The issue in this case is not TOMA. It is the one overbroad and vague criminal conspiracy provision within that act which has a tremendous "chilling" effect on public officers and their constituents. Section 551.143 does not effectively serve any compelling governmental interest, and it is not narrowly tailored to achieve only a compelling interest.

26

### 1. TOMA addresses important, but not compelling, governmental interests.

The point of TOMA is to ensure that decisions made by government entities are made in open meetings so that citizens may see and hear their public officials discuss, debate, and decide upon matters within their jurisdiction. That is an important public interest, but it is not an essential or compelling one. If it were, our two main lawmaking entities—the United States Congress and the Texas Legislature—would be subject to the same strictures. These legislative bodies are the main focus of public concern over the openness and accessibility of government entities, yet they are not required to obey and abide by these transparency laws.

As the current Washington political scene shows, national laws are not always crafted or much discussed in public; a *pro forma* vote after secret political-party deliberations suffices. The Texas Legislature originally intended for TOMA to apply to its own deliberations,[41] but, under its rulemaking authority, it exempts itself.[42] A law that addresses a "compelling" governmental need should apply to

---

[41] It was, after all, enacted in response to the legislative scandal surrounding the Sharpstown stock-fraud scandal and the involvement of Speaker Gus Mutscher as well as other lawmakers in possible bribery concerning that affair. Presumably, the Legislature did not want legislators giving favorable treatment to bills based on bribery rather than merit.

[42] Ms. Jennifer Riggs, an expert on TOMA, testified at the motion hearing that TOMA applies to Texas legislators, but that they "suspend the rules" of TOMA on a daily basis so that they can

all lawmaking entities, across the board, while laws that address a lesser, "important," governmental need may apply selectively to some lawmaking entities.[43] Only those laws that serve compelling governmental needs could satisfy the first strict-scrutiny prong.

TOMA's regulatory "stick" is Section 551.144, the prohibition of "closed" meetings which "1) prevent transparency; (2) encourage fraud and corruption; and (3) foster mistrust in government." *Asgeirsson*, 696 F.3d at 461 (discussing the purpose of Section 551.144). That statute is clear and easy to understand. If a quorum of the members of a governmental entity meets to deliberate on "public business" or "an issue within the jurisdiction of the governmental body," then it must do so in a properly posted public meeting.

---

get their work done (RR3 at 56-57). She is correct. *See In re Texas Senate*, 36 S.W.3d 119, 120 (Tex. 2000) ("Section 551.003 "prohibit[s] secret meetings of the legislature, committees of the legislature, and other bodies associated with the legislature, except as specifically provided in the constitution. This provision clearly covers the Committee of the Whole Senate. Thus, its meeting and votes cannot be secret "except as specifically provided" by the Texas Constitution."). The Texas Constitution explicitly permits the Legislature to create its own rules and so it exempts itself from TOMA. But, as Ms. Riggs explained, the legislators do not intend to violate TOMA with their hallway conferences, logrolling, and informal vote counting, they simply want to serve their constituents and pass needed legislation, just as local officials try to do. (RR3 at 91).

[43] *See Florida State Bar v. B.J.F.,* 491 U.S. 524, 542 (1989) (Scalia, J., concurring) (noting that a law's under-inclusiveness—its failure to reach all speech that implicates the interest—is evidence that an interest is not compelling or "of the highest order," because it suggests that the government itself doesn't see the interest as compelling enough to justify a broader statute).

All 50 states have open meetings laws like TOMA, but fewer than 20 have any criminal provisions.[44] No other state has a special conspiracy provision like Section 551.143. It would seem peculiar that, if this conspiracy statute were "necessary to meet a compelling" government need, not one of the other 49 states with equally important needs for open meeting laws considered this type of law necessary. The State has failed to offer any proof as to why (1) any state with an open-meetings law would have a compelling need for this type of criminal-conspiracy law or (2) why Texas's public officials are so different from those in every other jurisdiction that they require such an overly broad criminal prod.[45]

TOMA already has ample remedies for violations of its provisions: any action taken during an improper meeting is voidable,[46] an aggrieved person may

---

[44] Texas is the only state to integrate a criminal penalty directly into its open meeting laws. Eighteen states have some criminal penalty—usually a fine—for a violation of the state's open meeting laws. Devon Helfmeyer, *Do Public Officials Leave Their Constitutional Rights at the Ballot Box? A commentary on the Texas Open Meetings Act,* 15 TEX. J. CIVIL LIB. & CIVIL RIGHTS 205, 227-28 (2010) (listing all nineteen states along with their penalties; twelve of them would permit jail as an option for intentionally or knowingly participating in a closed meeting under a statute like Section 551.144).

[45] After all, making the Penal Code conspiracy provision (Section 15.02) applicable to TOMA would punish any miscreant members who knowingly conspire to violate the law that requires an open meeting and would suffice to deter those who try to avoid open meetings.

[46] Section 551.141.

file for an injunction in a declaratory judgment action,[47] and criminal sanctions may be sought for a "closed meeting" under Section 551.144.

Other states have addressed transparency in government in different ways: (1) they do not criminalize open meeting violations—civil deterrence is sufficient; (2) they do not criminalize any meetings of less than a quorum of public officials; or (3) they use criminal penalties only if the statutory language is explicit, not subject to misinterpretation, and prohibits only rotating, simultaneous, or serial "walking quorums."[48] Section 551.143 does not follow any of those paths. It is not narrowly tailored to punish only speech which clearly threatens a compelling (or even important) governmental interest of open government. Instead, it sweeps so broadly that "open meetings" experts counsel their public-official clients to avoid talking to fellow officials outside of a properly posted open meeting.[49]

Constitutional challenges to other open meetings laws (made before *Reed)* have been unsuccessful, but none of those cases involved a criminal penalty.[50] After all, the purpose of open-meetings laws is not to make criminals out of public

---

[47] Section 551.142.

[48] *See* Helfmeyer, *supra* note 45 at 227-28.

[49] The State pooh-poohs the testimony of the defense experts, but fails to explain away the several law review articles that have analyzed Section 551.143 and concluded that it is confusing, vague, and unconstitutional. *See* note 8 *supra* listing those articles.

[50] *Id.* 229-30.

officials, but to subject their governmental decision-making to the scrutiny of the citizens.

Two competing interests drive TOMA: "the public's right to know about the workings of its governmental bodies, and the need to ensure members of governmental bodies are informed and act efficiently."[51]  Both of these goals are essential to good government; neither is more important or compelling than the other.  Congress and the Texas Legislature have struck the balance firmly in favor of the rights of the public official.  TOMA tilts local government slightly the other way, but it is essential that public officials have sufficient avenues to become well-informed, both about their fellow officials' concerns and those of the public.  Only the least restrictive means of achieving the goal of open government will pass muster when circumscribing a public official's free speech rights.

Section 551.143 does not meet that test.

**B.     The State has failed to prove that Section 551.143 is narrowly tailored.**

According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep."  *Ex parte Lo*, 424 S.W.3d at 18.  The

---

[51] Heath & Rogers, *supra* note 8 at 98-99.

31

"narrowly tailored" prong of the strict scrutiny test is basically the reverse of saying that the law is overbroad or over-inclusive.[52]

In various opinions and training aids, the Attorney General has relied upon *Esperanza Peace and Justice Center v. City of San Antonio*, 316 F.Supp.2d 433 (W.D. Tex. 2001), its Poster Child case, in trying to explain and apply Section 551.143. In *Esperanza*, a federal district court held that the mayor should not have held a series of meetings and telephone calls with council members on the evening before the council meeting to discuss the City's budget and to obtain a consensus on its changes. The judge explained:

> [A] meeting of less than a quorum is not a "meeting" within the Act when there is no intent to avoid the Act's requirements. On the other hand, the Act would apply to meetings of groups of less than a quorum where a quorum or more of the body attempted to avoid the purpose of the Act by deliberately meeting in groups of less than a quorum in closed sessions to discuss and/or deliberate public business, and then ratifying their actions as a quorum in a subsequent public meeting.

*Id.* at 476. This was a civil case seeking injunctive relief, not a criminal prosecution. And clearly the purpose of the calls and "closed" meetings was to

---

[52] *See, e.g., Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120-21 (1991) ("Son of Sam" law requiring publishers to escrow income from books written by those accused of crime was over-inclusive because it applies to works on any subject if they include any thoughts or recollections about a crime, and its broad definition of "person convicted of a crime" allows the Board to escrow the income of an author who admits in his work to committing a crime, whether he was ever actually accused or convicted).

"achieve a consensus on changes to the budget" by the entire council before the next day's open meeting. *Id.* at 442. A budget decision was made by the entire council in a pre-meeting before the open meeting. That case is simple and straightforward.

If only Section 551.143 were so simple. It is not. It does not require that a quorum meet. It does not require that a quorum make a decision or achieve a consensus. Talking about "public business" by "numbers less than a quorum" to purportedly "circumvent" TOMA will suffice. It is dramatically overbroad and vague and has an *in terrorem* chilling effect upon both public officials and their constituents. It does prohibit the *Esperanza* situation—the true daisy chain of sequential meetings[53]—but it potentially prohibits much more speech that should be free and unfettered under the First Amendment.

Indeed, given the "walking quorum" Attorney General opinion, section 551.143 could criminalize public officials who have been approached individually by a citizen, asked to support a bill, and told that a fellow official has already done so. The "daisy chain" is created by the citizen talking to each public official serially and getting a positive response from each. Or the mayor's secretary

---

[53] A more narrowly tailored statute might prohibit "meetings in numbers of less than a quorum for the purpose of [having] sequential or multiple secret deliberations that would together constitute a quorum and reaching a decision as a result of those sequential meetings." *See* RR3 at 41).

calling each council member to ask if he would like a particular item—school buses for example—on the agenda for the next open meeting could make a daisy chain.

### 1. Section 551.143 has the demonstrated effect of chilling public officials' free speech.

At the motion hearing, witnesses expressed a number of concerns about Section 551.143:

- Who does it apply to? Just members of the government entity? Citizens acting with members? The statute begins with the phrase "A member or members"—does that mean one member can conspire all by himself? Or with only one member and then some citizens? Or lobbyists? The city manager? The mayor? (RR2 at 43).

- Does Section 551.143 apply when three city council members running for re-election all attend the same political house party and talk about "public business"?[54] What if the first two leave, but the third arrival gets a summary of what was said? (RR2 at 64).

- Suppose a commissioner blogs about public policy–other members who read that blog might be influenced; could the blogger be deemed to have violated Section 551.143? And what if the other commissioners should post a comment on the blog? "God help them." (RR3 at 33-34).

- As Ms. Riggs noted, "The very act of trying to keep it legal could be what helps prove, under [Section 551.143] a conspiracy." (RR3 at 47). "You can do an awful lot with [Section 551.143] in hindsight to make

---

[54] *See* Atty. Gen. Op. JC-0203 (if two members of a subcommittee appear at an official "speaking engagement" and participate in a discussion of "public business," TOMA applies).

34

things look like a violation, totally innocent communications." (RR3 at 49).[55]

The practical result if Section 551.143 is deemed constitutional is that more and more government would be conducted by staff members, city managers, and the board's executive director (RR2 at 76). They are the keepers of information and, unlike elected or appointed officials, may discuss public business with each other and the citizenry without concern for TOMA if they share that information with the responsible public officials only in an open meeting.

As the mayors testified at the hearing, Section 551.143 scares them:

- Mayor Charles Jessup of Meadows Place said that Section 551.143 is a "very convoluted and confusing statute. . . I really don't understand it. . . . We try to avoid conversations, and the discussion of a walking quorum has come up. We're not sure exactly how that works, but it scares us all to death." (RR2 at 222).

- He admitted that he had "been in a position this week three times alone of possible violation of [TOMA]" and then he explained the innocent circumstances. (RR2 at 227).

- Eric Scott, the mayor of Brookshire, testified that he had attended the Kennedy School of Government at Harvard, and he thinks that Section 551.143 "actually stopped good governance" because he

---

[55]Charlie Zech, a lawyer who advises public entities and boards, explained how members are in jeopardy if two of them want to have a talk about a public matter. They meet in a quiet room so that a third member will not join them and create a prohibited quorum. They are intentionally avoiding the Act, but is that in fact a "conspiracy to circumvent" the Act, even though it is perfectly innocent (RR4 at 85). Is the attempt to comply with the law by avoiding meetings in which a quorum would be present, in fact, evidence of circumventing the law and, therefore, of violating it?

cannot have a "free flow of communication and exchange of ideas" with his fellow council members or citizens. (RR2 at 263-264).

- Section 551.143 "makes me believe that they can go to jail very easily, and no one wants to go to jail." (RR2 at 266). It "chills" his ability to express himself and solicit others' opinions (RR2 at 270).

- Mayor Jim Kuykendall of Oak Ridge North explained that Section 551.143 "basically neuters everybody." (RR3 at111). The city manager puts items on the agenda and gives the city council members information. The members do not feel that they can talk to each other or members of the public outside of a properly posted open meeting (RR3 at 114). The law makes him a "figurehead," because the city manager is the real boss, but she could be in trouble for talking to each member. (RR3 at 116-117).

- After learning about this case, Mayor Kuykendall is afraid he has broken the law. He fears just being indicted would be devastating financially (RR3 at 117).

- Even the State's witness, former Houston City Councilman James Rodriguez, stated that he has never "knowingly" been a part of a "rolling quorum"; he repeatedly used the term "err on the side of caution" because he doesn't want to be charged with a TOMA crime. (RR5 at 18, 20, 32, 37, 55).

All of these public officials agreed that, because of their fear of being charged with a crime under Section 551.143, they "erred on the side of caution." That confusing, vague criminal conspiracy law "chilled" their speech.

Criminalizing innocuous, fact-finding discussions and inquiries by public officials would lead to anemic government. This law discourages not only discussion between public officials, but between public officials and members of the public because that citizen might then talk individually to a quorum of the

36

council. Imagine what would happen if this criminal law were applied to the members of Congress or the Texas Legislature.

## C. Section 551.143 is unconstitutionally vague as well as overbroad.

According to both Supreme Court[56] and Court of Criminal Appeals[57] precedent, criminal laws must be sufficiently clear in at least three respects.

- First, a person of ordinary intelligence must have a reasonable opportunity to know what is prohibited. *Long*, 931 S.W.2d at 287.

- Second, the law must establish clear guidelines for law enforcement. *Id.*

- Third, when First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id*.

The demand for clarity is paramount. When a statute burdens First Amendment rights, the vagueness doctrine demands greater specificity than in other contexts to adequately preserve the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109. In other words, it "chills" free speech.

---

[56] *Grayned v. Rockford*, 408 U.S. 104, 108 (1972).

[57] *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) (provision of harassment statute referring to conduct that was likely to "annoy" or "alarm" was vague and reasonable person standard could not be read into it; entire statute declared unconstitutional under First Amendment).

Section 551.143 is unclear and vague on its face by making it a crime for a member (or members) of a governmental body to "conspire" to meet in numbers of less than a quorum "to circumvent" TOMA for the purpose of "secret deliberations" about "public business" or "an issue within the jurisdiction of the government body."

First, what is the meaning of "conspire" in this statute? Conspire as defined in Section 15.02 of the Penal Code? Some sort of common-law meaning of conspire? Merely an agreement to meet to discuss public business? Or an agreement to meet with the purpose to have "secret deliberations"? Or with the intent to circumvent TOMA?

What does "circumvent" mean in this context? Does it mean circumvent as in attempting to violate the law or does it mean attempting to comply with the law by making sure that members always have legitimate discussions about "public business" in numbers of less than a quorum? (RR2 at 43). If members A and B are discussing road bonds when member C walks over, is it evidence of circumventing or complying with TOMA when A says, "Go away, C, we don't want a quorum talking about road bonds"?

"Deliberation" means "a verbal exchange," and a verbal exchange is defined as "oral, not written," but does this section include written emails, text messages,

or blogs? (RR2 at 54). Does it include comments on one member's blog by other members?

And because the very definition of "deliberation" in TOMA depends upon the presence of a quorum, how can it be said that gatherings of less than a quorum can have a "deliberation"?

What is the distinction between a verbal exchange about "public business" and one about "an issue within the jurisdiction of the governmental body"? Does "public business" forbid a city council member from discussing the federal health care bill with a quorum of the council outside of an open meeting? Or expressing his views about health care bills at a public forum with his fellow council members and a federal senator?

What, under Section 551.143, does the word "secret" mean? Does it mean that only the "conspirators" are present? If the gathering of a quorum is not "noticed" under TOMA, is it a "secret" meeting even if it is held in Times Square at High Noon? (RR3 at 24-25). Or a 4th of July picnic with two council members present and giving speeches about buying school busses, knowing that the press and public will circulate their words to the other three council members before the open meeting the next day?

That vagueness of language and lack of statutory precision leads to arbitrary enforcement. As the hearing witnesses explained, such Monday morning hindsight gives "a prosecutor the ability to pick and choose" and leads to selective enforcement (RR3 at 51). Prosecutors "have the power to go out and pick those whose communications they don't like" under Section 551.143 (RR3 at 61).[58] For that reason, lawyers advise their public-official clients to not talk to other members of their governmental entity except in a properly posted open meeting. And public officials shudder in their boots because they could so easily be indicted and be beggared by defending themselves in court, regardless of their innocent intent. This concern chills their free-speech and deters them from doing their job effectively and efficiently.

In sum, Section 551.143 is unconstitutionally overbroad and impermissibly vague. Therefore, this court should affirm the order of the experienced trial judge granting Judge Doyal's motion to dismiss.

---

[58]Charlie Zech, an attorney advising public entities and boards, agreed that the enforcement of Section 551.143 "just depends on how aggressive or ambitious your district attorney is" because the law itself "gives no guidance" about "what conduct is being prohibited." (RR4 at 20, 22). He tells members not to talk to each other outside of an open meeting, even thought that has a "chilling effect" on their First Amendment rights. "Jail is going to have a chilling effect on anything, but especially when you don't know how, why, or when you will go to jail." (RR4 at 29).

**III.     Section 551.143 does not pass even intermediate scrutiny.**

Even if some court could hold that Section 551.143 is content-neutral and intermediate scrutiny applied, two brand new Supreme Court cases show that this statute is unconstitutional under that standard also.   This law, like those in *Packingham v. North Carolina,* 137 S.Ct. 1730 (2017), and *Matal v. Tam*, 137 S.Ct. 1744 (2017), violates the Free Speech Clause of the First Amendment.

To survive intermediate scrutiny, a law must be "narrowly tailored to serve a significant governmental interest."  *Packingham*, 137 S.Ct. at 1736.  That is, "the law must not 'burden substantially more speech than is necessary to further the government's legitimate interest.'" *Id.*

In *Packingham*, the Supreme Court invalidated a law banning sex offenders from using social media.[59]  The Court stated that a "fundamental principle of the First Amendment" was that everyone should "have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Id.* at 1732.  The Internet is now ubiquitous and courts should "exercise extreme caution before suggesting that the First Amendment provides scant protection for access"

---

[59] Lester Packingham pled guilty in 2002 of taking indecent liberties with a child.  In 2010, he got in trouble again when he posted on Facebook to thank God for having a traffic ticket dismissed.  After a police officer saw his post, Packingham was charged and convicted under a North Carolina law that makes it a felony for a convicted sex offender to use social-networking websites that allow minors to create an account.

41

to social-networking sites like Facebook and Twitter. *Id.*  That law was overly broad because it barred sex offenders from accessing much more than just prurient sexual materials.  The State had failed to meet "its burden to show that this sweeping law is necessary or legitimate to serve" the purpose of keeping convicted sex offenders away from vulnerable victims. *Id.* at 1737.  The government "may not suppress lawful speech as the means to suppress unlawful speech," but that was what the North Carolina law did.  It swept too broadly. *Id*. at1738.

Similarly, in *Matal v. Tam*, one of the most important recent free speech cases,[60] the Court held that the First Amendment bars a law prohibiting "disparaging" trademarks.[61]  People are free to express ideas that offend others. *Id.* at 1751.  First, the argument that trademarks are "government" speech and, therefore, the First Amendment did not apply was just wrong.  The government did not dream up the trademarks, *i.e.*, the speech; it tried to control other people's speech. *Id.*  Second, even if the trademarks were commercial speech, the

---

[60]Hugh Hansen, *Symposium: Most Important Free Speech Case in Many Years*; http://www.scotusblog.com/2017/06/symposium-important-free-speech-case-many-years/

[61]Simon Tam asked the U.S. Patent and Trademark Office (PTO) to register the name of his band: The Slants.  Tam and the band members agreed that the term "slants" is often regarded as derogatory to Asians (like themselves), but they wanted to "reclaim" the term and erase its negative connotations.  The PTO rejected Tam's request and cited a provision of federal trademark law barring the PTO from registering trademarks that may "disparage" other people, whether they are dead or alive.

42

"disparagement" clause was not sufficiently narrow to advance "a substantial interest." *Id.* at 1764-65.[62] And the disparagement clause sweeps too broadly because it applies to all disparaging trademarks, including those that disparage racists or sexists. "It is not an anti-discrimination clause," but instead "a happy-talk clause." *Id.* at 1765.

This year's two Supreme Court free-speech cases show that even when courts apply intermediate scrutiny, rather than strict scrutiny, the law in question may not be broader than necessary to accomplish the important governmental objective. Section 551.143 does not become any less broad or any less vague under intermediate scrutiny than under strict scrutiny.

The State argues that, because the Fifth Circuit, in *Asgeirsson*, upheld the constitutionality of Section 551.144 under intermediate scrutiny, this court should uphold the constitutionality of Section 551.143 under that same analysis. The State assumes that all TOMA statutes are fungible: If one is constitutional, all are. Not true.

---

[62] The government said the disparagement clause was necessary to protect "the orderly flow of commerce" and to prevent "underrepresented groups" from being inundated with "demeaning messages in commercial advertising." But that boils down to preventing offensive speech which may be "hateful . . . but the proudest boast of our free speech jurisprudence is that we protect the freedom to express the thought we hate." *Id.*

43

For example, in *Ex parte Lo*, the Court of Criminal Appeals held that one subsection of the "solicitation of a minor" statute (the "dirty words" section) violated free speech, while heavily hinting that another section (actual solicitation by requesting an illegal sexual act) did pass constitutional muster. 424 S.W.3d at 16-17. The Court compared and contrasted the two different subsections of the same law to show how they differed–one overly broad and vague, the other carefully targeted.

The same is true here. Section 551.144 is simple and clear. It prohibits "closed meetings"—deliberations about public business by a quorum of a governmental entity without following TOMA requirements. Section 551.143 has been repeatedly criticized by legislators, lawyers, law review articles, and public officials as confusing, incoherent, and unconstitutional on its face. It is a masterpiece of obfuscation. For that reason, it has apparently never before been successfully used for criminal prosecution during its more than forty years on the books.

No matter what one calls it or how one cuts it, Section 551.143 violates the Free Speech Clause of the First Amendment because it is overly broad and unconstitutionally vague.

**PRAYER**

Judge Doyal respectfully requests this court to uphold the trial judge's ruling that Section 551.143 is unconstitutional and cannot be the basis for a criminal prosecution. This court should affirm the trial court's order dismissing the indictment.

Respectfully submitted,

Rusty Hardin & Associates, LLP

/s/ Rusty Hardin
Rusty Hardin
  State Bar. No. 08972800
Cathy Cochran
  State Bar No. 09499700
Andy Drumheller
  State Bar No. 00793642
Naomi Howard
  State Bar No. 24092541
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
Email: rhardin@rustyhardin.com
Email: ccochran@rustyhardin.com
Email: adrumheller@rustyhardin.com
Email: nhoward@rustyhardin.com

*Attorneys for Appellee Craig Doyal*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2017, a true and correct copy of the foregoing Appellee's Brief was electronically filed and served on Appellant's counsel of record listed below:

Chris Downey                    *Via Email*
The Downey Law Firm
2814 Hamilton Street
Houston, Texas  77004
Email: chris@downeylawfirm.com

David Cunningham                *Via Email*
2814 Hamilton Street
Houston, Texas  77004
Email: cunningham709@yahoo.com

Joseph R. Larsen               *Via Email*
Sedgwick, LLP
1200 Smith Street
Houston, Texas  77002
Email: joseph.larsen@sedgwicklaw.com


  */s/ Naomi Howard*
Naomi Howard

46

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellee's Brief was prepared in Microsoft Word in Times New Roman, 14-point font.  The word count function shows that, excluding the sections exempted under TRAP 9.4(i)1, the brief contains 11,856 words.


_/s/ Naomi Howard_
Naomi Howard

**APPENDIX NO. 3**

**DEFENDANT DOYAL'S MOTION TO DISMISS, Cause No. 16-06-07315-CR**

Received and E-Filed for Record
3/20/2017 3:24:12 PM
Barbara Gladden Adamick
District Clerk
Montgomery County, Texas

**CAUSE NO. 16-06-07315**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| CRAIG DOYAL | § | 221st JUDICIAL DISTRICT |

**DEFENDANT CRAIG DOYAL'S
MOTION TO DISMISS THE INDICTMENT**

RUSTY HARDIN & ASSOCIATES, LLP

Cathy Cochran
State Bar No.  09499700
ccochran@rustyhardin.com

Rusty Hardin
State Bar No. 08972800
rhardin@rustyhardin.com

Naomi Howard
State Bar No. 24092541
nhoward@rustyhardin.com

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800

*Attorneys for Craig Doyal*

**Table of Contents**

I. Factual Background.................................................................... 3

II. Section 551.143 Burdens Free Speech and Is Subject to Strict .......................... 6
    Construction.

    A. 2005 Attorney General Opinion ................................................ 6
    *Not binding authority and inconsistent with precedent from other*
    *jurisdictions with Open Meeting laws*

    B. The "Alpine Case".............................................................. 9
    *The proper standard for reviewing speech: strict scrutiny or*
    *intermediate scrutiny?*

    C. Section 551.143 Must Be Reviewed under Strict Scrutiny. ...................... 14

III. Section 551.143 Is Constitutionally Overbroad............................................ 16

IV. Section 551.143 Is Vague and Confusing. ............................................... 17

V. Prayer....................................................................................... 19

ii

To the HONORABLE JUDGE RANDY CLAPP sitting by appointment to the 221st District Court:

NOW COMES Defendant CRAIG DOYAL, who moves to dismiss the indictment in the above-captioned case. Judge Doyal would show the following:

The criminal conspiracy provisions of Section 551.143 of the Texas Open Meetings Act (TOMA) are facially unconstitutional. This statute cannot be enforced with criminal sanctions[1] because it violates the Free Speech provisions of the First Amendment and is vague and overbroad.

Judge Doyal has not found report of any successful criminal conviction from Texas[2] or any other American jurisdiction based upon the "walking quorum" conspiracy theory that is alleged as the basis of the conspiracy.[3] This is not surprising because

---

[1] TOMA may be enforced through various civil proceedings, including injunctions, mandamus, and declaratory judgment actions that may be brought by interested persons, including a city, the media, or another person who can show a particular injury. Section 551.142(a). Judge Doyal is not attacking the constitutionality of TOMA's civil provisions or civil remedies, only the prosecution of a public official for a purported criminal conspiracy charge under Section 551.143.

[2] One indictment–under section 551.144–was filed against two Texas city council members in the famous "Alpine Case," but the prosecutor dismissed the case when the defendants challenged the constitutionality of the criminal provisions of TOMA. That case, its facts, and its progeny, are discussed in Part II.

In another instance, the Texas Attorney General issued a press release on June 1, 2005, touting "the state's first criminal indictment for violating the Open Meetings Act, marking a first for the state's attorney general's office." *See* REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS (June 1, 2005), https://www.rcfp.org/browse-media-law-resources/news/open-meetings-violation-sparks-criminal-indictment. It should be noted that Section 551.143 was enacted in 1993 and lay dormant for twelve years. In the 2005 case, a school board president announced that he had previously conspired to violate § 551.143 because he now wanted to void a former superintendent's severance package. He was promptly indicted for the TOMA conspiracy, while the superintendent was indicted for the felony offense of abuse of official capacity for misusing school monies. The resolution of those cases is unknown, and there is no mention of them in the Westlaw data base.

[3] A Westlaw search of all state and federal courts was conducted on March 3, 2017, using the query: "open w/2 meeting! w/s 'walking quorum.'" Thirteen relevant cases were retrieved, but none involved a criminal conviction. A second Westlaw search of all state and federal courts was conducted on March 5, 2017, using the query "open w/2 meeting w/s

---

Section 551.143 is so broad and vague that it sweeps up vast amounts of perfectly appropriate, indeed essential, political speech within its ambit.  Where a stiletto is needed, a blunderbuss is used.

Law review articles explain that Section 551.143 has caused "confusion,"[4] lacks clarity,[5] and advise that, to be safe from criminal prosecution, public officials should "not speak to other members of their government body except at a properly-posted open

conspir!"  Ninety-one relevant cases were retrieved.  Only one case involved a criminal conviction for a violation of an open meetings act by conducting a closed meeting.  But in that Michigan case, the defendants' convictions were reversed because the jury instructions did not correctly require the government to prove that the defendants had the specific intent to violate the open meetings act.  *People v. Whitney*, 578 N.W.2d 329, 341 (Mich. App. 1998) (city council members' convictions for violating open meetings act by conducting closed meeting to fire city manager reversed for failing to properly instruct jury on culpable mental state; instructions failed to inform jury that defendants had to specifically intend–subjectively desire–to violate open meetings statute).  Two other cases, both from Texas, tangentially addressed the issue of criminal violations of the TOMA.  *Scotch v. Letsinger*, 2014 WL 12528021, (W.D. Tex. March 31, 2014) (civil rights lawsuit in long-running "political battle between citizens and local government officials of Rocksprings," in which former city council member alleged that sheriff conducted campaign of harassment against her, including obtaining indictment for violation of TOMA, which was quickly dismissed); *State v. Williams*, 780 S.W.2d 891 (Tex. App.–San Antonio 1989, no pet.) (State's appeal of dismissal of indictment of city councilmen alleging "official misconduct" based on an underlying open meetings act violation remanded to district court which did have jurisdiction over the official-misconduct misdemeanor; ultimate disposition unknown, but, according to Google, defendant Hugh Williams was elected mayor of Del Rio in 1992).

According to one law review article, numerous courts have upheld the constitutionality of Open Meetings Acts, but none of those challenges involved criminal provisions, only civil penalties. *See* Devon Helfmeyer, *Do Public Officials Leave Their Constitutional Rights at the Ballot Box? A Commentary on the Texas Open Meetings Act*, 15 Tex. J. on Civil Rights & Civil Liberties 205, 230 (2010) (noting that, at time of writing, no other jurisdiction had upheld the constitutionality of criminal sanctions in Open Meetings statutes; recommending that Texas criminal sanctions be eliminated and TOMA's provisions enforced with civil remedies).

[4] C. Robert Heath & Emily Willms Rogers, *Did the Attorney General Shine Light on the Confusion in Texas' Sunshine Law?  Interpreting Open Meetings Act Provision § 551.143*, 7 Tex. Tech. Admin. L.J. 97, 99 (2006) ("Despite these attempts at clarification" by courts and attorney general opinions "confusion persists, and local officials desiring to steer clear of violating the Act look for a bright-line rule that clearly defines when discussions among members of a governing body outside a formal public meeting are permissible and when they are not.").

[5] *Id.*

2

meeting."[6]   That is the path to anemic governance.   We should not be governed by officials who may neither hear or speak to a fellow member of his council outside of publicly posted meetings.   But that is where Section 551.143 law has left us.

Both the U.S. Supreme Court and the Texas Court of Criminal Appeals hesitate to criminalize speech and have held that any such criminal provisions must be both clear on their face and narrowly tailored.[7]   Because this TOMA statute is neither, Judge Doyal requests this Court to declare Section 551.143 unconstitutional on its face and dismiss this indictment.

## I.

### Factual Background

Throughout Judge Doyal's tenure as a commissioner and Montgomery County Judge, building and maintaining local roads has been a top priority as the county has

---

[6] Scott Houston, *Texas Open Meetings Act: Constitutional?*, 13 Tex. Tech. Admin. L.J. 79, 100 (2011).

[7] The U.S. Supreme Court has meticulously defined those types of speech which may be criminally sanctioned:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). The Texas Court of Criminal Appeals is equally chary of criminalizing speech.  *See Ex parte Lo,* 424 S.W.3d 10, 15 (Tex. Crim. App. 2013) (noting that content-based regulations of speech are presumptively invalid and government must shoulder burden to rebut that presumption; courts "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content.").

grown dramatically. The voters passed a $160 million road bond package in 2005, but they rejected one in 2011 because it failed to specify the projects for which the money would be used.

In January of 2015, the commissioners appointed a ten-member citizens' committee that, working in public meetings with maps, technical support, and engineering drawings, compiled a list of 77 specific projects and put together a $350 million road-bond project. But the voters, led by Tea Party opposition, defeated the proposal on May 9, 2015.

After the bond was defeated, citizens attended the Commissioners Court Meetings every month and in the public comments periods begged the commissioners to put a road bond back on the ballot in November. Everyone agreed that the county badly needed to pass a smaller road bond, but the commissioners were disheartened and wanted to wait, especially because there was a school bond on the November 2015 ballot. In August, the tide turned and the Tea Party groups signaled to the commissioners that they were truly serious about finding a solution and not just tearing down their opponents. During the public comments period of the August 11th Regular Commissioners Court Meeting, retired County Judge Alan B. Sadler said that the "opposition" was ready to work on a revised road bond package for the November election.

On August 20th and 21st, Judge Doyal and Commissioner Riley along with political consultant Marc Davenport met with representatives of the Texas Patriots PAC group ("Patriots PAC") to discuss placing a new bond referendum on the November ballot. Judge Doyal and Commissioner Riley were initially very skeptical about the value

4

of meeting with the Patriots PAC, but they ultimately concluded that the PAC was serious about supporting a smaller, less expensive road bond. Putting a road bond on the November ballot now seemed a realistic proposition. What resulted was a Memorandum of Understanding (MOU), in which nothing was promised except for the political support on the part of the Patriots PAC if the commissioners put a road bond proposal on a Special Meeting agenda. No votes were promised and the MOU recognized that ultimate discretion lay with the Commissioners to do what was best for their constituents. The Patriots PAC, Commissioner Riley, and Judge Doyal issued press releases on the 21st explaining the developments and publishing for the public the entire MOU including exhibits for the public to consider. Judge Doyal posted the agenda for a special Commissioners Court Meeting for August 24th, the last day that a bond election package could be placed on the November ballot for the voters.

The Special Meeting was held and citizens spoke during the public comments period praising the work of the commissioners and thanking them for putting a road bond on the ballot. The commissioners all had an opportunity to speak about the road bond they were about to vote on. The commissioners unanimously voted for the revised bond package–which was no surprise because the commissioners had unanimously supported the previous road bond package in May. A smaller $280 million road bond was put on the November ballot. After some press "open records" requests were made, the County Attorney, J.D. Lambright, wrote Judge Doyal a letter on Sept.25th, stating that the commissioners had complied with the Open Meetings Act, and he saw no basis for thinking that the vote to put the bond package on the ballot would be voidable. The voters passed the bond in the November election.

In sum, the discussions between the Texas Patriots PAC, Judge Doyal, Commissioner Riley, and Marc Davenport were not a "meeting" under TOMA nor were they the result of an "agreement" to "conspire" to avoid TOMA. Commissioner Riley and Judge Doyal's August 21st press release published to the public the entire MOU and informed both the citizens and the other commissioners of the road bond proposal that they hoped the commisioners would approve on August 24th for submission to the voters in November. Of course, the ultimate decision to approve the road bond was for the voters of Montgomery County, not with the commissioners who simply voted to put the bond package (originally created by the citizens' committee, not the Patriots PAC or the commissioners) on the ballot. The compromise was a great success and the new road bond passed by 60% in the November election whereas the earlier May bond proposal had failed by 60%.

## II.

### Section 551.143 Burdens Free Speech and Is Subject to Strict Construction.

Section 551.143(a) states:

A member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent [the Open Meetings Act] by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of [the Open Meetings Act].

### A.     2005 Attorney General Opinion
*Not binding authority and inconsistent with precedent from other jurisdictions with Open Meeting laws*

On its face, this statute does not make sense. Meeting in numbers of less than a quorum does not violate a statute that requires a quorum to meet in open session. You

either have a quorum or you don't; with the former you have open meetings, with the latter, you have informal discussions. That is why, in 2004, the Jefferson County District Attorney asked for an Attorney General Opinion on whether it was unconstitutionally vague. Seven months later, the Attorney General responded: the statute was "plain" on its face—"it provides adequate notice and does not allow for arbitrary enforcement." Tex. Atty Gen. Op. GA-0326, *6 (2005). He rewrote the statute to say:

> Members of a governmental body who knowingly conspire to gather in numbers that do not physically constitute a quorum at any one time but who through successive gatherings secretly discuss a public matter with a quorum of that body violate section 551.143 of the Open Meetings Act.

*Id.* He said that it is a law to prevent a "walking quorum" or "a daisy chain of members the sum of whom constitute a quorum." *Id. *2.*

Of course, that is not what the law actually says.[8] The Attorney General simply found that construction "discernible" from his own reading. *Id.*[9] But even if the

---

[8] A Kansas *civil* statute makes the Attorney General's desired reading explicit:

**"Serial communications"**

Interactive communications in a series or "serial communications" may constitute a meeting subject to KOMA and shall be open if they:

> 1) Collectively involve a majority of the membership of the public body or agency,

> 2) Share a common topic of discussion concerning the business or affairs of the public body or agency, and

> 3) Are intended by any or all of the participants to reach agreement on a matter that would require binding action to be taken by the public body or agency.

K.S.A. 2016 Supp. 75-4318(f). A "knowing" or "purposeful" violation of its requirements is subject only to civil fines. K.S.A. 2016 Supp. 75-4320(a).

According to the Kansas Attorney General, whether a series of communications constitutes a violation is very fact specific. AGO 2009-22 (no interactive communication where nonmember communicates with a majority of body or agency board and member responds as well as shares response with other members; possibility exists for KOMA violation if there is further interactive communication).

7

Legislature intended to say what the Attorney General said, this penal law is still so vague and overbroad as to be unconstitutional under the First Amendment. The Attorney General relied solely upon *civil* Open Meeting Act cases to construe the statutory words "liberally," instead of construing a penal statute "strictly" as it should be, using the rule of lenity–favoring the defendant–when its terms are ambiguous.[10]

The Attorney General in his 2005 Opinion relied on *Esperanza Peace and Justice Center v. City of San Antonio*, 316 F.Supp.2d 433 (W.D. Tex. 2001), in particular.[11] In *Esperanza Peace*, a federal district court held that the mayor should not

---

[9] According to a 1990 Louisiana Attorney General Opinion, "a 'walking quorum' is a meeting of a public body where different members leave the meeting and different members enter the meeting so that while an actual quorum is never physically present an actual quorum during the course of the meeting participates in the discussion." *Mabry v. Union Parish School Board*, 974 So.2d 787, 789 (La. App. 2014) (quoting Op. Atty. Gen. No. 90-349, July 26, 1990). The *Mabry* court held that the "casual telephone encounters where several board members individually and separately discussed the situation" concerning an employment contract would have "to reach a much more structured level with secretive binding force on at least a quorum of the membership before the Open Meetings Act would be implicated." *Id.* The court explained:

> [W]e find that the informal exchange of ideas and opinions preliminary to a meeting of elected officials is important for the issues of agenda setting and compromise that make a deliberative body function efficiently. For one member to have a phone conversation with another, wherein opinions and thoughts on a topic are expressed, does not mean or create a presumption that those parties' views will be fixed in stone in solidarity before the public meeting.

*Id.* at 790.

[10] It is a "familiar principle that 'ambiguity' in the ambit of criminal statutes should be resolved in favor of lenity.'" *Skilling* v. *United States*, 561 U. S. 358, 410 (2010). That principle prevents courts from giving the words of a criminal statute "a meaning that is different from [their] ordinary, accepted meaning, and that disfavors the defendant." *Burrage* v. *United States*, 134 S.Ct. 881, 891 (2014). And it means that when a criminal statute has two possible readings, courts do not "'choose the harsher alternative'" unless the legislature has "'spoken in language that is clear and definite.'" *United States* v. *Bass*, 404 U. S. 336, 347–349 (1971).

[11] Because the Attorney General lacks a criminal case which has resulted in a conviction, the scenario in *Esperanza Peace* is used in the Attorney General's Open Meetings Act training videos and in continuing education publications. The time spent on explaining the criminal penalties of TOMA constitutes a small fraction of the entire TOMA video training (roughly three minutes out of 60 minutes).

have held a series of meetings and telephone calls with council members on the evening before the council meeting to discuss the City's budget and to obtain a consensus on its changes. The judge explained:

> [A] meeting of less than a quorum is not a "meeting" within the Act when there is no intent to avoid the Act's requirements. On the other hand, the Act would apply to meeting of groups of less than a quorum where a quorum or more of the body attempted to avoid the purpose of the Act by deliberately meeting in groups of less than a quorum in closed sessions to discuss and/or deliberate public business, and then ratifying their actions as a quorum in a subsequent public meeting.

*Id.* at 476. This was a civil case seeking injunctive relief, not a criminal prosecution. And it was clear that the purpose of the calls and "closed" meetings was to "achieve a consensus on changes to the budget" by the entire council before the next day's open meeting. *Id.* at 442.

## B. The "Alpine Case"
*The proper standard for reviewing speech: strict scrutiny or intermediate scrutiny?*

Another well-documented civil case that began with a criminal prosecution brought under TOMA is the "Alpine Case." The "Alpine Case" saga involved an Alpine city council member who emailed four other members asking them if they wanted to put a particular item on a future agenda. One member responded by email the next day saying that the item was relevant and worthy of discussion at the next meeting.[12] The local district attorney thought that exchange violated the Act, and a grand jury indicted them both under Section 551.144.[13]

---

[12] The exact email and response are set out in *Rangra v. Brown*, 2006 WL 3327634, *2 (W.D. Tex. Nov. 7, 2006), but are too lengthy to quote here.

[13] What no court has explained is how a government entity is supposed to draft an agenda for a public meeting if the members cannot talk about what items should go on that

9

The district attorney dismissed the cases when the defendants filed state-court motions claiming that "TOMA, on its face and as applied, violated their First Amendment rights." *Rangra v. Brown*, 2006 WL 3327634, *3 (W.D. Tex. Nov. 7, 2006). So the council members filed a federal civil rights suit seeking a declaratory judgment that the criminal provisions of TOMA were facially unconstitutional, overbroad, vague, and violated their free-speech rights. *Id.* *1.

The Texas district court relied upon a 1982 civil case from Kansas.[14] That Kansas case expressly stated that it was not discussing a criminal statute, so it would read the Open Meetings Act provisions liberally, rather than strictly as was required with penal statutes.[15] The Kansas court upheld civil fines of $10 and $30 against the county commissioners who conducted three separate "prearranged" closed meetings concerning the construction contract for a hospital.

The *Rangra* judge applied intermediate scrutiny even though the statute affected free speech and the First Amendment. He stated that "TOMA does not impede the freedom of speech; the Act simply requires speech to be made openly, and in the presence of interested public, as opposed to "behind closed doors." *Id.* at *6. He concluded that the criminal statute–section 551.144–was neither overbroad nor vague. *Id.* at *6-7

---

agenda? The chief acts by fiat? The secretaries get together and put down items relayed by their bosses? Which comes first, the agenda or the public meeting?

[14] *State ex rel. Murray v. Palmgren*, 646 P.2d 1091, 1099 (Kan. 1982). This state has very clear, explicit statutes concerning its open meetings requirements, even though they have only civil penalties. *See note 8 supra*.

[15] *Id.*

A panel of the Fifth Circuit, however, reversed the district court, concluding that the strict scrutiny test applied to TOMA. *Rangra v. Brown*, 566 F.3d 515 (5th Cir. 2009). The court explained:

> The First Amendment's protection of elected officials' speech is full, robust, and analogous to that afforded citizens in general. Furthermore, when a state seeks to restrict the speech of an elected official on the basis of its content, a federal court must apply strict scrutiny and declare that limitation invalid unless the state carries its burden to prove both that the regulation furthers a compelling state interest and that it is narrowly tailored to serve that interest.

*Id.* at 518. The Fifth Circuit analogized the situation of public officials to that of judges expressing themselves "on matters of current public importance." *Id.* at 524-25 (discussing *Republican Party of Minnesota v. White*, 536 U.S. 765, 781-82 (2002)). It also referred to its own prior opinion concerning an elected Texas judge and held that he had been improperly disciplined on the basis of the content of his speech when he "addressed alleged abuses of the judicial process by lawyers in a pending case." *Id.* at 525 (discussing *Jenevein v. Willing*, 493 F.3d 551, 557-58 (5th Cir. 2007)).

In those cases, the Supreme Court and the Fifth Circuit applied strict scrutiny to proceedings in which judges had been disciplined for the content of their speech. The Supreme Court held that the Minnesota judicial canon violated the free-speech clause of the First Amendment and could not be enforced. The Fifth Circuit reversed the sanctions against the Texas judge.

Based on the judicial-speech cases, the Fifth Circuit remanded *Rangra* to the district court to apply strict scrutiny and decide if public officials, like judges, were entitled to unfettered free speech. But the en banc court granted rehearing, and before

11

it could be reheard, the two council members were term-limited, so the case was dismissed as moot.

Because the constitutional issue was so important, new local government officials filed a second lawsuit, stipulating to the *Rangra* facts. Once again, they sought a declaratory judgment that the criminal provisions of TOMA violate the First Amendment because they are a content-based restriction on political speech and were vague and overbroad. *Asgeirsson v. Abbott*, 773 F.Supp.2d 684 (W.D.Tex.2011). The court succinctly set out the issue:

> Content-based speech prohibitions receive strict scrutiny from courts determining a statute's constitutionality. *Republican Party of Minn. v. White*, 536 U.S. 765, 774-775 (2002). However, content-neutral statutes that minimally affect speech rights are examined under intermediate scrutiny. *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir.2010). Plaintiffs argue that TOMA is not a valid time, place, and manner regulation of their free speech rights because it is content-based. In response, Defendants argue that TOMA is a disclosure law that is content-neutral because it requires disclosure of speech, not suppression.

The district court held that section 551.144 (notably, neither of the Alpine cases discussed the constitutionality of section 551.143) was constitutional because it was not vague or overbroad, it did not restrict speech based on its content, rather it required disclosure of speech in an open forum, and it satisfied the intermediate-scrutiny standard (but, in the alternative, it survived strict-scrutiny).

This time the Fifth Circuit agreed with the trial court. *Asgeirsson v. Abbott,* 696 F.3d 454, 467 (5th Cir. 2012). The plaintiffs argued that strict scrutiny applied because TOMA was a content-based law: "A regulatory law scheme that requires the government to 'examine the content of the message that is conveyed,' is content-based

regardless of its motivating purpose." *Id.* at 460. The Fifth Circuit said that analysis did not accurately state prior Fifth Circuit law. *Id.* It found that TOMA was content-neutral because it was "*justified* without reference to the content of the regulated speech." *Id.* (emphasis in original). In other words, the ends of good government justified the means of tightly restricting the speech of public officials. Therefore, it applied intermediate scrutiny and found that because the plaintiffs (1) had pointed to "no section of TOMA that is vague of its face," although it was "complex" and "complicated," and (2) failed to argue that TOMA "chill[ed] substantial amounts of speech and facilitat[ed] discriminatory and arbitrary enforcement," it had not proven that TOMA was unconstitutionally vague or overbroad. *Id.* at 466.[16]

That holding, however, is dubious after the Supreme Court's decision in *McCullen v. Coakley*, 134 S.Ct. 2518 (2014). In *McCullen*, the Court majority spilled considerable ink on the question of whether an abortion facility "buffer-zone" statute was content-neutral (intermediate scrutiny applies) or content-based (strict scrutiny applies). It concluded that the law "would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a

---

[16] Under intermediate scrutiny, "content-neutral laws must: (1) leave open ample alternative channels of communication; and (2) be narrowly-tailored to serve a significant government interest." *Asgeirsson*, 696 F.Sup.2d at 701 (internal quotation marks omitted). The district court held that criterion one was met because a council that holds an illegal meeting can correct it with a later open meeting. *Id.* That's fine in a civil context, but in a criminal context, the council member can be prosecuted the moment the "closed" meeting occurs, e.g., once a thief has stolen the car, giving it back the next day does not cancel out the crime. The district court then stated that TOMA was narrowly tailored under prong two because a public official can always request an attorney general or county or city attorney opinion before proceeding with the contemplated speech or discussion. But that is not timely, tailored or effective. Attorney General opinions are not legally binding and such an opinion merely provides an affirmative defense only *after* the public official has been indicted and gone to trial. Tex. Gov't Code § 551.144(c).

13

violation has occurred." *Id.* at 2531. But *any and all* standing in the zone, regardless of what those people said or even if they spoke at all, was forbidden, so the law was content-neutral and intermediate scrutiny applied.[17]

## C.     Section 551.143 Must Be Reviewed under Strict Scrutiny.

Thus, the Supreme Court's reasoning in *McCullen* (if you need to look to the content of the speech to decide if it is limited, strict scrutiny applies) completely undercut the Fifth Circuit's rationale in *Asgeirsson* (no need to look at the content of the speech to decide if strict scrutiny applies). Under *McCullen*, because TOMA applies only to specific speech by public officials–speech that discusses "public business or public policy over which the governmental body has supervision or control"[18]–it is a content-based penal regimen subject to strict scrutiny. When strict scrutiny applies, the statute is presumed to be unconstitutional and the State must prove otherwise by showing that it is narrowly tailored to serve a compelling state interest which cannot be achieved by less restrictive means. *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000); *Ex parte Lo*, 424 S.W.3d 10, 15-16 (Tex. Crim. App. 2013).

To satisfy strict scrutiny, a law, like TOMA, that regulates speech must be (1) necessary to serve a compelling state interest and (2) narrowly drawn. *Ex parte Lo*, 424 S.W.3d at 15. A law is narrowly drawn if it employs the least restrictive means to

---

[17] Even though it applied intermediate scrutiny, the Supreme Court struck down the law because it was not "narrowly tailored"; it restricted more speech than was necessary to protect the abortion clinic's clients' physical safety. *Id.* at 2541. Justice Scalia's concurrence argued that the statute was, in fact, content-based because it applied only to abortion clinics, and therefore it was subject to strict scrutiny, even though it was held unconstitutional under the lower standard. *Id.* at 2543-45 (Scalia, J., concurring).

[18] TEX. GOV'T CODE § 551.001.

14

achieve its goal and if there is a close nexus between the government's compelling interest and the restriction. *Id.* If a less restrictive means of meeting the compelling interest could achieve the statute's legitimate purpose, then that law does not satisfy strict scrutiny. *Id.* Furthermore, when the content of speech is the crime, scrutiny is strict because, "as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *Id.* (quoting *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573 (2002)).

Two competing interests drive TOMA: "the public's right to know about the workings of its governmental bodies, and the need to ensure members of governmental bodies are informed and act efficiently."[19] Both of these goals are essential to good government; neither is more compelling than the other. It is essential that public officials have sufficient avenues to become and stay well-informed, both about their fellow officials' concerns and certainly about the public's concerns. Any law that restricts that compelling interest must be as narrowly tailored as will serve the public's interest in open government while preserving the greatest free speech rights of the public official. Only the least restrictive means of achieving the goal of open government will pass muster when circumscribing the official's free speech rights.

Section 551.143 does not meet that test.

---

[19] C. Robert Heath & Emily Willms Rogers, *Did the Attorney General Shine Light on the Confusion in Texas' Sunshine Law?  Interpreting Open Meetings Act Provision § 551.143*, 7 Tex. Tech. Admin. L.J. 97, 98-99 (2006).

## III.

### Section 551.143 Is Constitutionally Overbroad.

According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep. *Ex parte Lo*, 424 S.W.3d at 18. Section 551.143 is clearly overbroad. As law review commentators have noted, it potentially covers a vast swath of speech—from trying to set an agenda as in the Alpine case, to "one or more members of a governing body . . . trying to gauge other members' support for against an item before the governing body" or even, as has been suggested, any discussion among public officials about public business outside the formal public meeting."[20] Indeed, given the "walking quorum" Attorney General's opinion and the indictments in this case, Section 551.143 could criminalize public officials who have individually been approached by a lobbyist and asked to support a bill and told that a fellow official has already done so. The "daisy chain" is created by the lobbyist talking to each public official serially and getting a positive response from each. Or the mayor's secretary calling the secretaries for the council members to ask if each council member would like a particular item—school buses for example—on the agenda for the next open meeting could make a daisy chain.

Criminalizing such innocuous, fact-finding discussions and inquiries would only lead to a "know nothing" government run by those who know the least about each other and public affairs. This law discourages not only discussion between public officials, but

---

[20] Heath & Rogers, *supra* at 99; Houston, *supra* at 79 ("Many elected officials ask if they can talk about public business with other members of the governmental body outside of a properly posted meeting. Generally, the answer is no.").

between public officials and members of the public because that citizen might then talk individually to a quorum of the council.

Other states have successfully ensured open government by following one of three paths: (1) do not criminalize open meeting violations; or (2) at least do not criminalize meetings of less than a quorum of public officials; or (3) use criminal penalties only if the statutory language is exceedingly clear on its face, is not subject to any misinterpretation, and condemns only the Poster Child case of rotating, simultaneous or serial "walking quorums." Section 551.143 does not comply with any of those paths. It is not narrowly tailored to punish only that speech which is a clear threat to a compelling governmental interest of open government. Instead, it sweeps so broadly that experts in the field counsel their public-official clients to avoid talking to any fellow officials outside of a properly posted open meeting.

## IV.

## Section 551.143 Is Vague and Confusing.

According to both U.S. Supreme Court[21] and Texas Court of Criminal Appeals[22] precedent, criminal laws must be sufficiently clear in at least three respects.

- First, a person of ordinary intelligence must have a reasonable opportunity to know what is prohibited. *Long*, 931 S.W.2d at 287.

- Second, the law must establish clear guidelines for law enforcement. *Id.*

---

[21] *Grayned v. Rockford*, 408 U.S. 104, 108 (1972).

[22] *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) (provision of harassment statute referring to conduct that was likely to "annoy" or "alarm" was vague and reasonable person standard could not be read into it; entire statute declared unconstitutional under First Amendment).

17

- Third, when First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id.*

The demand for clarity is paramount. When a statute burdens First Amendment rights, the doctrine of vagueness demands greater specificity than in other contexts to adequately preserve the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109.

Section 551.143 is unclear and vague on its face by making it a crime for a member (or members) of a governmental body to "conspire" to meet in numbers of less than a quorum for the purpose of "secret deliberations" that violate the open meetings act.

First, what is the meaning of conspire in this statute? Conspire as in Section 15.02 of the Penal Code? Some sort of common law meaning of conspire? Merely an agreement to meet? Or an agreement to meet with the purpose to have "secret deliberations"? Or to meet with the purpose to violate the law?

Second, what is a "secret" deliberation? Only the members of the official entity are present? Or hundreds of members of the public but less than a quorum of the government entity? (For example, a 4th of July picnic with 2 council members present and giving speeches about buying school buses, knowing that the press and public will circulate their words to the other 3 council members before the open meeting the next day). Simultaneous meetings of less than a quorum which, collectively make up a quorum, with a runner between them? Serial meetings of individual members with each other until the quorum is reached? Serial meetings with individual members by the

lobbyist or member of the public who garners support for a project and then moves on the next member, telling him that the first member has already agreed and seeking his support, etc.?

Third, what kind of "deliberations" are covered? Suppose the county judge calls up the commissioners and he does all the talking; the others just listen. Is that a deliberation? Suppose the county judge sends an email to all commissioners–has he committed a crime at the time he sent it? At the time the other commissioners read it? At the time any one of them responds? A quorum responds?

Who knows? Section 551.143 is a model of obscurity. That is why the experts tell their public-official clients that they should never talk to (or presumably email or telephone) another member of the same board or entity except for at a properly posted open meeting. It is a sad commentary on our laws and our public life if this is the way we must conduct our government.

**V.**

**Prayer**

Instead, Judge Doyal asks this Honorable Court to declare that section 551.143 of the Government Code is subject to strict scrutiny, and that it is unconstitutionally overbroad and vague under that standard. Therefore, Judge Doyal asks that this court dismiss the indictment against him.

19

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP


*/s/ Cathy Cochran*
Cathy Cochran
State Bar No. 09499700
ccochran@rustyhardin.com

Rusty Hardin
State Bar No. 08972800
rhardin@rustyhardin.com

Naomi Howard
State Bar No. 24092541
nhoward@rustyhardin.com

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800

**ATTORNEYS FOR CRAIG DOYAL**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2017, a true and correct copy of Defendant Craig Doyal's Motion to Dismiss the Indictment was served on the following counsel:


Christopher J. Downey                    *Via E-Service*
THE DOWNEY LAW FIRM
2814 Hamilton Street
Houston, Texas 77004
Email:  chris@downeylawfirm.com


David Cunningham                         *Via E-Service*
LAW OFFICE OF DAVID CUNNINGHAM
2814 Hamilton
Houston, Texas  77004
Email:  cunningham709@yahoo.com


                              */s/ Rusty Hardin*
                              Rusty Hardin

**APPENDIX NO. 4**

**CHAPTER 551 OF TEXAS GOVERNMENT CODE**

**"TEXAS OPEN MEETINGS ACT"**

GOVERNMENT CODE

TITLE 5. OPEN GOVERNMENT;  ETHICS

SUBTITLE A. OPEN GOVERNMENT

CHAPTER 551. OPEN MEETINGS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 551.001.  DEFINITIONS.  In this chapter:
        (1)  "Closed meeting" means a meeting to which the public does not
have access.
        (2)  "Deliberation" means a verbal exchange during a meeting
between a quorum of a governmental body, or between a quorum of a
governmental body and another person, concerning an issue within the
jurisdiction of the governmental body or any public business.
        (3)  "Governmental body" means:
                (A)  a board, commission, department, committee, or agency
within the executive or legislative branch of state government that is
directed by one or more elected or appointed members;
                (B)  a county commissioners court in the state;
                (C)  a municipal governing body in the state;
                (D)  a deliberative body that has rulemaking or quasi-
judicial power and that is classified as a department, agency, or political
subdivision of a county or municipality;
                (E)  a school district board of trustees;
                (F)  a county board of school trustees;
                (G)  a county board of education;
                (H)  the governing board of a special district created by
law;
                (I)  a local workforce development board created under
Section 2308.253;
                (J)  a nonprofit corporation that is eligible to receive
funds under the federal community services block grant program and that is
authorized by this state to serve a geographic area of the state;
                (K)  a nonprofit corporation organized under Chapter 67,
Water Code, that provides a water supply or wastewater service, or both,
and is exempt from ad valorem taxation under Section 11.30, Tax Code; and
                (L)  a joint board created under Section 22.074,
Transportation Code.

(4)   "Meeting" means:

(A)   a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action; or

(B)   except as otherwise provided by this subdivision, a gathering:

(i)   that is conducted by the governmental body or for which the governmental body is responsible;

(ii)   at which a quorum of members of the governmental body is present;

(iii)   that has been called by the governmental body; and

(iv)   at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

The term does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, or the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop, ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference.

The term includes a session of a governmental body.

(5)   "Open" means open to the public.

(6)   "Quorum" means a majority of a governmental body, unless defined differently by applicable law or rule or the charter of the governmental body.

(7)   "Recording" means a tangible medium on which audio or a combination of audio and video is recorded, including a disc, tape, wire, film, electronic storage drive, or other medium now existing or later developed.

(8)   "Videoconference call" means a communication conducted between two or more persons in which one or more of the participants communicate with the other participants through duplex audio and video signals transmitted over a telephone network, a data network, or the Internet.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 62, Sec. 18.23, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 647, Sec. 1, eff. Aug. 30, 1999; Acts 2001, 77th Leg., ch. 633, Sec. 1, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1004, Sec. 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 1276, Sec. 9.012, eff. Sept. 1, 2003.
Amended by:

Acts 2007, 80th Leg., R.S., Ch. 165 (S.B. 1306), Sec. 1, eff. May 22, 2007.

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 1, eff. May 18, 2013.

Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 1, eff. June 14, 2013.

Acts 2015, 84th Leg., R.S., Ch. 115 (S.B. 679), Sec. 1, eff. May 23, 2015.

Acts 2015, 84th Leg., R.S., Ch. 1236 (S.B. 1296), Sec. 21.001(26), eff. September 1, 2015.


Sec. 551.0015. CERTAIN PROPERTY OWNERS' ASSOCIATIONS SUBJECT TO LAW. (a) A property owners' association is subject to this chapter in the same manner as a governmental body:
(1) if:
(A) membership in the property owners' association is mandatory for owners or for a defined class of owners of private real property in a defined geographic area in a county with a population of 2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more;
(B) the property owners' association has the power to make mandatory special assessments for capital improvements or mandatory regular assessments; and
(C) the amount of the mandatory special or regular assessments is or has ever been based in whole or in part on the value at which the state or a local governmental body assesses the property for purposes of ad valorem taxation under Section 20, Article VIII, Texas Constitution; or
(2) if the property owners' association:
(A) provides maintenance, preservation, and architectural control of residential and commercial property within a defined geographic area in a county with a population of 2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more; and

        (B)  is a corporation that:

           (i)  is governed by a board of trustees who may employ a general manager to execute the association's bylaws and administer the business of the corporation;

           (ii)  does not require membership in the corporation by the owners of the property within the defined area; and

           (iii)  was incorporated before January 1, 2006.

    (b)  The governing body of the association, a committee of the association, and members of the governing body or of a committee of the association are subject to this chapter in the same manner as the governing body of a governmental body, a committee of a governmental body, and members of the governing body or of a committee of the governmental body.

Added by Acts 1999, 76th Leg., ch. 1084, Sec. 1, eff. Sept. 1, 1999. Amended by:

    Acts 2007, 80th Leg., R.S., Ch. 1367 (H.B. 3674), Sec. 1, eff. September 1, 2007.


    Sec. 551.002.  OPEN MEETINGS REQUIREMENT.  Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


    Sec. 551.003.  LEGISLATURE.  In this chapter, the legislature is exercising its powers to adopt rules to prohibit secret meetings of the legislature, committees of the legislature, and other bodies associated with the legislature, except as specifically permitted in the constitution.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


    Sec. 551.0035.  ATTENDANCE BY GOVERNMENTAL BODY AT LEGISLATIVE COMMITTEE OR AGENCY MEETING.  (a)  This section applies only to the attendance by a quorum of a governmental body at a meeting of a committee or agency of the legislature.  This section does not apply to attendance at the meeting by members of the legislative committee or agency holding the meeting.

    (b)  The attendance by a quorum of a governmental body at a meeting of a committee or agency of the legislature is not considered to be a meeting of that governmental body if the deliberations at the meeting by the members of that governmental body consist only of publicly testifying at

the meeting, publicly commenting at the meeting, and publicly responding at the meeting to a question asked by a member of the legislative committee or agency.

Added by Acts 2001, 77th Leg., ch. 447, Sec. 1, eff. June 4, 2001.


Sec. 551.004.  OPEN MEETINGS REQUIRED BY CHARTER.  This chapter does not authorize a governmental body to close a meeting that a charter of the governmental body:
        (1)  prohibits from being closed;  or
        (2)  requires to be open.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.005.  OPEN MEETINGS TRAINING.  (a)  Each elected or appointed public official who is a member of a governmental body subject to this chapter shall complete a course of training of not less than one and not more than two hours regarding the responsibilities of the governmental body and its members under this chapter not later than the 90th day after the date the member:
        (1)  takes the oath of office, if the member is required to take an oath of office to assume the person's duties as a member of the governmental body; or
        (2)  otherwise assumes responsibilities as a member of the governmental body, if the member is not required to take an oath of office to assume the person's duties as a member of the governmental body.
     (b)  The attorney general shall ensure that the training is made available.  The office of the attorney general may provide the training and may also approve any acceptable course of training offered by a governmental body or other entity.  The attorney general shall ensure that at least one course of training approved or provided by the attorney general is available on videotape or a functionally similar and widely available medium at no cost.  The training must include instruction in:
        (1)  the general background of the legal requirements for open meetings;
        (2)  the applicability of this chapter to governmental bodies;
        (3)  procedures and requirements regarding quorums, notice, and recordkeeping under this chapter;
        (4)  procedures and requirements for holding an open meeting and for holding a closed meeting under this chapter; and

(5)  penalties and other consequences for failure to comply with this chapter.

(c)  The office of the attorney general or other entity providing the training shall provide a certificate of course completion to persons who complete the training required by this section.  A governmental body shall maintain and make available for public inspection the record of its members' completion of the training.

(d)  Completing the required training as a member of the governmental body satisfies the requirements of this section with regard to the member's service on a committee or subcommittee of the governmental body and the member's ex officio service on any other governmental body.

(e)  The training required by this section may be used to satisfy any corresponding training requirements concerning this chapter or open meetings required by law for the members of a governmental body.  The attorney general shall attempt to coordinate the training required by this section with training required by other law to the extent practicable.

(f)  The failure of one or more members of a governmental body to complete the training required by this section does not affect the validity of an action taken by the governmental body.

(g)  A certificate of course completion is admissible as evidence in a criminal prosecution under this chapter.  However, evidence that a defendant completed a course of training offered under this section is not prima facie evidence that the defendant knowingly violated this chapter.

Added by Acts 2005, 79th Leg., Ch. 105 (S.B. 286), Sec. 1, eff. January 1, 2006.

Sec. 551.006.  WRITTEN ELECTRONIC COMMUNICATIONS ACCESSIBLE TO PUBLIC. (a)  A communication or exchange of information between members of a governmental body about public business or public policy over which the governmental body has supervision or control does not constitute a meeting or deliberation for purposes of this chapter if:

(1)  the communication is in writing;

(2)  the writing is posted to an online message board or similar Internet application that is viewable and searchable by the public; and

(3)  the communication is displayed in real time and displayed on the online message board or similar Internet application for no less than 30 days after the communication is first posted.

(b)  A governmental body may have no more than one online message board or similar Internet application to be used for the purposes described

in Subsection (a).  The online message board or similar Internet application must be owned or controlled by the governmental body, prominently displayed on the governmental body's primary Internet web page, and no more than one click away from the governmental body's primary Internet web page.

(c)  The online message board or similar Internet application described in Subsection (a) may only be used by members of the governmental body or staff members of the governmental body who have received specific authorization from a member of the governmental body.  In the event that a staff member posts a communication to the online message board or similar Internet application, the name and title of the staff member must be posted along with the communication.

(d)  If a governmental body removes from the online message board or similar Internet application a communication that has been posted for at least 30 days, the governmental body shall maintain the posting for a period of six years.  This communication is public information and must be disclosed in accordance with Chapter 552.

(e)  The governmental body may not vote or take any action that is required to be taken at a meeting under this chapter of the governmental body by posting a communication to the online message board or similar Internet application.  In no event shall a communication or posting to the online message board or similar Internet application be construed to be an action of the governmental body.

Added by Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 3, eff. June 14, 2013.
Added by Acts 2013, 83rd Leg., R.S., Ch. 1201 (S.B. 1297), Sec. 1, eff. September 1, 2013.


SUBCHAPTER B. RECORD OF OPEN MEETING

Sec. 551.021.  MINUTES OR RECORDING OF OPEN MEETING REQUIRED.  (a)  A governmental body shall prepare and keep minutes or make a recording of each open meeting of the body.

(b)  The minutes must:
(1)  state the subject of each deliberation;  and
(2)  indicate each vote, order, decision, or other action taken.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 2, eff. May 18, 2013.

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 3, eff. May 18, 2013.


Sec. 551.022.  MINUTES AND RECORDINGS OF OPEN MEETING:  PUBLIC RECORD. The minutes and recordings of an open meeting are public records and shall be available for public inspection and copying on request to the governmental body's chief administrative officer or the officer's designee.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 4, eff. May 18, 2013.


Sec. 551.023.  RECORDING OF MEETING BY PERSON IN ATTENDANCE.  (a)  A person in attendance may record all or any part of an open meeting of a governmental body by means of a recorder, video camera, or other means of aural or visual reproduction.

(b)  A governmental body may adopt reasonable rules to maintain order at a meeting, including rules relating to:

(1)  the location of recording equipment;  and

(2)  the manner in which the recording is conducted.

(c)  A rule adopted under Subsection (b) may not prevent or unreasonably impair a person from exercising a right granted under Subsection (a).

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 5, eff. May 18, 2013.


SUBCHAPTER C. NOTICE OF MEETINGS

Sec. 551.041.  NOTICE OF MEETING REQUIRED.  A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

Sec. 551.0411.   MEETING NOTICE REQUIREMENTS IN CERTAIN CIRCUMSTANCES.
(a)   Section 551.041 does not require a governmental body that recesses an open meeting to the following regular business day to post notice of the continued meeting if the action is taken in good faith and not to circumvent this chapter.  If an open meeting is continued to the following regular business day and, on that following day, the governmental body continues the meeting to another day, the governmental body must give written notice as required by this subchapter of the meeting continued to that other day.

(b)   A governmental body that is prevented from convening an open meeting that was otherwise properly posted under Section 551.041 because of a catastrophe may convene the meeting in a convenient location within 72 hours pursuant to Section 551.045 if the action is taken in good faith and not to circumvent this chapter.  If the governmental body is unable to convene the open meeting within those 72 hours, the governmental body may subsequently convene the meeting only if the governmental body gives written notice of the meeting as required by this subchapter.

(c)   In this section, "catastrophe" means a condition or occurrence that interferes physically with the ability of a governmental body to conduct a meeting, including:

(1)   fire, flood, earthquake, hurricane, tornado, or wind, rain, or snow storm;

(2)   power failure, transportation failure, or interruption of communication facilities;

(3)   epidemic; or

(4)   riot, civil disturbance, enemy attack, or other actual or threatened act of lawlessness or violence.

Added by Acts 2005, 79th Leg., Ch. 325 (S.B. 690), Sec. 1, eff. June 17, 2005.


Sec. 551.0415.   GOVERNING BODY OF MUNICIPALITY OR COUNTY:   REPORTS ABOUT ITEMS OF COMMUNITY INTEREST REGARDING WHICH NO ACTION WILL BE TAKEN.
(a)   Notwithstanding Sections 551.041 and 551.042, a quorum of the governing body of a municipality or county may receive from staff of the political subdivision and a member of the governing body may make a report about items of community interest during a meeting of the governing body without having given notice of the subject of the report as required by this subchapter if no action is taken and, except as provided by Section

551.042, possible action is not discussed regarding the information provided in the report.

(b)  For purposes of Subsection (a), "items of community interest" includes:

(1)  expressions of thanks, congratulations, or condolence;

(2)  information regarding holiday schedules;

(3)  an honorary or salutary recognition of a public official, public employee, or other citizen, except that a discussion regarding a change in the status of a person's public office or public employment is not an honorary or salutary recognition for purposes of this subdivision;

(4)  a reminder about an upcoming event organized or sponsored by the governing body;

(5)  information regarding a social, ceremonial, or community event organized or sponsored by an entity other than the governing body that was attended or is scheduled to be attended by a member of the governing body or an official or employee of the political subdivision; and

(6)  announcements involving an imminent threat to the public health and safety of people in the political subdivision that has arisen after the posting of the agenda.

Added by Acts 2009, 81st Leg., R.S., Ch. 1377 (S.B. 1182), Sec. 1, eff. September 1, 2009.
Amended by:
    Acts 2011, 82nd Leg., R.S., Ch. 1007 (H.B. 2313), Sec. 1, eff. June 17, 2011.
    Acts 2011, 82nd Leg., R.S., Ch. 1341 (S.B. 1233), Sec. 14, eff. June 17, 2011.
Reenacted and amended by Acts 2013, 83rd Leg., R.S., Ch. 161 (S.B. 1093), Sec. 9.013, eff. September 1, 2013.


Sec. 551.042.  INQUIRY MADE AT MEETING.  (a)  If, at a meeting of a governmental body, a member of the public or of the governmental body inquires about a subject for which notice has not been given as required by this subchapter, the notice provisions of this subchapter do not apply to:

(1)  a statement of specific factual information given in response to the inquiry;  or

(2)  a recitation of existing policy in response to the inquiry.

(b)  Any deliberation of or decision about the subject of the inquiry shall be limited to a proposal to place the subject on the agenda for a subsequent meeting.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


     Sec. 551.043.  TIME AND ACCESSIBILITY OF NOTICE; GENERAL RULE.  (a)
The notice of a meeting of a governmental body must be posted in a place
readily accessible to the general public at all times for at least 72 hours
before the scheduled time of the meeting, except as provided by Sections
551.044-551.046.
     (b)  If this chapter specifically requires or allows a governmental
body to post notice of a meeting on the Internet:
          (1)  the governmental body satisfies the requirement that the
notice must be posted in a place readily accessible to the general public
at all times by making a good-faith attempt to continuously post the notice
on the Internet during the prescribed period;
          (2)  the governmental body must still comply with any duty imposed
by this chapter to physically post the notice at a particular location; and
          (3)  if the governmental body makes a good-faith attempt to
continuously post the notice on the Internet during the prescribed period,
the notice physically posted at the location prescribed by this chapter
must be readily accessible to the general public during normal business
hours.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
     Acts 2005, 79th Leg., Ch. 624 (H.B. 2381), Sec. 1, eff. September 1,
2005.


     Sec. 551.044.  EXCEPTION TO GENERAL RULE:  GOVERNMENTAL BODY WITH
STATEWIDE JURISDICTION.  (a)  The secretary of state must post notice on
the Internet of a meeting of a state board, commission, department, or
officer having statewide jurisdiction for at least seven days before the
day of the meeting.  The secretary of state shall provide during regular
office hours a computer terminal at a place convenient to the public in the
office of the secretary of state that members of the public may use to view
notices of meetings posted by the secretary of state.
     (b)  Subsection (a) does not apply to:
          (1)  the Texas Department of Insurance, as regards proceedings and
activities under Title 5, Labor Code, of the department, the commissioner
of insurance, or the commissioner of workers' compensation; or
          (2)  the governing board of an institution of higher education.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by Acts 1999, 76th Leg., ch. 622, Sec. 1, eff. Sept. 1, 1999.
Amended by:
     Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 6.006, eff. September 1,
2005.


     Sec. 551.045.  EXCEPTION TO GENERAL RULE:  NOTICE OF EMERGENCY MEETING
OR EMERGENCY ADDITION TO AGENDA.  (a)  In an emergency or when there is an
urgent public necessity, the notice of a meeting or the supplemental notice
of a subject added as an item to the agenda for a meeting for which notice
has been posted in accordance with this subchapter is sufficient if it is
posted for at least two hours before the meeting is convened.
     (b)  An emergency or an urgent public necessity exists only if
immediate action is required of a governmental body because of:
          (1)  an imminent threat to public health and safety;  or
          (2)  a reasonably unforeseeable situation.
     (c)  The governmental body shall clearly identify the emergency or
urgent public necessity in the notice or supplemental notice under this
section.
     (d)  A person who is designated or authorized to post notice of a
meeting by a governmental body under this subchapter shall post the notice
taking at face value the governmental body's stated reason for the
emergency or urgent public necessity.
     (e)  For purposes of Subsection (b)(2), the sudden relocation of a
large number of residents from the area of a declared disaster to a
governmental body's jurisdiction is considered a reasonably unforeseeable
situation for a reasonable period immediately following the relocation.
Notice of an emergency meeting or supplemental notice of an emergency item
added to the agenda of a meeting to address a situation described by this
subsection must be given to members of the news media as provided by
Section 551.047 not later than one hour before the meeting.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
     Acts 2007, 80th Leg., R.S., Ch. 258 (S.B. 11), Sec. 3.06, eff.
September 1, 2007.
     Acts 2007, 80th Leg., R.S., Ch. 1325 (S.B. 1499), Sec. 1, eff. June
15, 2007.

Sec. 551.046.  EXCEPTION TO GENERAL RULE:  COMMITTEE OF LEGISLATURE. The notice of a legislative committee meeting shall be as provided by the rules of the house of representatives or of the senate.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.047.  SPECIAL NOTICE TO NEWS MEDIA OF EMERGENCY MEETING OR EMERGENCY ADDITION TO AGENDA.  (a)  The presiding officer of a governmental body, or the member of a governmental body who calls an emergency meeting of the governmental body or adds an emergency item to the agenda of a meeting of the governmental body, shall notify the news media of the emergency meeting or emergency item as required by this section.

    (b)  The presiding officer or member is required to notify only those members of the news media that have previously:

        (1)  filed at the headquarters of the governmental body a request containing all pertinent information for the special notice;  and

        (2)  agreed to reimburse the governmental body for the cost of providing the special notice.

    (c)  The presiding officer or member shall give the notice by telephone, facsimile transmission, or electronic mail.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

    Acts 2007, 80th Leg., R.S., Ch. 380 (S.B. 592), Sec. 1, eff. June 15, 2007.


Sec. 551.048.  STATE GOVERNMENTAL BODY:  NOTICE TO SECRETARY OF STATE; PLACE OF POSTING NOTICE.  (a)  A state governmental body shall provide notice of each meeting to the secretary of state.

    (b)  The secretary of state shall post the notice on the Internet. The secretary of state shall provide during regular office hours a computer terminal at a place convenient to the public in the office of the secretary of state that members of the public may use to view the notice.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 622, Sec. 2, eff. Sept. 1, 1999.


Sec. 551.049.  COUNTY GOVERNMENTAL BODY:  PLACE OF POSTING NOTICE.  A county governmental body shall post notice of each meeting on a bulletin board at a place convenient to the public in the county courthouse.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


        Sec. 551.050.  MUNICIPAL GOVERNMENTAL BODY: PLACE OF POSTING NOTICE.
(a)   In this section, "electronic bulletin board" means an electronic
communication system that includes a perpetually illuminated screen on
which the governmental body can post messages or notices viewable without
manipulation by the public.
        (b)   A municipal governmental body shall post notice of each meeting
on a physical or electronic bulletin board at a place convenient to the
public in the city hall.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
        Acts 2011, 82nd Leg., R.S., Ch. 1007 (H.B. 2313), Sec. 2, eff. June
17, 2011.


        Sec. 551.0501.  JOINT BOARD:  PLACE OF POSTING NOTICE.  (a)  In this
section, "electronic bulletin board" means an electronic communication
system that includes a perpetually illuminated screen on which the
governmental body can post messages or notices viewable without
manipulation by the public.
        (b)   A joint board created under Section 22.074, Transportation Code,
shall post notice of each meeting on a physical or electronic bulletin
board at a place convenient to the public in the board's administrative
offices.

Added by Acts 2015, 84th Leg., R.S., Ch. 115 (S.B. 679), Sec. 2, eff. May
23, 2015.


        Sec. 551.051.  SCHOOL DISTRICT:  PLACE OF POSTING NOTICE.  A school
district shall post notice of each meeting on a bulletin board at a place
convenient to the public in the central administrative office of the
district.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


        Sec. 551.052.  SCHOOL DISTRICT:  SPECIAL NOTICE TO NEWS MEDIA.  (a)  A
school district shall provide special notice of each meeting to any news
media that has:
            (1)   requested special notice;  and

(2)    agreed to reimburse the district for the cost of providing the special notice.

(b)    The notice shall be by telephone, facsimile transmission, or electronic mail.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

Acts 2007, 80th Leg., R.S., Ch. 380 (S.B. 592), Sec. 2, eff. June 15, 2007.

Sec. 551.053.   DISTRICT OR POLITICAL SUBDIVISION EXTENDING INTO FOUR OR MORE COUNTIES:  NOTICE TO PUBLIC, SECRETARY OF STATE, AND COUNTY CLERK; PLACE OF POSTING NOTICE.   (a)   The governing body of a water district or other district or political subdivision that extends into four or more counties shall:

(1)   post notice of each meeting at a place convenient to the public in the administrative office of the district or political subdivision;

(2)   provide notice of each meeting to the secretary of state; and

(3)    either provide notice of each meeting to the county clerk of the county in which the administrative office of the district or political subdivision is located or post notice of each meeting on the district's or political subdivision's Internet website.

(b)   The secretary of state shall post the notice provided under Subsection (a)(2) on the Internet.  The secretary of state shall provide during regular office hours a computer terminal at a place convenient to the public in the office of the secretary of state that members of the public may use to view the notice.

(c)   A county clerk shall post a notice provided to the clerk under Subsection (a)(3) on a bulletin board at a place convenient to the public in the county courthouse.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 622, Sec. 3, eff. Sept. 1, 1999. Amended by:

Acts 2015, 84th Leg., R.S., Ch. 809 (H.B. 3357), Sec. 1, eff. September 1, 2015.

Sec. 551.054.   DISTRICT OR POLITICAL SUBDIVISION EXTENDING INTO FEWER THAN FOUR COUNTIES:  NOTICE TO PUBLIC AND COUNTY CLERKS;  PLACE OF POSTING

NOTICE.   (a)   The governing body of a water district or other district or political subdivision that extends into fewer than four counties shall:

  (1)   post notice of each meeting at a place convenient to the public in the administrative office of the district or political subdivision; and

  (2)   either provide notice of each meeting to the county clerk of each county in which the district or political subdivision is located or post notice of each meeting on the district's or political subdivision's Internet website.

 (b)   A county clerk shall post a notice provided to the clerk under Subsection (a)(2) on a bulletin board at a place convenient to the public in the county courthouse.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

 Acts 2015, 84th Leg., R.S., Ch. 809 (H.B. 3357), Sec. 2, eff. September 1, 2015.


 Sec. 551.055.   INSTITUTION OF HIGHER EDUCATION.   In addition to providing any other notice required by this subchapter, the governing board of a single institution of higher education:

  (1)   shall post notice of each meeting at the county courthouse of the county in which the meeting will be held;

  (2)   shall publish notice of a meeting in a student newspaper of the institution if an issue of the newspaper is published between the time of the posting and the time of the meeting;  and

  (3)   may post notice of a meeting at another place convenient to the public.

Added by Acts 1995, 74th Leg., ch. 209, Sec. 1, eff. May 23, 1995.


 Sec. 551.056.   ADDITIONAL POSTING REQUIREMENTS FOR CERTAIN MUNICIPALITIES, COUNTIES, SCHOOL DISTRICTS, JUNIOR COLLEGE DISTRICTS, DEVELOPMENT CORPORATIONS, AUTHORITIES, AND JOINT BOARDS.   (a)   This section applies only to a governmental body or economic development corporation that maintains an Internet website or for which an Internet website is maintained.   This section does not apply to a governmental body described by Section 551.001(3)(D).

 (b)   In addition to the other place at which notice is required to be posted by this subchapter, the following governmental bodies and economic development corporations must also concurrently post notice of a meeting on

the Internet website of the governmental body or economic development corporation:

    (1)  a municipality;

    (2)  a county;

    (3)  a school district;

    (4)  the governing body of a junior college or junior college district, including a college or district that has changed its name in accordance with Chapter 130, Education Code;

    (5)  a development corporation organized under the Development Corporation Act (Subtitle C1, Title 12, Local Government Code);

    (6)  a regional mobility authority included within the meaning of an "authority" as defined by Section 370.003, Transportation Code; and

    (7)  a joint board created under Section 22.074, Transportation Code.

  (c)  The following governmental bodies and economic development corporations must also concurrently post the agenda for the meeting on the Internet website of the governmental body or economic development corporation:

    (1)  a municipality with a population of 48,000 or more;

    (2)  a county with a population of 65,000 or more;

    (3)  a school district that contains all or part of the area within the corporate boundaries of a municipality with a population of 48,000 or more;

    (4)  the governing body of a junior college district, including a district that has changed its name in accordance with Chapter 130, Education Code, that contains all or part of the area within the corporate boundaries of a municipality with a population of 48,000 or more;

    (5)  a development corporation organized under the Development Corporation Act (Subtitle C1, Title 12, Local Government Code) that was created by or for:

      (A)  a municipality with a population of 48,000 or more; or

      (B)  a county or district that contains all or part of the area within the corporate boundaries of a municipality with a population of 48,000 or more; and

    (6)  a regional mobility authority included within the meaning of an "authority" as defined by Section 370.003, Transportation Code.

  (d)  The validity of a posted notice of a meeting or an agenda by a governmental body or economic development corporation subject to this section that made a good faith attempt to comply with the requirements of this section is not affected by a failure to comply with a requirement of

this section that is due to a technical problem beyond the control of the
governmental body or economic development corporation.

Added by Acts 2005, 79th Leg., Ch. 340 (S.B. 1133), Sec. 1, eff. January 1,
2006.
Amended by:
    Acts 2007, 80th Leg., R.S., Ch. 814 (S.B. 1548), Sec. 1, eff.
September 1, 2007.
    Acts 2007, 80th Leg., R.S., Ch. 885 (H.B. 2278), Sec. 3.10, eff. April
1, 2009.
    Acts 2015, 84th Leg., R.S., Ch. 115 (S.B. 679), Sec. 3, eff. May 23,
2015.
    Acts 2015, 84th Leg., R.S., Ch. 115 (S.B. 679), Sec. 4, eff. May 23,
2015.


        SUBCHAPTER D. EXCEPTIONS TO REQUIREMENT THAT MEETINGS BE OPEN

    Sec. 551.071.  CONSULTATION WITH ATTORNEY;  CLOSED MEETING.  A
governmental body may not conduct a private consultation with its attorney
except:
        (1)  when the governmental body seeks the advice of its attorney
about:
            (A)  pending or contemplated litigation;  or
            (B)  a settlement offer;  or
        (2)  on a matter in which the duty of the attorney to the
governmental body under the Texas Disciplinary Rules of Professional
Conduct of the State Bar of Texas clearly conflicts with this chapter.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


    Sec. 551.072.  DELIBERATION REGARDING REAL PROPERTY;  CLOSED MEETING.
A governmental body may conduct a closed meeting to deliberate the
purchase, exchange, lease, or value of real property if deliberation in an
open meeting would have a detrimental effect on the position of the
governmental body in negotiations with a third person.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


    Sec. 551.0725.  COMMISSIONERS COURTS:  DELIBERATION REGARDING CONTRACT
BEING NEGOTIATED;  CLOSED MEETING.  (a)  The commissioners court of a
county may conduct a closed meeting to deliberate business and financial

issues relating to a contract being negotiated if, before conducting the closed meeting:

      (1)   the commissioners court votes unanimously that deliberation in an open meeting would have a detrimental effect on the position of the commissioners court in negotiations with a third person; and

      (2)   the attorney advising the commissioners court issues a written determination that deliberation in an open meeting would have a detrimental effect on the position of the commissioners court in negotiations with a third person.

    (b)   Notwithstanding Section 551.103(a), Government Code, the commissioners court must make a recording of the proceedings of a closed meeting to deliberate the information.

Added by Acts 2003, 78th Leg., ch. 1287, Sec. 1, eff. June 21, 2003. Amended by:

    Acts 2011, 82nd Leg., R.S., Ch. 758 (H.B. 1500), Sec. 1, eff. June 17, 2011.

    Acts 2011, 82nd Leg., R.S., Ch. 1341 (S.B. 1233), Sec. 15, eff. June 17, 2011.

    Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 6, eff. May 18, 2013.


    Sec. 551.0726.   TEXAS FACILITIES COMMISSION:   DELIBERATION REGARDING CONTRACT BEING NEGOTIATED; CLOSED MEETING.   (a)   The Texas Facilities Commission may conduct a closed meeting to deliberate business and financial issues relating to a contract being negotiated if, before conducting the closed meeting:

      (1)   the commission votes unanimously that deliberation in an open meeting would have a detrimental effect on the position of the state in negotiations with a third person; and

      (2)   the attorney advising the commission issues a written determination finding that deliberation in an open meeting would have a detrimental effect on the position of the state in negotiations with a third person and setting forth that finding therein.

    (b)   Notwithstanding Section 551.103(a), the commission must make a recording of the proceedings of a closed meeting held under this section.

Added by Acts 2005, 79th Leg., Ch. 535 (H.B. 976), Sec. 1, eff. June 17, 2005. Amended by:

Acts 2007, 80th Leg., R.S., Ch. 937 (H.B. 3560), Sec. 3.05, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 87 (S.B. 1969), Sec. 11.011, eff. September 1, 2009.

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 7, eff. May 18, 2013.


Sec. 551.073.  DELIBERATION REGARDING PROSPECTIVE GIFT;  CLOSED MEETING.  A governmental body may conduct a closed meeting to deliberate a negotiated contract for a prospective gift or donation to the state or the governmental body if deliberation in an open meeting would have a detrimental effect on the position of the governmental body in negotiations with a third person.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.074.  PERSONNEL MATTERS;  CLOSED MEETING.  (a)  This chapter does not require a governmental body to conduct an open meeting:

(1)  to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee;  or

(2)  to hear a complaint or charge against an officer or employee.

(b)  Subsection (a) does not apply if the officer or employee who is the subject of the deliberation or hearing requests a public hearing.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.0745.  PERSONNEL MATTERS AFFECTING COUNTY ADVISORY BODY;  CLOSED MEETING.  (a)  This chapter does not require the commissioners court of a county to conduct an open meeting:

(1)  to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a member of an advisory body;  or

(2)  to hear a complaint or charge against a member of an advisory body.

(b)  Subsection (a) does not apply if the individual who is the subject of the deliberation or hearing requests a public hearing.

Added by Acts 1997, 75th Leg., ch. 659, Sec. 1, eff. Sept. 1, 1997.

Sec. 551.075.  CONFERENCE RELATING TO INVESTMENTS AND POTENTIAL INVESTMENTS ATTENDED BY BOARD OF TRUSTEES OF TEXAS GROWTH FUND;  CLOSED MEETING.  (a)  This chapter does not require the board of trustees of the Texas growth fund to confer with one or more employees of the Texas growth fund or with a third party in an open meeting if the only purpose of the conference is to:

(1)  receive information from the employees of the Texas growth fund or the third party relating to an investment or a potential investment by the Texas growth fund in:

(A)  a private business entity, if disclosure of the information would give advantage to a competitor;  or

(B)  a business entity whose securities are publicly traded, if the investment or potential investment is not required to be registered under the Securities Exchange Act of 1934 (15 U.S.C. Section 78a et seq.), and its subsequent amendments, and if disclosure of the information would give advantage to a competitor;  or

(2)  question the employees of the Texas growth fund or the third party regarding an investment or potential investment described by Subdivision (1), if disclosure of the information contained in the questions or answers would give advantage to a competitor.

(b)  During a conference under Subsection (a), members of the board of trustees of the Texas growth fund may not deliberate public business or agency policy that affects public business.

(c)  In this section, "Texas growth fund" means the fund created by Section 70, Article XVI, Texas Constitution.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by Acts 1999, 76th Leg., ch. 647, Sec. 2, eff. Aug. 30, 1999.


Sec. 551.076.  DELIBERATION REGARDING SECURITY DEVICES OR SECURITY AUDITS; CLOSED MEETING.  This chapter does not require a governmental body to conduct an open meeting to deliberate:

(1)  the deployment, or specific occasions for implementation, of security personnel or devices; or

(2)  a security audit.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2007, 80th Leg., R.S., Ch. 258 (S.B. 11), Sec. 3.07, eff. September 1, 2007.

Sec. 551.077.  AGENCY FINANCED BY FEDERAL GOVERNMENT.  This chapter does not require an agency financed entirely by federal money to conduct an open meeting.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.078.  MEDICAL BOARD OR MEDICAL COMMITTEE.  This chapter does not require a medical board or medical committee to conduct an open meeting to deliberate the medical or psychiatric records of an individual applicant for a disability benefit from a public retirement system.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.0785.  DELIBERATIONS INVOLVING MEDICAL OR PSYCHIATRIC RECORDS OF INDIVIDUALS.  This chapter does not require a benefits appeals committee for a public self-funded health plan or a governmental body that administers a public insurance, health, or retirement plan to conduct an open meeting to deliberate:
          (1)  the medical records or psychiatric records of an individual applicant for a benefit from the plan;  or
          (2)  a matter that includes a consideration of information in the medical or psychiatric records of an individual applicant for a benefit from the plan.

Added by Acts 2003, 78th Leg., ch. 158, Sec. 1, eff. May 27, 2003.


Sec. 551.079.  TEXAS DEPARTMENT OF INSURANCE.  (a)  The requirements of this chapter do not apply to a meeting of the commissioner of insurance or the commissioner's designee with the board of directors of a guaranty association established under Chapter 2602, Insurance Code, or Article 21.28-C or 21.28-D, Insurance Code, in the discharge of the commissioner's duties and responsibilities to regulate and maintain the solvency of a person regulated by the Texas Department of Insurance.
     (b)  The commissioner of insurance may deliberate and determine the appropriate action to be taken concerning the solvency of a person regulated by the Texas Department of Insurance in a closed meeting with persons in one or more of the following categories:
          (1)  staff of the Texas Department of Insurance;
          (2)  a regulated person;
          (3)  representatives of a regulated person; or

(4)   members of the board of directors of a guaranty association established under Chapter 2602, Insurance Code, or Article 21.28-C or 21.28-D, Insurance Code.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 628, Sec. 1, eff. Sept. 1, 2001. Amended by:
     Acts 2005, 79th Leg., Ch. 728 (H.B. 2018), Sec. 11.120, eff. September 1, 2005.


     Sec. 551.080.   BOARD OF PARDONS AND PAROLES.   This chapter does not require the Board of Pardons and Paroles to conduct an open meeting to interview or counsel an inmate of the Texas Department of Criminal Justice.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:
     Acts 2009, 81st Leg., R.S., Ch. 87 (S.B. 1969), Sec. 25.071, eff. September 1, 2009.


     Sec. 551.081.   CREDIT UNION COMMISSION.   This chapter does not require the Credit Union Commission to conduct an open meeting to deliberate a matter made confidential by law.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


     Sec. 551.0811.   THE FINANCE COMMISSION OF TEXAS.   This chapter does not require The Finance Commission of Texas to conduct an open meeting to deliberate a matter made confidential by law.

Added by Acts 1995, 74th Leg., ch. 76, Sec. 5.01(a), eff. Sept. 1, 1995.


     Sec. 551.082.   SCHOOL CHILDREN;  SCHOOL DISTRICT EMPLOYEES; DISCIPLINARY MATTER OR COMPLAINT.   (a)   This chapter does not require a school board to conduct an open meeting to deliberate in a case:
          (1)   involving discipline of a public school child;  or
          (2)   in which a complaint or charge is brought against an employee of the school district by another employee and the complaint or charge directly results in a need for a hearing.
     (b)   Subsection (a) does not apply if an open hearing is requested in writing by a parent or guardian of the child or by the employee against whom the complaint or charge is brought.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.0821.  SCHOOL BOARD:  PERSONALLY IDENTIFIABLE INFORMATION ABOUT PUBLIC SCHOOL STUDENT.  (a)  This chapter does not require a school board to conduct an open meeting to deliberate a matter regarding a public school student if personally identifiable information about the student will necessarily be revealed by the deliberation.

(b)  Directory information about a public school student is considered to be personally identifiable information about the student for purposes of Subsection (a) only if a parent or guardian of the student, or the student if the student has attained 18 years of age, has informed the school board, the school district, or a school in the school district that the directory information should not be released without prior consent.  In this subsection, "directory information" has the meaning assigned by the federal Family Educational Rights and Privacy Act of 1974 (20 U.S.C. Section 1232g), as amended.

(c)  Subsection (a) does not apply if an open meeting about the matter is requested in writing by a parent or guardian of the student or by the student if the student has attained 18 years of age.

Added by Acts 2003, 78th Leg., ch. 190, Sec. 1, eff. June 2, 2003.


Sec. 551.083.  CERTAIN SCHOOL BOARDS;  CLOSED MEETING REGARDING CONSULTATION WITH REPRESENTATIVE OF EMPLOYEE GROUP.  This chapter does not require a school board operating under a consultation agreement authorized by Section 13.901, Education Code, to conduct an open meeting to deliberate the standards, guidelines, terms, or conditions the board will follow, or instruct its representatives to follow, in a consultation with a representative of an employee group.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.084.  INVESTIGATION;  EXCLUSION OF WITNESS FROM HEARING.  A governmental body that is investigating a matter may exclude a witness from a hearing during the examination of another witness in the investigation.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.085.  GOVERNING BOARD OF CERTAIN PROVIDERS OF HEALTH CARE SERVICES.  (a)  This chapter does not require the governing board of a

municipal hospital, municipal hospital authority, county hospital, county hospital authority, hospital district created under general or special law, or nonprofit health maintenance organization created under Section 534.101, Health and Safety Code, to conduct an open meeting to deliberate:

       (1)  pricing or financial planning information relating to a bid or negotiation for the arrangement or provision of services or product lines to another person if disclosure of the information would give advantage to competitors of the hospital, hospital district, or nonprofit health maintenance organization; or

       (2)  information relating to a proposed new service or product line of the hospital, hospital district, or nonprofit health maintenance organization before publicly announcing the service or product line.

    (b)  The governing board of a health maintenance organization created under Section 281.0515, Health and Safety Code, that is subject to this chapter is not required to conduct an open meeting to deliberate information described by Subsection (a).

Added by Acts 1995, 74th Leg., ch. 76, Sec. 5.02(a), eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 778, Sec. 1, eff. Sept. 1, 1997;  Acts 1999, 76th Leg., ch. 1229, Sec. 1, eff. Sept. 1, 1999;  Acts 2003, 78th Leg., ch. 7, Sec. 1, eff. Sept. 1, 2003.
Amended by:
   Acts 2011, 82nd Leg., R.S., Ch. 342 (H.B. 2978), Sec. 1, eff. September 1, 2011.


    Sec. 551.086.  CERTAIN PUBLIC POWER UTILITIES:  COMPETITIVE MATTERS. (a)  Notwithstanding anything in this chapter to the contrary, the rules provided by this section apply to competitive matters of a public power utility.

    (b)  In this section:

       (1)  "Public power utility" means an entity providing electric or gas utility services that is subject to the provisions of this chapter.

       (2)  "Public power utility governing body" means the board of trustees or other applicable governing body, including a city council, of a public power utility.

       (3)  Repealed by Acts 2011, 82nd Leg., R.S., Ch. 925, Sec. 3, eff. June 17, 2011.

    (c)  This chapter does not require a public power utility governing body to conduct an open meeting to deliberate, vote, or take final action on any competitive matter, as that term is defined by Section 552.133.

This section does not limit the right of a public power utility governing body to hold a closed session under any other exception provided for in this chapter.

(d)  For purposes of Section 551.041, the notice of the subject matter of an item that may be considered as a competitive matter under this section is required to contain no more than a general representation of the subject matter to be considered, such that the competitive activity of the public power utility with respect to the issue in question is not compromised or disclosed.

(e)  With respect to municipally owned utilities subject to this section, this section shall apply whether or not the municipally owned utility has adopted customer choice or serves in a multiply certificated service area under the Utilities Code.

(f)  Nothing in this section is intended to preclude the application of the enforcement and remedies provisions of Subchapter G.

Added by Acts 1999, 76th Leg., ch. 405, Sec. 45, eff. Sept. 1, 1999.
Amended by:
    Acts 2011, 82nd Leg., R.S., Ch. 925 (S.B. 1613), Sec. 1, eff. June 17, 2011.
    Acts 2011, 82nd Leg., R.S., Ch. 925 (S.B. 1613), Sec. 3, eff. June 17, 2011.


    Sec. 551.087.  DELIBERATION REGARDING ECONOMIC DEVELOPMENT NEGOTIATIONS;  CLOSED MEETING.  This chapter does not require a governmental body to conduct an open meeting:
        (1)  to discuss or deliberate regarding commercial or financial information that the governmental body has received from a business prospect that the governmental body seeks to have locate, stay, or expand in or near the territory of the governmental body and with which the governmental body is conducting economic development negotiations;  or
        (2)  to deliberate the offer of a financial or other incentive to a business prospect described by Subdivision (1).

Added by Acts 1999, 76th Leg., ch. 1319, Sec. 32, eff. Sept. 1, 1999.
Renumbered from Sec. 551.086 by Acts 2001, 77th Leg., ch. 1420, Sec. 21.001(49), eff. Sept. 1, 2001.


    Sec. 551.088.  DELIBERATION REGARDING TEST ITEM.  This chapter does not require a governmental body to conduct an open meeting to deliberate a test item or information related to a test item if the governmental body

believes that the test item may be included in a test the governmental body administers to individuals who seek to obtain or renew a license or certificate that is necessary to engage in an activity.

Added by Acts 1999, 76th Leg., ch. 312, Sec. 1, eff. Aug. 30, 1999. Renumbered from Sec. 551.086 by Acts 2001, 77th Leg., ch. 1420, Sec. 21.001(50), eff. Sept. 1, 2001.


Sec. 551.089.  DEPARTMENT OF INFORMATION RESOURCES.  This chapter does not require the governing board of the Department of Information Resources to conduct an open meeting to deliberate:

(1)  security assessments or deployments relating to information resources technology;

(2)  network security information as described by Section 2059.055(b); or

(3)  the deployment, or specific occasions for implementation, of security personnel, critical infrastructure, or security devices.

Added by Acts 2009, 81st Leg., R.S., Ch. 183 (H.B. 1830), Sec. 3, eff. September 1, 2009.


Sec. 551.090.  ENFORCEMENT COMMITTEE APPOINTED BY TEXAS STATE BOARD OF PUBLIC ACCOUNTANCY.  This chapter does not require an enforcement committee appointed by the Texas State Board of Public Accountancy to conduct an open meeting to investigate and deliberate a disciplinary action under Subchapter K, Chapter 901, Occupations Code, relating to the enforcement of Chapter 901 or the rules of the Texas State Board of Public Accountancy.

Added by Acts 2013, 83rd Leg., R.S., Ch. 36 (S.B. 228), Sec. 3, eff. September 1, 2013.


SUBCHAPTER E. PROCEDURES RELATING TO CLOSED MEETING

Sec. 551.101.  REQUIREMENT TO FIRST CONVENE IN OPEN MEETING.  If a closed meeting is allowed under this chapter, a governmental body may not conduct the closed meeting unless a quorum of the governmental body first convenes in an open meeting for which notice has been given as provided by this chapter and during which the presiding officer publicly:

(1)  announces that a closed meeting will be held;  and

(2)  identifies the section or sections of this chapter under which the closed meeting is held.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


        Sec. 551.102.  REQUIREMENT TO VOTE OR TAKE FINAL ACTION IN OPEN
MEETING.  A final action, decision, or vote on a matter deliberated in a
closed meeting under this chapter may only be made in an open meeting that
is held in compliance with the notice provisions of this chapter.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


        Sec. 551.103.  CERTIFIED AGENDA OR RECORDING REQUIRED.  (a)  A
governmental body shall either keep a certified agenda or make a recording
of the proceedings of each closed meeting, except for a private
consultation permitted under Section 551.071.
        (b)  The presiding officer shall certify that an agenda kept under
Subsection (a) is a true and correct record of the proceedings.
        (c)  The certified agenda must include:
            (1)  a statement of the subject matter of each deliberation;
            (2)  a record of any further action taken;  and
            (3)  an announcement by the presiding officer at the beginning and
the end of the meeting indicating the date and time.
        (d)  A recording made under Subsection (a) must include announcements
by the presiding officer at the beginning and the end of the meeting
indicating the date and time.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
        Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 8, eff. May 18,
2013.
        Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 9, eff. May 18,
2013.


        Sec. 551.104.  CERTIFIED AGENDA OR RECORDING; PRESERVATION;
DISCLOSURE.  (a)  A governmental body shall preserve the certified agenda
or recording of a closed meeting for at least two years after the date of
the meeting.  If an action involving the meeting is brought within that
period, the governmental body shall preserve the certified agenda or
recording while the action is pending.
        (b)  In litigation in a district court involving an alleged violation
of this chapter, the court:

(1)   is entitled to make an in camera inspection of the certified agenda or recording;

(2)   may admit all or part of the certified agenda or recording as evidence, on entry of a final judgment; and

(3)   may grant legal or equitable relief it considers appropriate, including an order that the governmental body make available to the public the certified agenda or recording of any part of a meeting that was required to be open under this chapter.

(c)   The certified agenda or recording of a closed meeting is available for public inspection and copying only under a court order issued under Subsection (b)(3).

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 10, eff. May 18, 2013.


SUBCHAPTER F. MEETINGS USING TELEPHONE, VIDEOCONFERENCE, OR INTERNET

Sec. 551.121.  GOVERNING BOARD OF INSTITUTION OF HIGHER EDUCATION; BOARD FOR LEASE OF UNIVERSITY LANDS; TEXAS HIGHER EDUCATION COORDINATING BOARD:  SPECIAL MEETING FOR IMMEDIATE ACTION.  (a)  In this section, "governing board," "institution of higher education," and "university system" have the meanings assigned by Section 61.003, Education Code.

(b)   This chapter does not prohibit the governing board of an institution of higher education, the Board for Lease of University Lands, or the Texas Higher Education Coordinating Board from holding an open or closed meeting by telephone conference call.

(c)   A meeting held by telephone conference call authorized by this section may be held only if:

(1)   the meeting is a special called meeting and immediate action is required; and

(2)   the convening at one location of a quorum of the governing board, the Board for Lease of University Lands, or the Texas Higher Education Coordinating Board, as applicable, is difficult or impossible.

(d)   The telephone conference call meeting is subject to the notice requirements applicable to other meetings.

(e)   The notice of a telephone conference call meeting of a governing board must specify as the location of the meeting the location where meetings of the governing board are usually held.  For a meeting of the governing board of a university system, the notice must specify as the

location of the meeting the board's conference room at the university system office.  For a meeting of the Board for Lease of University Lands, the notice must specify as the location of the meeting a suitable conference or meeting room at The University of Texas System office.  For a meeting of the Texas Higher Education Coordinating Board, the notice must specify as the location of the meeting a suitable conference or meeting room at the offices of the Texas Higher Education Coordinating Board or at an institution of higher education.

(f)  Each part of the telephone conference call meeting that is required to be open to the public must be:

(1)  audible to the public at the location specified in the notice of the meeting as the location of the meeting;

(2)  broadcast over the Internet in the manner prescribed by Section 551.128; and

(3)  recorded and made available to the public in an online archive located on the Internet website of the entity holding the meeting.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by Acts 2003, 78th Leg., ch. 1266, Sec. 4.05, 4.06, eff. June 20, 2003.
Amended by:
     Acts 2007, 80th Leg., R.S., Ch. 538 (S.B. 1046), Sec. 2, eff. September 1, 2007.
     Acts 2007, 80th Leg., R.S., Ch. 538 (S.B. 1046), Sec. 3, eff. September 1, 2007.
     Acts 2007, 80th Leg., R.S., Ch. 778 (H.B. 3827), Sec. 2, eff. June 15, 2007.
     Acts 2007, 80th Leg., R.S., Ch. 778 (H.B. 3827), Sec. 3, eff. June 15, 2007.
Reenacted by Acts 2009, 81st Leg., R.S., Ch. 87 (S.B. 1969), Sec. 11.013, eff. September 1, 2009.
Amended by:
     Acts 2009, 81st Leg., R.S., Ch. 87 (S.B. 1969), Sec. 11.014, eff. September 1, 2009.
     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 11, eff. May 18, 2013.
     Acts 2015, 84th Leg., R.S., Ch. 1127 (S.B. 27), Sec. 1, eff. September 1, 2015.

Sec. 551.122.  GOVERNING BOARD OF JUNIOR COLLEGE DISTRICT: QUORUM PRESENT AT ONE LOCATION.  (a)  This chapter does not prohibit the governing board of a junior college district from holding an open or closed meeting by telephone conference call.

(b)  A meeting held by telephone conference call authorized by this section may be held only if a quorum of the governing board is physically present at the location where meetings of the board are usually held.

(c)  The telephone conference call meeting is subject to the notice requirements applicable to other meetings.

(d)  Each part of the telephone conference call meeting that is required to be open to the public shall be audible to the public at the location where the quorum is present and shall be recorded.  The recording shall be made available to the public.

(e)  The location of the meeting shall provide two-way communication during the entire telephone conference call meeting, and the identification of each party to the telephone conference shall be clearly stated before the party speaks.

(f)  The authority provided by this section is in addition to the authority provided by Section 551.121.

(g)  A member of a governing board of a junior college district who participates in a board meeting by telephone conference call but is not physically present at the location of the meeting is considered to be absent from the meeting for purposes of Section 130.0845, Education Code.

Added by Acts 2007, 80th Leg., R.S., Ch. 778 (H.B. 3827), Sec. 1, eff. June 15, 2007.
Amended by:
     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 12, eff. May 18, 2013.


Sec. 551.123.  TEXAS BOARD OF CRIMINAL JUSTICE.  (a)  The Texas Board of Criminal Justice may hold an open or closed emergency meeting by telephone conference call.

(b)  The portion of the telephone conference call meeting that is open shall be recorded.  The recording shall be made available to be heard by the public at one or more places designated by the board.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.124.  BOARD OF PARDONS AND PAROLES.  At the call of the presiding officer of the Board of Pardons and Paroles, the board may hold a

hearing on clemency matters by telephone conference call.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 165, Sec. 12.16, eff. Sept. 1, 1997.


Sec. 551.125. OTHER GOVERNMENTAL BODY. (a) Except as otherwise provided by this subchapter, this chapter does not prohibit a governmental body from holding an open or closed meeting by telephone conference call.

(b) A meeting held by telephone conference call may be held only if:

(1) an emergency or public necessity exists within the meaning of Section 551.045 of this chapter; and

(2) the convening at one location of a quorum of the governmental body is difficult or impossible; or

(3) the meeting is held by an advisory board.

(c) The telephone conference call meeting is subject to the notice requirements applicable to other meetings.

(d) The notice of the telephone conference call meeting must specify as the location of the meeting the location where meetings of the governmental body are usually held.

(e) Each part of the telephone conference call meeting that is required to be open to the public shall be audible to the public at the location specified in the notice of the meeting as the location of the meeting and shall be recorded. The recording shall be made available to the public.

(f) The location designated in the notice as the location of the meeting shall provide two-way communication during the entire telephone conference call meeting and the identification of each party to the telephone conference shall be clearly stated prior to speaking.

Added by Acts 1995, 74th Leg., ch. 1046, Sec. 1, eff. Aug. 28, 1995. Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 13, eff. May 18, 2013.


Sec. 551.126. HIGHER EDUCATION COORDINATING BOARD. (a) In this section, "board" means the Texas Higher Education Coordinating Board.

(b) The board may hold an open meeting by telephone conference call or video conference call in order to consider a higher education impact statement if the preparation of a higher education impact statement by the board is to be provided under the rules of either the house of representatives or the senate.

(c)  A meeting held by telephone conference call must comply with the procedures described in Section 551.125.

(d)  A meeting held by video conference call is subject to the notice requirements applicable to other meetings.  In addition, a meeting held by video conference call shall:

(1)  be visible and audible to the public at the location specified in the notice of the meeting as the location of the meeting;

(2)  be recorded by audio and video;  and

(3)  have two-way audio and video communications with each participant in the meeting during the entire meeting.

Added by Acts 1997, 75th Leg., ch. 944, Sec. 1, eff. June 18, 1997.


Sec. 551.127.  VIDEOCONFERENCE CALL.  (a)  Except as otherwise provided by this section, this chapter does not prohibit a governmental body from holding an open or closed meeting by videoconference call.

(a-1)  A member or employee of a governmental body may participate remotely in a meeting of the governmental body by means of a videoconference call if the video and audio feed of the member's or employee's participation, as applicable, is broadcast live at the meeting and complies with the provisions of this section.

(a-2)  A member of a governmental body who participates in a meeting as provided by Subsection (a-1) shall be counted as present at the meeting for all purposes.

(b)  A meeting may be held by videoconference call only if a quorum of the governmental body is physically present at one location of the meeting, except as provided by Subsection (c).

 Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 2


(c)  A meeting of a governmental body may be held by videoconference call only if:

(1)  the governmental body makes available to the public at least one suitable physical space located in or within a reasonable distance of the geographic jurisdiction, if any, of the governmental body that is equipped with videoconference equipment that provides an audio and video display, as well as a camera and microphone by which a member of the public can provide testimony or otherwise actively participate in the meeting;

(2)   the member of the governmental body presiding over the meeting is present at that physical space; and

(3)   any member of the public present at that physical space is provided the opportunity to participate in the meeting by means of a videoconference call in the same manner as a person who is physically present at a meeting of the governmental body that is not conducted by videoconference call.

Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 159 (S.B. 984), Sec. 1


(c)   A meeting of a state governmental body or a governmental body that extends into three or more counties may be held by videoconference call only if the member of the governmental body presiding over the meeting is physically present at one location of the meeting that is open to the public during the open portions of the meeting.

(d)   A meeting held by videoconference call is subject to the notice requirements applicable to other meetings in addition to the notice requirements prescribed by this section.

Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 2


(e)   The notice of a meeting to be held by videoconference call must specify as a location of the meeting the location of the physical space described by Subsection (c)(1).

Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 159 (S.B. 984), Sec. 1


(e)   The notice of a meeting to be held by videoconference call must specify as a location of the meeting the location where a quorum of the governmental body will be physically present and specify the intent to have a quorum present at that location, except that the notice of a meeting to be held by videoconference call under Subsection (c) must specify as a location of the meeting the location where the member of the governmental body presiding over the meeting will be physically present and specify the intent to have the member of the governmental body presiding over the

meeting present at that location.  The location where the member of the governmental body presiding over the meeting is physically present shall be open to the public during the open portions of the meeting.

(f)  Each portion of a meeting held by videoconference call that is required to be open to the public shall be visible and audible to the public at the location specified under Subsection (e).  If a problem occurs that causes a meeting to no longer be visible and audible to the public at that location, the meeting must be recessed until the problem is resolved.  If the problem is not resolved in six hours or less, the meeting must be adjourned.

(g)  The governmental body shall make at least an audio recording of the meeting.  The recording shall be made available to the public.

Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 2

(h)  The physical location specified under Subsection (e) shall have two-way audio and video communication with each member who is participating by videoconference call during the entire meeting.  Each participant in the videoconference call, while speaking, shall be clearly visible and audible to each other participant and, during the open portion of the meeting, to the members of the public in attendance at the physical location described by Subsection (e) and at any other location of the meeting that is open to the public.

Text of subsection as amended by Acts 2013, 83rd Leg., R.S., Ch. 159 (S.B. 984), Sec. 1

(h)  The location specified under Subsection (e), and each remote location from which a member of the governmental body participates, shall have two-way communication with each other location during the entire meeting.  The face of each participant in the videoconference call, while that participant is speaking, shall be clearly visible, and the voice audible, to each other participant and, during the open portion of the meeting, to the members of the public in attendance at a location of the meeting.

(i)  The Department of Information Resources by rule shall specify minimum standards for audio and video signals at a meeting held by videoconference call.  The quality of the audio and video signals

perceptible at each location of the meeting must meet or exceed those standards.

(j)  The audio and video signals perceptible by members of the public at each location of the meeting described by Subsection (h) must  be of sufficient quality so that members of the public at each location can observe the demeanor and hear the voice of each participant in the open portion of the meeting.

(k)  Without regard to whether a member of the governmental body is participating in a meeting from a remote location by videoconference call, a governmental body may allow a member of the public to testify at a meeting from a remote location by videoconference call.

Added by Acts 1997, 75th Leg., ch. 1038, Sec. 2, eff. Sept. 1, 1997. Renumbered from Sec. 551.126 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(50), eff. Sept. 1, 1999.  Amended by Acts 2001, 77th Leg., ch. 630, Sec. 1, eff. Sept. 1, 2001.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 159 (S.B. 984), Sec. 1, eff. September 1, 2013.
    Acts 2013, 83rd Leg., R.S., Ch. 685 (H.B. 2414), Sec. 2, eff. June 14, 2013.


Sec. 551.128.  INTERNET BROADCAST OF OPEN MEETING.  (a)  In this section, "Internet" means the largest nonproprietary cooperative public computer network, popularly known as the Internet.

(b)  Except as provided by Subsection (b-1) and subject to the requirements of this section, a governmental body may broadcast an open meeting over the Internet.

(b-1)  A transit authority or department subject to Chapter 451, 452, 453, or 460, Transportation Code, an elected school district board of trustees for a school district that has a student enrollment of 10,000 or more, an elected governing body of a home-rule municipality that has a population of 50,000 or more, or a county commissioners court for a county that has a population of 125,000 or more shall:

(1)  make a video and audio recording of reasonable quality of each regularly scheduled open meeting that is not a work session or a special called meeting; and

(2)  make available an archived copy of the video and audio recording of each meeting described by Subdivision (1) on the Internet.

(b-2)   A governmental body described by Subsection (b-1) may make available the archived recording of a meeting required by Subsection (b-1) on an existing Internet site, including a publicly accessible video-sharing or social networking site. The governmental body is not required to establish a separate Internet site and provide access to archived recordings of meetings from that site.

(b-3)   A governmental body described by Subsection (b-1) that maintains an Internet site shall make available on that site, in a conspicuous manner:

(1)   the archived recording of each meeting to which Subsection (b-1) applies; or

(2)   an accessible link to the archived recording of each such meeting.

(b-4)   A governmental body described by Subsection (b-1) shall:

(1)   make the archived recording of each meeting to which Subsection (b-1) applies available on the Internet not later than seven days after the date the recording was made; and

(2)   maintain the archived recording on the Internet for not less than two years after the date the recording was first made available.

(b-5)   A governmental body described by Subsection (b-1) is exempt from the requirements of Subsections (b-2) and (b-4) if the governmental body's failure to make the required recording of a meeting available is the result of a catastrophe, as defined by Section 551.0411, or a technical breakdown. Following a catastrophe or breakdown, a governmental body must make all reasonable efforts to make the required recording available in a timely manner.

(b-6)   A governmental body described by Subsection (b-1) may broadcast a regularly scheduled open meeting of the body on television.

(c)   Except as provided by Subsection (b-2), a governmental body that broadcasts a meeting over the Internet shall establish an Internet site and provide access to the broadcast from that site. The governmental body shall provide on the Internet site the same notice of the meeting that the governmental body is required to post under Subchapter C. The notice on the Internet must be posted within the time required for posting notice under Subchapter C.

Added by Acts 1999, 76th Leg., ch. 100, Sec. 1, eff. Sept. 1, 1999.
Amended by:
     Acts 2015, 84th Leg., R.S., Ch. 681 (H.B. 283), Sec. 1, eff. January 1, 2016.

Sec. 551.1281.   GOVERNING BOARD OF GENERAL ACADEMIC TEACHING INSTITUTION OR UNIVERSITY SYSTEM: INTERNET POSTING OF MEETING MATERIALS AND BROADCAST OF OPEN MEETING. (a) In this section, "general academic teaching institution" and "university system" have the meanings assigned by Section 61.003, Education Code.

(b)  The governing board of a general academic teaching institution or of a university system that includes one or more component general academic teaching institutions, for any regularly scheduled meeting of the governing board for which notice is required under this chapter, shall:

(1)  post as early as practicable in advance of the meeting on the Internet website of the institution or university system, as applicable, any written agenda and related supplemental written materials provided to the governing board members in advance of the meeting by the institution or system for the members' use during the meeting;

(2)  broadcast the meeting, other than any portions of the meeting closed to the public as authorized by law, over the Internet in the manner prescribed by Section 551.128; and

(3)  record the broadcast and make that recording publicly available in an online archive located on the institution's or university system's Internet website.

(c)  Subsection (b)(1) does not apply to written materials that the general counsel or other appropriate attorney for the institution or university system certifies are confidential or may be withheld from public disclosure under Chapter 552.

(d)  The governing board of a general academic teaching institution or of a university system is not required to comply with the requirements of this section if that compliance is not possible because of an act of God, force majeure, or a similar cause not reasonably within the governing board's control.

Added by Acts 2013, 83rd Leg., R.S., Ch. 842 (H.B. 31), Sec. 1, eff. June 14, 2013.


Sec. 551.1282.  GOVERNING BOARD OF JUNIOR COLLEGE DISTRICT:  INTERNET POSTING OF MEETING MATERIALS AND BROADCAST OF OPEN MEETING. (a) This section applies only to the governing board of a junior college district with a total student enrollment of more than 20,000 in any semester of the preceding academic year.

(b)   A governing board to which this section applies, for any regularly scheduled meeting of the governing board for which notice is required under this chapter, shall:

(1)   post as early as practicable in advance of the meeting on the Internet website of the district any written agenda and related supplemental written materials provided by the district to the board members for the members' use during the meeting;

(2)   broadcast the meeting, other than any portions of the meeting closed to the public as authorized by law, over the Internet in the manner prescribed by Section 551.128; and

(3)   record the broadcast and make that recording publicly available in an online archive located on the district's Internet website.

(c)   Subsection (b)(1) does not apply to written materials that the general counsel or other appropriate attorney for the district certifies are confidential or may be withheld from public disclosure under Chapter 552.

(d)   The governing board of a junior college district is not required to comply with the requirements of this section if that compliance is not possible because of an act of God, force majeure, or a similar cause not reasonably within the governing board's control.

Added by Acts 2013, 83rd Leg., R.S., Ch. 690 (H.B. 2668), Sec. 1, eff. June 14, 2013.


Sec. 551.129.   CONSULTATIONS BETWEEN GOVERNMENTAL BODY AND ITS ATTORNEY.   (a)   A governmental body may use a telephone conference call, video conference call, or communications over the Internet to conduct a public consultation with its attorney in an open meeting of the governmental body or a private consultation with its attorney in a closed meeting of the governmental body.

(b)   Each part of a public consultation by a governmental body with its attorney in an open meeting of the governmental body under Subsection (a) must be audible to the public at the location specified in the notice of the meeting as the location of the meeting.

(c)   Subsection (a) does not:

(1)   authorize the members of a governmental body to conduct a meeting of the governmental body by telephone conference call, video conference call, or communications over the Internet;  or

(2)   create an exception to the application of this subchapter.

(d)   Subsection (a) does not apply to a consultation with an attorney who is an employee of the governmental body.

(e)   For purposes of Subsection (d), an attorney who receives compensation for legal services performed, from which employment taxes are deducted by the governmental body, is an employee of the governmental body.

(f)   Subsection (d) does not apply to:

(1)   the governing board of an institution of higher education as defined by Section 61.003, Education Code; or

(2)   the Texas Higher Education Coordinating Board.

Added by Acts 2001, 77th Leg., ch. 50, Sec. 1, eff. May 7, 2001.
Amended by:
Acts 2007, 80th Leg., R.S., Ch. 538 (S.B. 1046), Sec. 4, eff. September 1, 2007.


Sec. 551.130.   BOARD OF TRUSTEES OF TEACHER RETIREMENT SYSTEM OF TEXAS:   QUORUM PRESENT AT ONE LOCATION.   (a)   In this section, "board" means the board of trustees of the Teacher Retirement System of Texas.

(b)   This chapter does not prohibit the board or a board committee from holding an open or closed meeting by telephone conference call.

(c)   The board or a board committee may hold a meeting by telephone conference call only if a quorum of the applicable board or board committee is physically present at one location of the meeting.

(d)   A telephone conference call meeting is subject to the notice requirements applicable to other meetings.   The notice must also specify:

(1)   the location of the meeting where a quorum of the board or board committee, as applicable, will be physically present; and

(2)   the intent to have a quorum present at that location.

(e)   The location where a quorum is physically present must be open to the public during the open portions of a telephone conference call meeting. The open portions of the meeting must be audible to the public at the location where the quorum is present and be recorded at that location.   The recording shall be made available to the public.

(f)   The location of the meeting shall provide two-way communication during the entire telephone conference call meeting, and the identification of each party to the telephone conference call must be clearly stated before the party speaks.

(g)   The authority provided by this section is in addition to the authority provided by Section 551.125.

(h)  A member of the board who participates in a board or board committee meeting by telephone conference call but is not physically present at the location of the meeting is not considered to be absent from the meeting for any purpose.  The vote of a member of the board who participates in a board or board committee meeting by telephone conference call is counted for the purpose of determining the number of votes cast on a motion or other proposition before the board or board committee.

(i)  A member of the board may participate remotely by telephone conference call instead of by being physically present at the location of a board meeting for not more than one board meeting per calendar year.  A board member who participates remotely in any portion of a board meeting by telephone conference call is considered to have participated in the entire board meeting by telephone conference call.  For purposes of the limit provided by this subsection, remote participation by telephone conference call in a meeting of a board committee does not count as remote participation by telephone conference call in a meeting of the board, even if:

(1)  a quorum of the full board attends the board committee meeting; or

(2)  notice of the board committee meeting is also posted as notice of a board meeting.

(j)  A person who is not a member of the board may speak at the meeting from a remote location by telephone conference call.

Added by Acts 2011, 82nd Leg., R.S., Ch. 455 (S.B. 1667), Sec. 3, eff. September 1, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 14, eff. May 18, 2013.
    Acts 2013, 83rd Leg., R.S., Ch. 1078 (H.B. 3357), Sec. 1, eff. June 14, 2013.


Sec. 551.131.  WATER DISTRICTS.  (a)  In this section, "water district" means a river authority, groundwater conservation district, water control and improvement district, or other district created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution.

(b)  This section applies only to a water district whose territory includes land in three or more counties.

(c)  A meeting held by telephone conference call or video conference call authorized by this section may be held only if:

(1)   the meeting is a special called meeting and immediate action is required; and

(2)   the convening at one location of a quorum of the governing body of the applicable water district is difficult or impossible.

(d)   A meeting held by telephone conference call must otherwise comply with the procedures under Sections 551.125(c), (d), (e), and (f).

(e)   A meeting held by video conference call is subject to the notice requirements applicable to other meetings.  In addition, a meeting held by video conference call shall:

(1)   be visible and audible to the public at the location specified in the notice of the meeting as the location of the meeting;

(2)   be recorded by audio and video; and

(3)   have two-way audio and video communications with each participant in the meeting during the entire meeting.

Added by Acts 2013, 83rd Leg., R.S., Ch. 20 (S.B. 293), Sec. 1, eff. May 10, 2013.


SUBCHAPTER G. ENFORCEMENT AND REMEDIES;  CRIMINAL VIOLATIONS

Sec. 551.141.  ACTION VOIDABLE.  An action taken by a governmental body in violation of this chapter is voidable.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.142.  MANDAMUS;  INJUNCTION.  (a)  An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

(b)   The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a).  In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.143.  CONSPIRACY TO CIRCUMVENT CHAPTER;  OFFENSE;  PENALTY. (a)  A member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent this

chapter by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of this chapter.

(b)  An offense under Subsection (a) is a misdemeanor punishable by:

(1)  a fine of not less than $100 or more than $500;

(2)  confinement in the county jail for not less than one month or more than six months;  or

(3)  both the fine and confinement.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.


Sec. 551.144.  CLOSED MEETING;  OFFENSE;  PENALTY.  (a)  A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly:

(1)  calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;

(2)  closes or aids in closing the meeting to the public, if it is a regular meeting;  or

(3)  participates in the closed meeting, whether it is a regular, special, or called meeting.

(b)  An offense under Subsection (a) is a misdemeanor punishable by:

(1)  a fine of not less than $100 or more than $500;

(2)  confinement in the county jail for not less than one month or more than six months;  or

(3)  both the fine and confinement.

(c)  It is an affirmative defense to prosecution under Subsection (a) that the member of the governmental body acted in reasonable reliance on a court order or a written interpretation of this chapter contained in an opinion of a court of record, the attorney general, or the attorney for the governmental body.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by Acts 1999, 76th Leg., ch. 647, Sec. 3, eff. Aug. 30, 1999.


Sec. 551.145.  CLOSED MEETING WITHOUT CERTIFIED AGENDA OR RECORDING; OFFENSE; PENALTY.  (a)  A member of a governmental body commits an offense if the member participates in a closed meeting of the governmental body knowing that a certified agenda of the closed meeting is not being kept or that a recording of the closed meeting is not being made.

(b)  An offense under Subsection (a) is a Class C misdemeanor.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

Amended by:

     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 15, eff. May 18,
2013.

     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 16, eff. May 18,
2013.


     Sec. 551.146.  DISCLOSURE OF CERTIFIED AGENDA OR RECORDING OF CLOSED
MEETING; OFFENSE; PENALTY; CIVIL LIABILITY.  (a)  An individual,
corporation, or partnership that without lawful authority knowingly
discloses to a member of the public the certified agenda or recording of a
meeting that was lawfully closed to the public under this chapter:
          (1)  commits an offense; and
          (2)  is liable to a person injured or damaged by the disclosure
for:
               (A)  actual damages, including damages for personal injury or
damage, lost wages, defamation, or mental or other emotional distress;
               (B)  reasonable attorney fees and court costs; and
               (C)  at the discretion of the trier of fact, exemplary
damages.
     (b)  An offense under Subsection (a)(1) is a Class B misdemeanor.
     (c)  It is a defense to prosecution under Subsection (a)(1) and an
affirmative defense to a civil action under Subsection (a)(2) that:
          (1)  the defendant had good reason to believe the disclosure was
lawful; or
          (2)  the disclosure was the result of a mistake of fact concerning
the nature or content of the certified agenda or recording.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by:
     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 17, eff. May 18,
2013.
     Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 18, eff. May 18,
2013.